# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

HYUNDAI MOTOR AMERICA CORPORATION, a
foreign corporation

      Plaintiff,

v.                                           Case No. 9:20-cv-82102-DMM

NORTH AMERICA AUTOMOTIVE SERVICES,
INC., an Illinois Corporation; EFN WEST PALM
MOTOR SALES, LLC, an Illinois Limited Liability
Corporation; GENE KHAYTIN, a North Carolina
Resident; ERNIE REVUELTA, a Florida Resident;
EDWARD NAPLETON, JR., an Illinois Resident,
JOHN DOES and RICHARD ROES,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 1

STANDARD OF REVIEW ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 3

I.      Plaintiff's Federal RICO Claim Fails as a Matter of Law (Count II) ................................ 3

      A.      Plaintiff Fails to Plausibly Allege A Pattern of Racketeering Activity ................ 4

            1.      The Complaint Fails to Allege Predicate Acts ........................................... 4

            2.      Plaintiff's Allegations Fail to Establish Continuity ................................... 6

                  a.      HMA Fails to Allege Criminal Activity Over a Substantial Period of Time as Required to Allege Closed-Ended Continuity ................................................................................... 6

                  b.      HMA's Open-ended Continuity Theory Fails as a Matter of Law ................................................................................... 9

      B.      The Complaint Fails to Allege a RICO "Enterprise" ......................................... 11

            1.      HMA Fails to Plead the Existence of a RICO Enterprise that Is Separate and Apart from the Alleged Racketeering Conduct ............... 11

            2.      Plaintiff Fails to Allege the Existence of a RICO Enterprise that Is Separate and Distinct from the RICO Defendants ................................... 11

            3.      The Complaint Fails to Allege Each Defendant's Participation in the Purported Enterprise's Affairs ........................................................ 13

II.     Because Plaintiff Has Failed to Allege a RICO Violation, Its RICO Conspiracy Claim Necessarily Fails as a Matter of Law (Count III) ................................................... 14

III.    Plaintiff has Failed to State Claims for its Non-RICO Causes of Action ........................ 15

      A.      Plaintiff Fails to Plead Fraud with the Particularity Rule 9(b) Requires ............ 15

      B.      HMA Fails to State a Claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ...................................................................... 16

      C.      Plaintiff Fails to State a Claim for Unjust Enrichment ...................................... 18

      D.      Plaintiff Fails to State a Claim for Civil Conspiracy .......................................... 19

      E.      Plaintiff Fails to State a Tortious Interference Claim ......................................... 19

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ........................................................................5, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................3, 4

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,
   No. 10-22153-CIV., 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ........................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................2, 4

*Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*,
   CASE No. 17-cv-81100-BLOOM/Hopkins, 2018 WL 1072211 (S.D. Fla. Feb.
   27, 2018) ...........................................................................................................17

*Catano v. Capuano*,
   Case No. 18-20223-Civ-TORRES, 2019 WL 3035752 (S.D. Fla. July 11,
   2019) ........................................................................................................8, 9, 11

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ..........................................................................................12

*Crawford v. Franklin Credit Mgmt. Corp.*,
   758 F.3d 473 (2d Cir. 2014)..................................................................................4

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013)................................................................................13

*Dolphin LLC v. WCI Communities, Inc.*,
   715 F.3d 1243 (11th Cir. 2013) ..........................................................................16

*Drummond v. Zimmerman*,
   454 F. Supp. 3d 1210 (S.D. Fla. 2020) ......................................................... *passim*

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
   48 F.3d 1260 (D.C. Cir. 1995) ..............................................................................9

*Ellis v. Warner*,
   CASE NO. 15-10134-CIV-GOODMAN, 2017 WL 634287 (S.D. Fla. Feb. 16,
   2017) ........................................................................................................5, 6, 7

*Erie R.R. Co. v. Tomkins*,
   304 U.S. 64 (1938)................................................................................................15

*Fernau v. Enchante Beauty Prods., Inc.*,
   Civil Action No. 18-20866-Civ-Scola, 2019 WL 5268541 (S.D. Fla. Oct. 17,
   2019) ............................................................................................................8, 9

*Fitzgerald v. Chrysler Corp.*,
   116 F.3d 225 (7th Cir. 1997) ...............................................................................13

*Gonzalez v. Eagle Ins. Co.*,
   948 So.2d 1 (Fla. Dist. Ct. App. 2006) ................................................................18

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)................................................................................6, 7, 9

*Hakim-Daccach v. Knauf Int'l GmbH*,
   Civil Action No. 17-20495-Civ-Scola, 2017 WL 5634629 (S.D. Fla. Nov. 22,
   2017) ....................................................................................................................19

*Hamilton v. Suntrust Mortg. Inc.*,
   6 F. Supp. 3d 1312, 1320 (S. D. Fla. 2014) ........................................................19

*Haskin v. R.J. Reynolds Tobacco Co.*,
   995 F.Supp. 1437 (M.D. Fla. 1998)......................................................................19

*Jackson v. BellSouth Telecomms.*,
   372 F.3d 1250 (11th Cir. 2004) .................................................................. *passim*

*Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*,
   530 F.3d 1339 (11th Cir. 2008) ...........................................................................14

*Lockheed Martin Corp. v. Boeing Co.*,
   314 F. Supp. 2d 1198 (M.D. Fla. 2004).................................................................13

