UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 20-82102-MATTHEWMAN

HYUNDAI MOTOR AMERICA
CORPORATION,

    Plaintiff,

vs.

EFN WEST PALM MOTOR SALES,
LLC, *et al.*,

    Defendants.
_____/

FILED BY KJZ D.C.

Mar 1, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING THIRD-PARTY DEFENDANT JOSÉ MUÑOZ'S MOTION FOR SUMMARY JUDGMENT [DE 238]

**THIS CAUSE** is before the Court upon Third-Party Defendant, José Muñoz's ("Muñoz"), Motion for Summary Judgment ("Motion") [DE 238]. The Motion is fully briefed [DEs 239, 258, 259, 260, 261, 262], and the parties were permitted to conduct jurisdictional discovery. *See* DE 246. The matter is now ripe for review, and the Court has carefully considered the filings and attachments thereto, as well as the entire docket in this case.

### I.    UNDISPUTED MATERIAL FACTS

The following facts are drawn from the parties' respective statements of material facts ("SMF") [DEs 239, 259, 261], the exhibits attached thereto, and the supporting declarations [DEs 238-1, 239-1, 258-4, 258-8, 260-4, 262-1].

José Muñoz is a resident of the State of Tennessee and has a Tennessee driver's license. [Muñoz SMF ¶¶ 1-2, DE 239]. He does not live in the State of Florida. *Id.* at ¶ 4. Muñoz does not own property in the State of Florida, does not have a Florida driver's license, and is not registered

1

to vote in Florida. *Id.* at ¶¶ 6-8. In 2020, Mr. Muñoz paid state income taxes in Tennessee and California. [Muñoz Decl. dated 1/28/22 at ¶ 4, DE 262-1].

Muñoz is the President and Chief Executive Officer of Hyundai Motor America Corporation ("HMA") and assumed this role on May 1, 2019. [Muñoz SMF ¶¶ 9-10]. Muñoz is also the President and Chief Executive Officer of Hyundai Motor North America ("HMNA") and assumed this role on May 1, 2019. *Id.* at ¶¶ 11-12. Additionally, he is the Global Chief Operating Officer for Hyundai Motor Company ("HMC") and assumed this role on May 1, 2019. *Id.* at ¶¶ 13-14. HMC is a South Korean company that manufactures and ships new motor vehicles to numerous countries. *Id.* at ¶ 15. HMC's principal place of business is in Seoul, Korea. *Id.* at ¶ 16. HMA is a wholly owned subsidiary of HMC that distributes new motor vehicles throughout a network of independent dealers in the United States. *Id.* at ¶ 17. HMA is incorporated under the laws of the State of California, and its principal place of business is in Fountain Valley, California. *Id.* at ¶¶ 18-19. HMNA is an unincorporated division of HMA that is engaged in the distribution of vehicles in HMC's North American region. *Id.* at ¶ 20. HMNA's principal place of business is located in Fountain Valley, California. *Id.* at ¶ 21.

Muñoz has traveled to Florida ten times since 2015. [EFN[1]'s SMF ¶ 27, DE 259; Muñoz's Reply SMF ¶1, DE 261; Interrogatory Responses, DE 161-1 at 2]. He conducts business during his travels to Florida. [EFN's SMF ¶ 27]. Additionally, he was the CEO of HMA and COO of HMC during his five most recent visits to Florida. *Id.* at ¶ 28. Muñoz was in Florida as recently as December 18-20, 2021. *Id.* at ¶ 29. He visits dealers during his business travels around the country. *Id.* at ¶ 39.

---

[1] "EFN" is the Court's abbreviation EFN West Palm Motor Sales, LLC, the Third-Party Plaintiff and party responding to the Motion.

Muñoz is a co-signor on his daughter's residential lease in Miami, Florida. [EFN's SMF ¶ 33]. He has visited his daughter in her residence on multiple occasions. *Id.* at ¶ 33. Muñoz has no health condition that would prevent him from travelling to Florida and is able to perform his job remotely. *Id.* at ¶¶ 34-35. In fact, he has successfully performed his job remotely during stretches of time since the beginning of the COVID-19 pandemic. *Id.* at ¶ 36. HMA and/or HMC is covering the costs of Muñoz's counsel in this litigation and would cover the costs of any necessary travel to Florida and any necessary hotel lodging in Florida in connection with this litigation. *Id.* at ¶¶ 37-39.