*Magwood v. Tate*,
   835 So.2d 1241 (Fla. Dist. Ct. App. 2003) ..........................................................18

*In re Maxxim Med. Grp., Inc., et al. v. Pro. Hosp. Supply, Inc.*,
   434 B.R. 660 (Bankr. M.D. Fla. 2010) ................................................................17

*Meridian Tr. Co. v. Batista*,
   Case No. 17-23051-WILLIAMS, 2018 WL 4760277 (S.D. Fla. Sept. 30,
   2018) ..............................................................................................................15, 17

*Moon v. Harrison Piping Supply*,
   465 F.3d 719 (6th Cir. 2006) .................................................................................9

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) ............................................................................3, 11, 12, 13

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)...........................................................................................................13

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
30 F.3d 339 (2d Cir. 1994)................................................................................................13

*SIG, Inc. v. AT&T Digital Life, Inc.*,
971 F.Supp.2d 1178 (S.D. Fla. 2013) ..........................................................................17, 20

*Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*,
CASE NO.: 10-22147-CIV-LENARD/GOODMAN, 2011 WL 13220625
(S.D. Fla. Mar. 3, 2011) ..............................................................................................7, 14, 15

*Toca v. Tutco, LLC*,
430 F. Supp. 3d 1313 (S.D. Fla. 2020) ........................................................................15, 16

*Transatlantic, LLC v. Humana, Inc.*,
666 F. App'x 788 (11th Cir. 2016) ......................................................................................3

*Treco Int'l S.A. v. Kromka*,
706 F.Supp.2d 1283 (S.D. Fla. 2010) ...............................................................................19

*U.S. v. Turkette*,
452 U.S. 576 (1981) ...........................................................................................................11

*Virgilio v. Ryland Grp., Inc.*,
680 F.3d 1329 (11th Cir. 2002) .........................................................................................18

*Walter v. Jet Aviation Flight Servs., Inc.*,
CASE NO. 9:16-CV-81238-ROSENBERG/BRANNON, 2017 WL 3237375
(S.D. Fla. July 31, 2017) ...................................................................................................19

*Ward v. Nierlich*,
617 F. Supp. 2d 1226 (S.D. Fla. 2008) ...............................................................................8

**Statutes and Rules**

18 U.S.C. § 1341.....................................................................................................................5

18 U.S.C. § 1343..................................................................................................................5, 6

18 U.S.C. § 1962................................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ............................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 2

Fla. Stat. § 501.201. ....................................................................................................................16

Defendants North American Automotive Services, Inc. d/b/a Napleton Automotive Group ("NAG"), EFN West Palm Motor Sales, LLC d/b/a Napleton's West Palm Beach Hyundai ("West Palm Hyundai" and together with NAG, the "Corporate Defendants"), Edward W. Napleton (misnamed in the complaint as Edward Napleton, Jr, ."Napleton"), Gene Khaytin ("Khaytin"), and Ernie Revuelta ("Revuelta") (the "Individual Defendants, and together with the Corporate Defendants the "Defendants"), by and through their attorneys Arent Fox LLP and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move for dismissal, with prejudice, of the Complaint (ECF No. 1) filed by Plaintiff Hyundai Motor America Corporation ("Plaintiff" or "HMA"). In support of this Motion, Defendants state:

## PRELIMINARY STATEMENT

This case is a blatant misuse of the federal RICO statute, generating national press coverage with vague allegations of wrongdoing and legally deficient claims. HMA has attempted to shoehorn a garden-variety contractual dispute over its warranty claims submission process into a civil RICO action for trebled damages based on wholly conclusory allegations of mail and wire fraud. But the Complaint fails as a matter of law. Its allegations are neither particular (as Rule 9b requires) nor plausible. Since the fraud predicates fails, so too fail the RICO and RICO Conspiracy claims. Plaintiff's derivative common law and statutory claims fail for similar reasons, including lack of standing. The Complaint cannot be cured and should be dismissed with prejudice.

## STATEMENT OF FACTS

Defendants accept the truth of HMA's allegations as stated for purposes of this Motion only. HMA is the distributor of Hyundai motor vehicles in the United States, including the Hyundai Sonata and Santa Fe. Compl. ¶ 11. HMA distributes its vehicles through a network of independent dealers, including West Palm Hyundai. *Id*. HMA provides a New Vehicle Limited Warranty on its vehicles that provides for the repair or replacement of defective parts. *Id*. ¶ 13.¶ Moreover, HMA

uses certain safety recalls and service campaigns for specific vehicles and offers, *inter alia*, enhancements to the warranty coverage on those vehicles in certain instances. *See id*. ¶¶ 18-24. For these vehicles, HMA extended the warranty period beyond the initial 10-year/1000,000 mile period and extended coverage to subsequent owners. *Id*. ¶ 24. HMA compensates dealers like West Palm Hyundai for repairing vehicles under warranty (or covered by a safety recall or service campaign) by paying them for the repairs after submitting claims to an online portal. *Id*. ¶ 28.