## II.   MOTION, RESPONSE, AND REPLY

Muñoz argues that he is entitled to summary judgment because the Court "lacks specific personal jurisdiction over him as he is a non-resident without sufficient minimum contacts with Florida." [DE 238 at 1]. He further contends that this Court lacks personal jurisdiction over him because of Florida's corporate shield doctrine. *Id.* at 11.

In response, EFN argues that this Court has personal jurisdiction over Muñoz because he falls under Florida's long-arm statue because he committed intentional torts that caused injury in Florida. [DE 258 at 10]. EFN asserts that Florida's exercise of long-arm jurisdiction does not violate Muñoz's due process rights. *Id.* at 12. Finally, EFN maintains that Muñoz's declaration does not rebut the grounds for personal jurisdiction and that he is improperly trying to hide behind the Florida corporate shield doctrine. *Id.* at 17-20.

In reply, Muñoz first argues that he has not purposefully availed himself of Florida law because HMA is the party that filed the lawsuit in this case, because he did not direct that the lawsuit be filed in Florida, and because he caused no harm to a party in the forum state. [DE 260 at 5]. Next, Muñoz contends that EFN's claim did not arise out of or relate to his contacts with

3

Florida. *Id.* at 6. He additionally maintains that EFN is trying to improperly impute contacts to him by way of EFN's civil conspiracy claim. *Id.* at 8. Finally, Muñoz asserts that the corporate shield doctrine applies here. *Id.* at 10.

### III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electr. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

4

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

## IV.     THE LAW REGARDING PERSONAL JURISDICTION

The plaintiff carries the initial burden to plead sufficient facts for personal jurisdiction. *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1370–71 (S.D. Fla. 2019). The defendant may then rebut jurisdiction, relying on materials like affidavits, testimony, and other documents. *Id.* If the defendant is successful, the burden then shifts back to the plaintiff to provide evidence supporting jurisdiction. *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1340 (S.D. Fla. 2012). In considering the supporting materials, the court must construe all reasonable inferences in favor of the plaintiff. *Id.* Factual assertions must be supported by citations to record materials, and the court need only consider the cited materials. Fed. R. Civ. P. 56(c)(1)(A), (c)(3); *see also Seapower, Inc. v. Tonbo Imaging PTE LTD*, No. 20-61342-CIV, 2021 WL 5142695, at *2 (S.D. Fla. Nov. 4, 2021).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal citations omitted). "The reach of the [Florida long-arm] statute is a question of Florida

law. [F]ederal courts are required to construe [such law] as would the Florida Supreme Court. Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts." *Id.* at 1274-75 (citing *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir. 2002)).

"Florida's long-arm statute provides for both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)-(2)). "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *See id.*; *see also Fabrica de Fideos Rivoli, S.A. v. Famex Investments Limited,* 225 So.3d 312 (Mem) (Fla. 3d DCA 2017) (citing *Venetian Salamu Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989) (providing that personal jurisdiction over a nonresident defendant exists where: (1) the complaint alleges sufficient jurisdictional facts to satisfy Florida's long-arm statute, section 48.193 of the Florida Statutes; and (2) the nonresident defendant has sufficient minimum contacts with Florida to satisfy constitutional due process concerns)).

"In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Mosseri*, 736 F.3d at 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75 (1985)). The plaintiff carries the burden of satisfying the first two prongs, and, once parts one and two of this test are satisfied, the burden then shifts

back to the defendant on part three, that is, the defendant must then show that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018).

For a court to exercise specific personal jurisdiction, the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). "Or put just a bit differently, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (internal citations omitted). And as the Supreme Court recognized in *Ford*, "[t]he first half of [the arise out of or relate to] standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *See id.*

Under the Florida Statutes, "[a] person, whether or not a citizen or resident of this state" who commits "a tortious act within this state" effectively "submits himself or herself…to the jurisdiction of the courts of this state." Fla. Stat. § 48.193(2). "In *intentional* tort cases, there are two applicable tests for determining whether purposeful availment occurred"—the "effects test" or the "traditional purposeful availment analysis." *See Mosseri*, 736 F.3d at 1356 (emphasis in original) (internal citation omitted). "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008)). "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated in the forum state.'" *Id.* (citing *Licciardello*, 544 F.3d at 1285-86, 1287-88).