HMA alleges that "at least as far back as 2016, Defendants began buying up Hyundai Sonata and Santa Fe vehicles from auction houses. Defendants would then present fraudulent warranty claims about these vehicles to HMA though [its online portal for payment]." *Id*. ¶ 29. HMA further alleges that "[d]efendants misrepresented the condition of these vehicles; presented vehicles with excessive damage (*i.e*., they were not roadworthy or were in inoperable condition); misrepresented the actual value and/or actual purchaser of these vehicles; and presented vehicles with supposed failed engines when the prior owners never had any issue with the operation or function of the engine." *Id*. ¶ 30. While HMA claims it "investigated" the foregoing (*see id*. ¶ 31), it identifies only two instances of alleged wrongdoing (*see id*. ¶¶ 50-51). Additionally HMA alleges that the Defendants "continued the fraudulent scheme and by January 2019, Defendants were destroying as many as 22 engines a month." *Id*. ¶ 54. HMA identifies no particular facts of the purported fraud, including which claims were fraudulently submitted, which of the Defendants was "destroying" the engines, and when the engines were destroyed.

## **STANDARD OF REVIEW**

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must plead enough facts to "state a claim [ ] that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court must accept any well-pled allegations as true, "'[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'" *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1216 (S.D. Fla. 2020) (citations omitted).

Further, where, as here, the Complaint sounds in fraud, it must also comply with the heightened pleading standard of Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Drummond*, 454 F. Supp. 3d at 1216. In a multiple defendant case, each defendants' role must be identified independently. *See Transatlantic, LLC v. Humana, Inc.,* 666 F. App'x 788, 789 (11th Cir. 2016).

The Complaint fails to satisfy these minimal pleading standards and must be dismissed.

## **ARGUMENT**

### **I.   Plaintiff's Federal RICO Claim Fails as a Matter of Law (Count II)**

Count II alleges that all Defendants violated the RICO Act, which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A "plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (citation omitted). In addition, "[a] civil plaintiff must also show '(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation.'" *Id*.

Though each of the four substantive violations of the RICO Act contain slightly different elements, "[e]ssential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a 'pattern of racketeering activity.'" *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). Because the Complaint fails to plausibly allege even these most basic requirements to state a RICO violation, it must be dismissed.

> **A.   Plaintiff Fails to Plausibly Allege A *Pattern* of *Racketeering Activity***

"To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original). The Complaint fails to allege these fundamental requirements.

> **1.   *The Complaint Fails to Allege Predicate Acts.***

HMA has not pled and cannot prove that Defendants engaged in two predicate acts of "racketeering activity." HMA's Complaint is riddled with sprawling, conclusory claims that allege a pattern of racketeering activity consisting **entirely** of the predicate acts of mail and wire fraud. *See* Compl. ¶ 88. "An alleged pattern of racketeering consisting of predicate acts of mail and wire fraud 'must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard.'" *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1218 (S.D. Fla. 2020) (citation omitted). "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (citations omitted).

"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that

scheme." *Ellis v. Warner*, CASE NO. 15-10134-CIV-GOODMAN, 2017 WL 634287, at \*7 (S.D. Fla. Feb. 16, 2017). Thus, HMA must plead and establish that each Defendant "**had a conscious, knowing intent to defraud**" HMA and "that a reasonably prudent person would have been deceived by [the] misrepresentation[]." *See Ellis*, 2017 WL 634287 at \*7 (emphasis added).

HMA's bald assertions that all "Defendants" acted "willfully, and with actual knowledge" cannot save its claims from dismissal. (Compl. ¶ 81). Rather, HMA must allege specific facts that plausibly show each Defendant acted with the requisite criminal intent. *Ellis*, 2017 WL 634287 at \*7. It cannot lump all the Defendants together in a conclusory fashion.

Moreover, the Complaint actually alleges that the Corporate Defendants <u>tried to stop</u> any fraudulent scheme. HMA alleges that after NAG executives discovered the purported "scheme," those executives ordered Napleton, Khaytin, and Revuelta to "cease and desist employing the fraudulent scheme." Compl. ¶ 38. And while the Complaint alleges in conclusory fashion that NAG and West Palm Hyundai concealed the purported fraudulent scheme from HMA (Compl. ¶ 38), it fails to allege the existence of a special fiduciary or statutory duty to disclose this information. Absent such allegations, mail or wire fraud claims cannot be based on any purported non-disclosure. *See Drummond*, 454 F. Supp. 3d at 1219.

HMA's allegations of mail and wire fraud are also not pled with the requisite particularly required by Rule 9(b), which requires allegations as to the time, place, content of, and parties to the fraudulent communications, as well as how HMA itself was deceived by those communications. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010). HMA cannot lump all Defendants together; rather it "must allege facts with respect to each defendant's participation in the fraud." *Id.* at 1291. HMA has failed to do so.

HMA's allegations that "**Defendants** willfully and with actual knowledge committed multiple acts of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C.

§ 1343," (Compl. ¶ 88), are woefully deficient. HMA does not even try to allege the time, place, content of, and parties to the fraudulent communications, let alone each Defendant's precise role in carrying out the purportedly fraudulent scheme. Because HMA's allegations are both vague and conclusory allegations and improperly group all Defendants together, they are insufficient to put *each* defendant on notice as to the alleged wrongdoing and the Complaint must be dismissed. *See Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1218 (S.D. Fla. 2020); *Ellis v. Warner*, CASE NO. 15-10134-CIV-GOODMAN, 2017 WL 634287, at *8 (S.D. Fla. Feb. 16, 2017).