## V.     DISCUSSION AND ANALYSIS

In the Third-Party Complaint, EFN alleges that it has been injured by the intentional misconduct of Muñoz, a nonresident corporate officer. [DE 258 at 11]. EFN claims that Muñoz was not a bystander, but rather the decision-maker at HMA "who expressly authorized the lawsuit against West Palm with the explicit purpose of harming the Napletons." *Id.* at 11-12. EFN argues that it does not matter where Muñoz was physically located "when he conspired to interfere with West Palm's contractual relationship with Hyundai." *Id.* at 12. EFN asserts that his "out-of-state tortious acts are evidenced through email and telephonic communications." *Id.* In sum, EFN argues that "the allegations in the Third-Party Complaint along with the documents attached to this Opposition are enough to show that Florida's long-arm statute applies to Muñoz." *Id.*

In his reply, Muñoz argues that the "effects test" cannot be met here. [DE 260 at 4]. He first asserts that the "in-forum fact alleged to demonstrate that Mr. Muñoz's tort was intentional is HMA's (and not Mr. Muñoz's) filing of its lawsuit against EFN in Florida." *Id.* at 4. Muñoz contends that the record evidence establishes that he did not direct the lawsuit to be filed in Florida; thus, he engaged in "no action that was targeted at the forum state." *Id.* at 5. Finally, he contends that he caused no harm to a defendant in the forum state because HMA is the party who filed the lawsuit. *Id.* at 5-6.

In intentional tort cases, courts have used the "effects test" to determine whether purposeful availment exists. *Mosseri*, 736 F.3d at 1356–57; *see Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (providing authoritative statement for effects test doctrine). It appears that EFN is relying on the

8

"effects test" in its response. [DE 258 at 9-12].[2] As stated above, to satisfy the "effects test," the defendant's tort must have: "(1) [been] intentional; (2) [been] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286. "Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Mosseri*, 736 F.3d at 1356 (internal quotation marks omitted).

In the civil conspiracy count of the Third-Party Complaint, EFN alleges that, "[i]n or around July 2020, José Muñoz and other Hyundai executives conspired to defame West Palm by suing it for warranty fraud to punish the Napleton organization for refusing to be one of Muñoz's many submissive pawns." DE 191 at ¶ 186. In the tortious interference with a contract claim, EFN alleges in relevant part as follows:

> 193. José Muñoz and HMC intentionally and unjustifiably interfered with West Palm's business relationship and Agreement with HMA.
> . . .
> 197. José Muñoz did not act in good faith; he acted maliciously and with conspiratorial motives against West Palm and the Napleton organization. His goal was to take away "all of" Napleton's stores.
> . . .
> 199. José Muñoz and HMC embraced and adopted the baseless allegations of Mark Eddleman against West Palm, and peddled these allegations to impugn West Palm and the Napleton organization.
>
> 200. José Muñoz and HMC intentionally and unjustifiably endorsed these false allegations to provide a basis for HMA to terminate its Agreement with West Palm.
>
> 201. Muñoz and HMC's interference with West Palm's Dealer Sales and Service Agreement was not in the best interests of HMA.
>
> 202. José Muñoz's and HMC's actions have proximately hurt West Palm, in an amount to be proven at trial.

---

[2] The Court also notes that, even if EFN were proceeding under the "traditional purposeful availment analysis," the Court would grant summary judgment as the "traditional purposeful availment analysis" would constitute even more of an uphill battle for EFN than is the "effects test."

> 203. As José Muñoz's and HMC's conduct has been willful, wanton, and malicious, West Palm is entitled to punitive damages.

[DE 191].