### 2.     *Plaintiff's Allegations Fail to Establish Continuity*

HMA has also failed to sufficiently plead allegations establishing that Defendants' criminal conduct amounts to or poses a threat of *continued* racketeering activity [*i.e.* "continuity"], which is a fundamental element of any civil RICO claim. *Jackson*, 372 F.3d at 1264. As stated by the Eleventh Circuit, "[t]he continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Jackson*, 372 F.3d at 1265.

Even if HMA had properly alleged the existence of predicate acts (it has not), HMA fails to establish continuity under a "closed-ended" or "open-ended" concept.

### a.     *HMA Fails to Allege Criminal Activity Over a Substantial Period of Time as Required to Allege Closed-Ended Continuity.*

HMA fails to plead facts to plausibly establish a closed-ended theory of continuity where a plaintiff may "demonstrate continuity over a closed period by proving a series of related predicates extending over a **substantial period of time**." *Jackson*, 372 F. 3d at 1265 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989)).

Though HMA, without more, alleges that Defendants committed multiple acts of mail and

warranty fraud "over a one-year time period spanning from at least as early as 2017 to 2020," Compl. ¶ 88, "the relevant time period for closed-ended continuity analysis is the period between the related predicate acts." *Ellis*, 2017 WL 634287, at \*21; *see H.J., Inc.*, 492 U.S. at 242; *Jackson*, 372 F.3d at 1266. "[T]he duration of the pattern of racketeering activity must be measured by the specific RICO predicate acts that a particular defendant allegedly committed. . . . [T]he mere fact that other defendants may have committed racketeering acts will not save a claim against other defendants that is deficient for failure to sufficiently allege closed-ended continuity." *Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*, Case No. 10-22147, 2011 WL 13220625, at \*7 (S.D. Fla. Mar. 3, 2011). "Moreover, the relevant period for determining continuity is "the time during which predicate activity occurred, not the time during which the underlying scheme operated." *Id.*

HMA's allegations are far too superficial and nebulous to support a finding of closed-ended continuity. HMA alleges no specific predicate racketeering acts and therefore does not allege specific dates to assess continuity for **any of the Defendants**. Concerning the Corporate Defendants, HMA does not allege when or even how they purportedly concealed the fraudulently warranty scheme from HMA, save for a passing reference to it occurring some point after "mid to late 2017." (*See* Compl. ¶¶ 33, 38). The allegations are just as sparse as to the dates that Napleton, Khaytin, and Revuelta purportedly engaged in any mail or wire fraud. HMA cannot establish continuity, and stave off dismissal, based on vague and murky references to an underlying "scheme" that purportedly began in 2016 and continues "through the present." (Compl. ¶ 49). *See Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*, 2011 WL 13220625, at \*7 (S.D. Fla. Mar. 3, 2011). Nor can the Individual Defendants' conduct be imputed to one another to cobble together a time period sufficient for closed-end continuity. *See id*.

Here, the Complaint identifies only two instances of alleged mail and wire fraud, (Compl. ¶¶ 50-51), which frames the relevant time period for closed-ended purposes. *Ellis,* 2017 WL

634287. Neither instance is pled with the requisite particularity. The first alleged instance of racketeering conduct involves a warranty claim submission on an unspecified date in 2017. Compl. ¶ 51. The second warranty claim submission took place on an unspecified date in 2019. Compl. ¶¶ 50. Alone, the failure to identify the dates these acts occurred is fatal to the Complaint for all the reasons discussed *supra*. But even assuming the truth of the allegations and drawing all reasonable inferences in HMA's favor, the alleged predicate acts occurred, at most, over a two-year period. These meager pleadings fail to establish closed-ended continuity.

Closed-ended continuity is not simply a temporal concept. Rather, in assessing whether predicate acts extended over a substantial period of time for closed-ended continuity purposes, courts also consider the "number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity." *Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1238 (S.D. Fla. 2008). Indeed, the Eleventh Circuit has emphasized, like other courts throughout the country, that "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1267 (11th Cir. 2004) (citing cases); *see, e.g.*, *Catano v. Capuano*, Case No. 18-20223-Civ-TORRES, 2019 WL 3035752, at *4 (S.D. Fla. July 11, 2019) (granting summary judgment on federal RICO claims, concluding "that – irrespective of the length of the alleged [four-year] conspiracy – closed-ended continuity cannot exist because Plaintiff merely alleges that the only goal in this case was to embezzle, divide, and launder $2 million dollars of Mr. Capuano's estate"); *Ward*, 617 F. Supp. 2d at 1237-39 (dismissing for lack of closed-ended continuity where, *inter alia*, "[a]ll of Defendants' alleged acts only constitute one scheme to accomplish the discrete goal of gaining control of the Reserve, and this behavior was only directed at a small, interrelated group of victims"); *see also, e.g., Fernau v.*

*Enchante Beauty Prods., Inc.*, Civil Action No. 18-20866-Civ-Scola, 2019 WL 5268541, at *1 (S.D. Fla. Oct. 17, 2019) (dismissing Florida civil RICO claims for failure to allege closed-ended continuity where plaintiff alleged three predicate acts that occurred over a nineteen-month period "to carry out a single scheme that was neither complex nor large"); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (finding 15 predicate acts that occurred over three year period did not establish pattern of racketeering activity where complaint alleged limited number of victims, a single scheme, and one injury); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006) (noting a lack of closed-ended continuity where two and a half year scheme was "keyed to Defendants' single objective of depriving [plaintiff] of his benefits" and "[n]o other schemes, purposes, or injuries are alleged[.]").