However, the evidence that EFN has to support its allegations in the Third-Party Complaint is limited. First, EFN relies on an email sent by Muñoz in which he asked HMA's Executive Director of Dealer Development & Strategy, Robert Grafton, to "[p]lease set up an extraordinary meeting on this topic and invite Willy, Alex, Randy, Mark, Barry, you and I. They won't be able to [e]scape it." [DE 259 at 5; DE 259-7 at 1]. This email was in response to an email from Grafton regarding the engine fraud investigation of EFN. *Id.* During Muñoz's deposition, he explained the email as follows: "[T]his means if they have done something wrong they will have to pay for it…[W]e don't let things go." [DE 259 at 5 (citing Muñoz Deposition Transcript at 63:7-15)]. Second, EFN asserts that "jurisdictional discovery revealed that Muñoz has been accused of targeting dealers for destruction before during his time at Nissan." [DE 259 at 5]. EFN has attached as an exhibit to its response a lawsuit filed on December 19, 2019—*Moldo v. Nissan North America, et al.* (Cal. Sup. Ct. 19-ST-45899). [DE 259-9].

Additionally, in its Statement of Material Facts, EFN explains that "[t]here is no conclusive proof in the record, other than Muñoz's own say-so" that "all actions regarding Muñoz's decision to authorize Hyundai's lawsuit against West Palm took place in the State of California" or that "he did not direct Hyundai's baseless lawsuit against West Palm to be filed in Florida." [DE 259 at 6]. According to Hyundai, on these two points, Mr. Muñoz has "not met his burden of proof to establish this as an undisputed fact." *Id.*

The Court notes that, first, Muñoz has provided a declaration, which constitutes evidence. In that declaration [DE 238-1], he avers: "[i]n my role as CEO, with the consensus of HMA's

leadership team, I authorized legal counsel for HMA to file a lawsuit against Napleton's West Palm Beach Hyundai. My actions all occurred in California." *Id.* at ¶ 14. Muñoz also asserts, "I did not direct the lawsuit to be filed in Florida or any specific state." *Id.* at ¶ 15. EFN has provided no evidence which contradicts the assertions made in the declaration even though the Court permitted the parties to engage in jurisdictional discovery.

Next, EFN is asking the Court to make a logical leap that Muñoz intentionally and unjustifiably endorsed false allegations to provide a basis for HMA to terminate its Agreement with West Palm and that the lawsuit filed by HMA against EFN is baseless. However, Muñoz did not file the lawsuit, HMA did. The Court finds that EFN's claims against Muñoz are too attenuated to meet the "effects test." Moreover, the circumstantial evidence relied on by EFN does not appear to support the two counts against Muñoz in the Third-Party Complaint. The Court is well-aware that the procedural posture of this case is unique and that EFN and Muñoz have not yet participated in fact discovery. However, the Court did allow EFN to engage in jurisdictional discovery over Muñoz's objection, DE 246, and EFN has nonetheless still failed to establish that personal jurisdiction over Muñoz is proper in this Court.

Even if the Court did accept all of the allegations in the Third-Party Complaint as true, the Court simply cannot find that Muñoz committed an intentional tort that was aimed at Florida and caused harm to EFN that he should have anticipated would occur in Florida. *See PG Creative Inc. v. Affirm Agency, LLC*, No. 18-CV-24299, 2019 WL 5684219, at *5–6 (S.D. Fla. Oct. 31, 2019). HMA filed the allegedly "baseless" lawsuit, not Muñoz, and the record evidence establishes that Muñoz did not direct it to do so specifically in Florida. The Court simply cannot find that the "effects test" has been met given the record before it.

As EFN's only argument that the Court's exercise of personal jurisdiction would be appropriate under the state long-arm statute is this intentional tort argument, the Court finds that the Motion for Summary Judgment is due to be granted.[3] There is no need for further analysis as to whether this Court's exercise of personal jurisdiction would violate the Due Process Clause or whether the corporate shield doctrine applies.

## VI.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Third-Party Defendant, José Muñoz's Motion for Summary Judgment [DE 238] is **GRANTED**. As noted in in footnote 13 of EFN's response [DE 258 at 15], EFN is free to attempt to bring suit against Muñoz in an alternative forum. The Court will enter a separate judgment.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 1st day of March, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge

---

[3] It is clear that EFN will suffer no real prejudice from this ruling, as EFN can attempt to bring its lawsuit against Muñoz where he resides, as opposed to in this jurisdiction.