Here, HMA alleges one scheme (the submission of fraudulent warranty claims concerning recalled engines), one goal (warranty reimbursement), with one victim (HMA). Thus, irrespective of the length of the alleged fraudulent warranty scheme, closed-ended continuity cannot exist as a matter of law. The allegations related to this scheme, even when viewed in the light most favorable to HMA, "are not of the nature to establish the sort of offense that RICO was designed to address." *Catano*, 2019 WL 3035752, at *4. Accordingly, the Complaint must be dismissed with prejudice.

> b.    ***HMA's Open-ended Continuity Theory Fails as a Matter of Law.***

HMA also fails to plead an open-ended continuity theory. "Often a RICO action will be brought before continuity can be established [via a closed-ended theory]. In such cases, liability depends on whether the threat of continued illegal activity is demonstrated." *Jackson*, 372 F. 3d at 1265 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989)). To plead an open-ended theory, the plaintiff must allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Jackson*, 372 F. 3d at 1265.

The Complaint itself belies the possibility that HMA could establish continuity under an open-ended concept. According to HMA, after NAG discovered the purported fraud scheme in or around mid to late 2017, it thereafter ordered the other Defendants "to cease and desist employing the fraudulent scheme." Compl. ¶ 38. As a matter of law, the Complaint conclusively establishes that the alleged criminal conduct was not part of the Defendants' regular way of doing business.

Nor can HMA establish that the allegedly illegal acts pose a threat of continued criminal activity in the future. HMA alleges, again in conclusory fashion, that "Defendants' criminal conduct will continue, with respect to this scheme and potentially others," and "upon information and belief, Defendants have engaged in similar schemes in connection with other unrelated recalls in the automotive industry in the past." (Compl. ¶ 90). But these vague and unsubstantiated allegations, which need not be accepted as true, cannot establish open-ended continuity as a matter of law. *See Jackson*, 372 F.3d at 1268 ("we cannot find that the evidence suggests the alleged acts of mail and wire fraud pose any threat of continued criminal activity reaching into the future … the plaintiffs make no claim that the defendants' conduct suggests a threat of future fraud."). Here, HMA only alleges that Defendants submitted false warranty claims in a specific engine recall campaign. A recall campaign by its very nature is not everlasting, but at some point ends. And HMA's alleged concern that such conduct may be repeated in the future in some other recall campaign does not magically create open-ended continuity.

Finally, even assuming the truth of HMA's allegations that the Corporate Defendants concealed the scheme from HMA, these allegations cannot establish open-ended continuity as a matter of law. (*See* Compl. ¶¶ 38, 55). "[I]n this Circuit, there is little question that attempts to conceal an initial fraudulent act are not sufficient to establish open-ended continuity." *Jackson*, 372 F.3d at 1268. For these reasons, Plaintiff has failed to allege a pattern of racketeering activity.

**B.      The Complaint Fails to Allege a RICO "Enterprise"**

Though it is unclear precisely what HMA alleges the "enterprise" was, HMA appears to allege that NAG, West Palm Hyundai, Napleton, Khaytin, and Revuelta are both the Defendants **and** the members of the RICO "enterprise." *See* Compl. ¶ 84. HMA's attempt to plead an "association-in-fact" enterprise must fail as a matter of law. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) (racketeering enterprise consisting of airline, airline officers, and vendors/consultants was an "association-in-fact" enterprise).

### 1.      *HMA Fails to Plead the Existence of a RICO Enterprise that Is Separate and Apart from the Alleged Racketeering Conduct.*

A RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson*, 372 at 1264 (11th Cir. 2004). But a RICO enterprise must be an "entity separate and apart from the pattern of activity in which it engages." *Catano*, 2019 WL 3035752 at *6 (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).

HMA fails to plead allegations that plausibly establish the purported enterprise is an entity separate and apart from the alleged racketeering conduct in which the entity purportedly engaged. The Complaint states that the Defendants engaged in the purported fraudulent scheme "for the purposes of intentionally defrauding [HMA] since at least 2016" by purchasing and damaging engines "intending for [HMA] to perform unjustified warranty work." Compl. ¶ 87. But the Plaintiff never alleges that that purported "enterprise" engaged in any conduct other than the predicate acts of mail or wire fraud themselves. Thus, the Complaint fails to allege a cognizable RICO enterprise as a matter of law. *See Catano*, 2019 WL 3035752, at * 7 (dismissing case where "there is zero evidence that this enterprise committed anything other than the predicate acts.").

### 2.      *Plaintiff Fails to Allege the Existence of a RICO Enterprise that Is Separate and Distinct from the RICO Defendants*

Moreover, Plaintiff has not alleged that the RICO defendants are distinct from the RICO

"enterprise." "Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant "person" and the "enterprise" itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." *Ray,* 836 F.3d at 1355 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001)). The distinctness requirement stems from Section 1962(c) of the RICO statute itself, which prohibits any "person" (*i.e.,* the defendant) "employed by or associated with any enterprise" from conducting the affairs of that enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). "It does not make sense for a person to employ or associate with himself. Thus, an enterprise may not simply be a "'person' referred to by a different name." *Ray*, 836 F.3d at 1355 (quoting *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 160).

Crafty litigants cannot plead around the defendant/enterprise distinction by alleging that the enterprise is an association in fact enterprise consisting of a corporate defendant and its principals, agents, or subsidiaries. Indeed, the Eleventh Circuit has conclusively held that a plaintiff "may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees" and therefore "there is no distinction between the corporate person and the alleged enterprise." *Ray*, 836 F.3d at 1357. If it were otherwise, this "would broaden RICO beyond any reasonable constraints. . . . Because every corporation acts through its own employees as a matter of course, allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation." *Id.* (citations omitted).

Here, HMA alleges the Defendants are both the RICO persons and the enterprise, which is improper. The purported members of the alleged enterprise are: the corporate parent (Defendant NAG), its subsidiary (Defendant West Palm Hyundai), plus some of its officers and current or former employees (Defendants Napleton, Revuelta, and Khaytin). (*See* Compl. ¶¶ 3-7, 84).

Assuming the truth of these allegations, the person/enterprise distinction cannot be established as a matter of law. *See Ray*, 836 F.3d at 1357; *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (noting that the required person/enterprise distinction "cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees"); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) (affirming dismissal against Chrysler Corporation where the alleged enterprise consisted of the corporation, subsidiaries of the corporation, franchised Chrysler dealers, and trusts controlled by the corporation); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 343-45 (2d Cir. 1994) (corporation and its employees cannot be both the defendants and the enterprise); *Lockheed Martin Corp. v. Boeing Co.,* 314 F. Supp. 2d 1198, 1216-17 (M.D. Fla. 2004) (dismissing RICO claims against Boeing under § 1962(c), concluding that Boeing could not be held liable as a RICO "person" because it was not sufficiently distinct from alleged association-in-fact "enterprise" consisting of employees and former employee of competitor who allegedly stole competitor's trade secrets). Plaintiff's RICO claims fail for lack of distinctness. The Complaint must be dismissed for this reason as well.

### 3. *The Complaint Fails to Allege Each Defendant's Participation in the Purported Enterprise's Affairs*

Even if HMA could prove the existence of a distinct "enterprise," it still has pled no facts regarding an enterprise and cannot prove that Defendants "operated or managed it." In order to establish RICO liability under Section 1962(c), "a plaintiff must also establish that the defendant participated in operating or managing the enterprise itself." *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1219 (S.D. Fla. 2020). Defendant must have "conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original) (internal quotation omitted). This requires allegations

"demonstrating 'affirmative and deliberate participation' **by *each* defendant in 'the conduct of the affairs of the enterprise' by 'knowingly implement[ing] and ma[king] decisions' concerning the alleged racketeering activity pattern**." *'Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC,* 2011 WL 13220625, at \*5 (S.D. Fla. Mar. 3, 2011) (citations omitted; emphasis added).

The Complaint is devoid of any allegations showing each Defendant's role in directing the affairs of the purported enterprise. HMA alleges, without more, that "Defendants were and remain employed by and/or associated with the enterprise." Compl. ¶ 85. This wholly conclusory allegation cannot carry the day. Nor can HMA's additional baseless allegation that "Defendants… conducted and participated in the affairs of the enterprise by purchasing and deliberately damaging Hyundai vehicles." Compl. ¶ 87. HMA must plausibly show how *each defendant* participated in the enterprise; it cannot lump all defendants together in a cryptic, conclusory fashion.

## II.     **Because Plaintiff Has Failed to Allege a RICO Violation, Its RICO Conspiracy Claim Necessarily Fails as a Matter of Law (Count III).**

In Count III, HMA alleges that all Defendants also conspired to violate the RICO Act. 18 U.S.C. § 1962(d). Here, because HMA's underlying substantive RICO "cause of action is not viable, the conspiracy claim must also fail." *Jackson*, 372 F.3d at 1269.

Even assuming the underlying substantive claim is viable (and it is not), HMA has still failed to plausibly allege a RICO conspiracy claim. "A RICO conspiracy requires either showing: (1) an agreement with the overall objective of the conspiracy; or (2) an agreement to commit two predicate acts." *Drummond*, 454 F. Supp. 3d at 1218. HMA does not plead (and cannot prove) the requisite meeting of the minds between the alleged conspirators on either of these two elements. *See Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010); *see also Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta* , 530 F.3d 1339, 1353 (11th Cir. 2008).

Count III provides **<u>no specific</u>** facts as to each Defendant and instead, once again sweepingly

14

refers to all defendants as conspirators and alleges that Defendants "agreed to and conspired to defraud [HMA]" and to commit predicate acts in furtherance of the conspiracy. (*See* Compl. ¶¶ 94-95). But "[c]onclusory allegations or a 'bare bones' statement of conspiracy" will not survive a motion to dismiss. To the contrary, a plaintiff must allege facts to support each defendant's willingness and intent to participate in a conspiracy." *Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*, No. 10-22147-CIV, 2011 WL 13220625, at *11 (S.D. Fla. Mar. 3, 2011). This claim must fail.

### III.   <u>Plaintiff has Failed to State Claims for its Non-RICO Causes of Action</u>

HMA also alleges violations of Florida law. In deciding these claims, the Court must apply Florida's substantive law. *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938). For the reasons stated below, Plaintiff's non-RICO claims (Counts I, IV-VIII) all fail as a matter of law.

#### A.   **Plaintiff Fails to Plead Fraud with the Particularity Rule 9(b) Requires**.

Under Florida law, the elements of fraud are: 1) a false statement concerning a material fact; 2) the representor's knowledge that the representation is false; 3) an intention that the representation induce another to act on it; and 4) consequent injury by the party acting in reliance on the false representation. *Meridian Tr. Co. v. Batista,* Case No. 17-23051-WILLIAMS, 2018 WL 4760277, at *3 (S.D. Fla. Sept. 30, 2018). Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires the Plaintiff to "allege with particularity, including allegations that they actually relied on the misrepresentations or omissions." *Id*. To meet this burden, the Plaintiff must allege: "(1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) it; (3) the content of such statements and the manner in which they caused the plaintiff to be misled; (4) what the defendants obtained as a result of the fraud." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020).

As noted in Section I(A)(1) *supra*, Plaintiff makes conclusory allegations of fraud that fall well short of Rule 9(b)'s heightened pleading standards. Plaintiff alleges that the Individual

15

Defendants collectively engaged in fraudulent warranty submissions yet fails to precisely identify what statements were made, the time and place of each statement and the person making it, and the content of such statements. As such, Count I must be dismissed in its entirety.

HMA's closest attempt still misses Rule 9(b)'s mark. HMA alleges that West Palm Hyundai purchased two vehicles that subsequently experienced engine failure. *See* Compl. ¶¶ 50-51. It then makes a conclusory claim that "KHAYTIN and REVUELTA worked with current and former service technicians at [West Palm Hyundai] and current and former executives, officers, employees, and consultants of Napleton Automotive Group to intentionally damage the engines of these and other vehicles." *Id*. ¶ 52. Later, HMA claims that the Defendants were "destroying as many as 22 engines in a month" (*see id*. ¶ 54) and that Napleton "repeatedly approved the inventory overrun knowing that the vehicles would be used as part of the fraudulent engine-blowing scheme by which his dealership was profiting" (*see id*. ¶ 53). Yet HMA again failed to identify the "who, what, when, where, and how" that Rule 9(b) requires. *See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd*., No. 10-22153-CIV., 2011 WL 4434891, *2 (S.D. Fla. Sept. 23, 2011).

Failing to plead fraud with particularity, HMA's fraud claim should be dismissed.

### B.     HMA Fails to State a Claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

HMA's claim under the FDUTPA (Fla. Stat. §§ 501.201 *et seq*.) must be dismissed because the alleged conduct is not regulated under FDUTPA, and even if it was, HMA failed to state or claim or plead facts with particularity. In order to state a claim under the FDUTPA, a plaintiff must allege: 1) a deceptive act or unfair trade practice; 2) causation; and 3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). A practice is unfair under FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers." *Toca*, 430 F. Supp. 3d at 1328 (citation

omitted). FDUTPA is intended to protect the consuming public. The term "consumer" has been interpreted to apply to the purchase of goods and services. *In re Maxxim Medical Group, Inc. et al. v Professional Hospitality Supply, Inc.*, 434 B.R. 660 (Bankr. M.D. Fla. 2010). FDUTPA has no application here, where the alleged tortious conduct by the Individual Defendants was not the result of a consumer transaction. *See id.* at 223 ("FDUTPA has no application to entities complaining of tortious conduct which is not the result of a consumer transaction.").

Even assuming that FDUTPA applies here (it does not), the claim must still be dismissed. A deceptive act occurs when a defendant makes "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, CASE No. 17-cv-81100-BLOOM/Hopkins, 2018 WL 1072211, at *6 (S.D. Fla. Feb. 27, 2018) (citation omitted). If the FDUTPA claim "sounds in fraud," then Rule 9(b)'s pleading requirements apply. *Meridian Tr. Co.*, 2018 WL 4760277, at *3. Moreover, "it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F.Supp.2d 1178, 1195 (S.D. Fla. 2013).

Here, HMA's FDUTPA claim sounds in fraud and, in fact, relies on the same set of operative facts HMA relies on for its fraud and RICO claims. For the same reasons stated in Section III(A) *supra*, HMA has failed to allege a FDUTPA claim with particularity. Moreover, HMA has alleged that Khaytin, Revuelta, and Napleton (who are individuals) violated the FDUTPA. Accordingly, HMA must allege that each of these individuals were direct participants in the alleged improper dealings. *E.g., see id*. ("To hold an individual liable for corporate violations of the FTC Act, it is necessary to show that an individual defendant actively participated in or had some measure of control over the corporation's deceptive practices and that the defendant had or should

have had knowledge or awareness of the misrepresentations.") (citations and quotations omitted). Conclusory allegations are insufficient. *See id*. HMA's conclusory allegations that Khaytin, Revuelta, and Napleton engaged in fraudulent activity falls well short of the heightened pleading standards for claims that sound in fraud. HMA's FDUTPA claim, therefore, must be dismissed.

### C.    Plaintiff Fails to State a Claim for Unjust Enrichment.

Under Florida law, the doctrine of unjust enrichment (sometimes called a "contract implied in law," "quasi-contract," and various other terms) governs the situation in which one party has conferred a valuable benefit on another in the absence of a contract but "under circumstances that ma[ke] it unjust to retain it without giving compensation." *See Magwood v. Tate*, 835 So.2d 1241, 1243 (Fla. Dist. Ct. App. 2003). There are three elements of a Florida law unjust enrichment claim: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant voluntarily accepts and retains the benefit; and 3) the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2002). "At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution to the other." *Gonzalez v. Eagle Ins. Co.*, 948 So.2d 1, 3 (Fla. Dist. Ct. App. 2006).

Here, HMA's claim fails as a matter of law for two independent grounds. First, a contract exists between HMA and West Palm Hyundai so therefore HMA cannot claim unjust enrichment. *See* Compl. ¶ 104 ("HMA has a business relationship and Dealer Sales and Service Agreement with [West Palm Hyundai] under which HMA has legal rights."). Second, HMA has failed to allege that it, and not West Palm Hyundai, conveyed a benefit directly to Khaytin, Revuelta, or Napleton *See* Compl. ¶¶ 117-119 (alleging merely that the Individual Defendants received compensation based on the purported fraud but fails to allege it was HMA that paid this compensation to these defendants). HMA's unjust enrichment claim, therefore, must be dismissed.

**D.    Plaintiff Fails to State a Claim for Civil Conspiracy.**

The elements for civil conspiracy under Florida law are: 1) an agreement among two or more parties; 2) the doing of an unlawful act or a lawful act by unlawful means; 3) the doing of some overt act in pursuance of the conspiracy; and 4) damages to the plaintiff as a result of the acts done under the conspiracy. *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1440 (M.D. Fla. 1998) (citation omitted). Claims that are "inextricably linked" to dismissed claims must also be dismissed. *See id*. The civil conspiracy claim relies on the same alleged facts as HMA's other claims. This claim should therefore be dismissed along with the rest of the claims.

**E.    Plaintiff Fails to State a Tortious Interference Claim.**

Under Florida law, "[a] claim for interference with a contractual relationship requires: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Treco Int'l S.A. v. Kromka*, 706 F.Supp.2d 1283, 1288 (S.D. Fla. 2010). The elements for tortious interference with business relationship are: 1) the existence of a business relationship that affords the plaintiff existing or prospective rights; 2) the defendant's knowledge of the business relationship; 3) the defendant's intentional and unjustified interference with the relationship; and 4) damage to the plaintiff. *Hakim-Daccach v. Knauf Int'l GmbH*, Civil Action No. 17-20495-Civ-Scola, 2017 WL 5634629, at *6 (S.D. Fla. Nov. 22, 2017).

Claims for both tortious interference with contract and tortious interference with business relationship require an interfering defendant "[to be] a stranger to the business relationship." *See Walter v. Jet Aviation Flight Servs., Inc.*, CASE NO. 9:16-CV-81238-ROSENBERG/BRANNON, 2017 WL 3237375, at *8 (S.D. Fla. July 31, 2017). A defendant is not "a stranger to the business" or contractual relationship if the defendant 'has any beneficial or economic interest in, or control over, th[e] relationship.'" *Id.* quoting *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320

(S. D. Fla. 2014). "[Additionally], an agent of a corporate party to the business relationship cannot be held liable for tortious interference if he was acting within his capacity and scope as an agent of the corporation." *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F.Supp. 2d at 1199. "Thus, a corporate officer is not liable for tortious interference unless he acted outside the scope of his employment or against the best interests of his corporation." *Id.*

Here, Count V must be dismissed against Napleton because HMA has not alleged that he is a "stranger to the business relationship." To the contrary, HMA alleges Napleton received distributions, dividends, and/or bonuses" he was not entitled to receive. Compl. ¶ 119. That makes Napleton a party with a "beneficial or economic interest in, or control over, the relationship" and therefore Count V must be dismissed against him.

Count V must be dismissed against Khaytin and Revuelta as well. HMA's own allegations contradict its tortious interference claim against Khaytin and Revuelta. HMA alleges that Napleton is "the director of operations for [NAG], the regional manager for Napleton dealerships in Southeast Florida, and responsible for oversight of [West Palm Hyundai]" and that Khaytin and Revuelta are (or were) employees of West Palm Hyundai. *See id.* ¶¶ 5-7. By HMA's own allegations, which must be taken as true, neither Khaytin and Revuelta were acting outside of their scope of employment engaging in the alleged fraudulent warranty scheme with Napleton's knowledge and blessing. *See id.* ¶¶ 39-40 (alleging that Napleton advised Khaytin to keep him informed of the schemes and that the three "continued to work together to defraud HMA.").

Accordingly, HMA's tortious interference claim must be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully requests that this Court grant their Motion and dismiss Plaintiff's Complaint in its entirety, with prejudice, for failure to state a claim. A proposed Order is annexed hereto as **Exhibit A**.

Dated: December 24, 2020

Respectfully submitted,

**ARENT FOX, LLP**
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
Tel: (212) 484-3900

By: *_/s/ Charles A. Gallaer_*
Russell P. McRory (*pro hac vice* forthcoming)
Michael P. McMahan (*pro hac vice* forthcoming)
Charles A. Gallaer (Fl. Bar #117729)

*Attorneys for Defendants*