UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

HYUNDAI MOTOR AMERICA CORPORATION,

        Plaintiff,

    v.

EFN WEST PALM MOTOR SALES, LLC,

        Defendant/Counterclaim
        Plaintiff/Third-Party Plaintiff

GENE KHAYTIN; ERNESTO REVUELTA;
EDWARD W. NAPLETON;  GEOVANNY PELAYO,
JORGE RUIZ,

        Defendants.


EFN WEST PALM MOTOR SALES, LLC;
for itself and in the name of the Department of Highway
Safety and Motor Vehicles of the State of Florida, for its
use and benefit,

        Counterclaim-Plaintiff/Third-Party
        Plaintiff,

    v.

HYUNDAI MOTOR AMERICA CORPORATION,

        Counterclaim-Defendant,

        AND

HYUNDAI MOTOR COMPANY

        Third-Party Defendants.

Case No. No. 9:20-cv-82102-DMM-DLB

**DEFENDANTS' ANSWER TO
PLAINTIFF'S SECOND AMENDED
COMPLAINT WITH AMENDED
COUNTERCLAIMS AND THIRD-
PARTY COMPLAINT**

## ANSWER

Defendants file their Answer to Plaintiff Hyundai Motor America Corporation's ("HMA") Second Amended Complaint and state as follows:

## Jurisdiction, Venue, Parties

1.      Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 of the Second Amended Complaint, and thus deny those allegations.

2.      Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 of the Second Amended Complaint, and thus deny those allegations.

3.      The allegations of Paragraph 3 pertain to a Defendant dismissed from the case with prejudice by Order of the Court, August 9, 2021 (ECF #181) ("Dismissal Order"). As a result, no response is required. If a response is required, Defendants deny the allegations.

4.      Defendants admit the allegations in Paragraph 4 of the Second Amended Complaint.

5.      Defendants admit the allegations in Paragraph 5 of the Second Amended Complaint.

6.      Defendants admit the allegations in Paragraph 6 of the Second Amended Complaint.

7.      Defendants deny the allegations in Paragraph 7 of the Second Amended Complaint except admit that Edward W. Napleton is a citizen of the State of Illinois.

8.      Defendants admit the allegations in Paragraph 8 of the Second Amended Complaint.

9.      Defendants admit the allegations in Paragraph 9 of the Second Amended

Complaint.

10.     The allegations of Paragraph 10 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

11.     Paragraph 11 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

12.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Second Amended Complaint, and thus deny those allegations.

13.     Defendants deny the allegations in Paragraph 13 of the Second Amended Complaint.

**<u>Factual Background</u>**

14.     Defendants admit the allegations in Paragraph 14 of the Second Amended Complaint.

15.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 of the Second Amended Complaint and thus deny those allegations.

16.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Second Amended Complaint and thus deny those allegations.

17.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Second Amended Complaint and thus deny those allegations.

18.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Second Amended Complaint and thus deny those allegations.

19.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the Second Amended Complaint and thus deny those allegations.

20.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the Second Amended Complaint and thus deny those allegations.

21.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the Second Amended Complaint and thus deny those allegations.

22.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22 of the Second Amended Complaint and thus deny those allegations.

23.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23 of the Second Amended Complaint and thus deny those allegations.

24.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the Second Amended Complaint and thus deny those allegations.

25.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25 of the Second Amended Complaint and thus deny those allegations.

26.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 of the Second Amended Complaint and thus deny those allegations.

27.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 of the Second Amended Complaint and thus deny those allegations.

28.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the Second Amended Complaint and thus deny those allegations.

29.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the Second Amended Complaint and thus deny those allegations.

30.     Defendants deny the allegations in paragraph 30 of the Second Amended Complaint.

31.     The allegations of Paragraph 31 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

32.     The allegations of Paragraph 32 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

33.     The allegations of Paragraph 33 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

34.     The allegations of Paragraph 34 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

35.     Defendants admit that Edward W. Napleton is the son of Edward F. Napleton, but deny the remaining allegations in Paragraph 35 of the Second Amended Complaint.

36.     The allegations of Paragraph 36 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

37.     The allegations of Paragraph 37 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

38.     The allegations of Paragraph 38 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

39.     The allegations of Paragraph 39 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

40.     Defendants deny the allegations in Paragraph 40 of the Second Amended Complaint.

41.     Defendants deny the allegations in Paragraph 41 of the Second Amended Complaint.

42.     Defendants deny the allegations in Paragraph 42 of the Second Amended Complaint.

43.     Defendants deny the allegations in Paragraph 43 of the Second Amended Complaint.

44.     Defendants deny the allegations in Paragraph 44 of the Second Amended Complaint.

45.     Defendants deny the allegations in Paragraph 45 of the Second Amended Complaint.

46.     Defendants deny the allegations in Paragraph 46 of the Second Amended Complaint.

47.     Defendants deny the allegations in Paragraph 47 of the Second Amended Complaint.

48.     Defendants deny the allegations in Paragraph 48 of the Second Amended Complaint.

49.     Defendants deny the allegations in Paragraph 49 of the Second Amended Complaint.

50.     Defendants deny the allegations in Paragraph 50 of the Second Amended Complaint.

51.     Defendants deny the allegations in Paragraph 51 of the Second Amended Complaint.

52.     Defendants deny the allegations in Paragraph 52 of the Second Amended Complaint.

53.     Defendants admit that the Dealership bought used Hyundai Sonata and Santa Fe vehicles from auction houses, including Manheim Palm Beach. Defendants deny the remaining allegations in Paragraph 53 of the Second Amended Complaint.

54.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 54 of the Second Amended Complaint and thus deny those allegations.

55.     Defendants deny the allegations in Paragraph 55 of the Second Amended Complaint.

56.     Defendants deny the allegations in Paragraph 56 of the Second Amended Complaint.

57.     Defendants deny the allegations in Paragraph 57 of the Second Amended Complaint.

58.     Defendants deny the allegations in Paragraph 58 of the Second Amended Complaint.

59.     Defendants deny the allegations in Paragraph 59 of the Second Amended Complaint.

60.     Defendants deny the allegations in Paragraph 60 of the Second Amended Complaint.

61.     Defendants deny the allegations in Paragraph 61 of the Second Amended Complaint.

62.     The allegations of Paragraph 62 pertain to a Defendant dismissed from the case

with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

63.     The allegations of Paragraph 63 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

64.     The allegations of Paragraph 64 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

65.     The allegations of Paragraph 65 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

66.     The allegations of Paragraph 66 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

67.     The allegations of Paragraph 67 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

68.     The allegations of Paragraph 68 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

69.     The allegations of Paragraph 69 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

70.     Defendants deny the allegations in Paragraph 70 of the Second Amended Complaint.

71.     Defendants deny the allegations in Paragraph 71 of the Second Amended Complaint.

72.     Defendants deny the allegations in Paragraph 72 of the Second Amended Complaint.

73.     Defendants deny the allegations in Paragraph 73 of the Second Amended Complaint.

74.     Defendants deny the allegations in Paragraph 74 of the Second Amended Complaint.

75.     The allegations of Paragraph 75 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

76.      The allegations of Paragraph 76 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

77.     Defendants deny the allegations in Paragraph 77 of the Second Amended Complaint.

78.     Defendants deny the allegations in Paragraph 78 of the Second Amended Complaint.

79.     Defendants deny the allegations in Paragraph 79 of the Second Amended Complaint.

80.     Defendants deny the allegations in Paragraph 80 of the Second Amended Complaint.

81.     Defendants deny the allegations in Paragraph 81 of the Second Amended Complaint.

82.     Defendants deny the allegations in Paragraph 82 of the Second Amended Complaint.

83.     Defendants deny the allegations in Paragraph 83 of the Second Amended Complaint.

84.     The allegations of Paragraph 84 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

85.     The allegations of Paragraph 85 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

86.     The allegations of Paragraph 86 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

87.     The allegations of Paragraph 87 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

88.     The allegations of Paragraph 88 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

89.     The allegations of Paragraph 89 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

90.     Defendants admit that Mark Eddleman filed a complaint against Edward W. Napleton and others on April 23, 2020. Defendants deny the remaining allegations in Paragraph 90.

91.     Defendants deny the allegations in Paragraph 91 of the Second Amended Complaint.

92.     Defendants deny the allegations in Paragraph 92 of the Second Amended Complaint.

93.     Defendants deny the allegations in Paragraph 93 of the Second Amended Complaint.

94.     Defendants deny the allegations in Paragraph 94 of the Second Amended Complaint.

95.     Defendants are without sufficient knowledge or information to form a belief as to the truth of when HMA first learned of any allegations against the Defendants. Defendants deny the remaining allegations in Paragraph 95 of the Second Amended Complaint.

96.     Defendants deny the allegations in Paragraph 96 of the Second Amended Complaint.

## Count I: Fraud

(Khaytin, Revuelta, Edward W. Napleton, Pelayo, and Ruiz)

97.     Defendants incorporate by reference the responses in paragraphs 1-96 of this Answer as if fully set forth herein.

98.     Defendants deny the allegations in Paragraph 98 of the Second Amended Complaint.

99.     Defendants deny the allegations in Paragraph 99 of the Second Amended Complaint.

100.    Defendants deny the allegations in Paragraph 100 of the Second Amended Complaint.

101.    Defendants deny the allegations in Paragraph 101 of the Second Amended Complaint.

102.    Defendants deny the allegations in Paragraph 102 of the Second Amended Complaint.

103.    Defendants deny the allegations in Paragraph 103 of the Second Amended Complaint.

104.    The allegations of Paragraph 104 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

105.    The allegations of Paragraph 105 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

106.    Defendants deny the allegations in Paragraph 106 of the Second Amended Complaint.

107.    Defendants deny the allegations in Paragraph 107 of the Second Amended Complaint.

108.    Defendants deny the allegations in Paragraph 108 of the Second Amended Complaint.

109.    Defendants deny the allegations in Paragraph 109 of the Second Amended Complaint.

110.    Defendants deny the allegations in Paragraph 110 of the Second Amended Complaint.

111.    Defendants deny the allegations in Paragraph 111 of the Second Amended Complaint.

112.    Defendants deny the allegations in Paragraph 112 of the Second Amended Complaint.

113.    Defendants deny the allegations in Paragraph 113 of the Second Amended Complaint.

114.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 114 of the Second Amended Complaint and thus deny those allegations.

115.    Defendants deny the allegations in Paragraph 115 of the Second Amended Complaint.

### Count II – Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)
**(All Defendants)**

116.    Defendants incorporate by reference the responses in paragraphs 1-96 of this Answer as if fully set forth herein.

117.    Paragraph 117 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

118.    Paragraph 118 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

119.    Defendants deny the allegations in Paragraph 119 of the Second Amended Complaint.

120.    Defendants deny the allegations in Paragraph 120 of the Second Amended Complaint.

121.    Defendants deny the allegations in Paragraph 121 of the Second Amended Complaint.

122.    Defendants deny the allegations in Paragraph 122 of the Second Amended Complaint.

123.    Defendants deny the allegations in Paragraph 123 of the Second Amended Complaint.

124.    The allegations of Paragraph 124 pertain to a Defendant dismissed from the case with prejudice under the Dismissal Order. As a result, no response is required. If a response is required, the allegations are denied.

125.    Defendants deny the allegations in Paragraph 125 of the Second Amended Complaint.

126.    Defendants deny the allegations in Paragraph 126 of the Second Amended Complaint.

127.    Paragraph 127 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

128.    Paragraph 128 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

15

129.    Defendants deny the allegations in Paragraph 129 of the Second Amended Complaint.

130.    Paragraph 130 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

131.    Paragraph 131 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

132.    Defendants deny the allegations in Paragraph 132 of the Second Amended Complaint.

133.    Defendants deny the allegations in Paragraph 133 of the Second Amended Complaint.

## Count III – Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)
### (All Defendants)

134.    Defendants incorporate by reference the responses in paragraphs 1-96 and 117-133 of this Answer as if fully set forth herein.

135.    Paragraph 135 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

136.    Paragraph 136 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

137.    Paragraph 137 is a legal conclusion to which no response is required; if a response is required, Defendants deny these allegations.

138.    Defendants deny the allegations in Paragraph 138 of the Second Amended Complaint.

139.    Defendants deny the allegations in Paragraph 139 of the Second Amended Complaint.

### Count IV: Tortious Interference with a Contract and Business Relationship
**(Khaytin, Revuelta, Edward W. Napleton, Pelayo, and Ruiz)**

140.    Defendants incorporate by reference the responses in paragraphs 1-96 of this Answer as if fully set forth herein.

141.    Defendants admit that HMA has a business relationship and a Dealer Sales and Service Agreement with the Dealership, but deny the rest of Paragraph 141 which is a legal conclusion to which no response is required.

142.    Defendants deny the allegations in Paragraph 142 of the Second Amended Complaint.

143.    Defendants deny the allegations in Paragraph 143 of the Second Amended Complaint.

144.    Defendants deny the allegations in Paragraph 144 of the Second Amended Complaint, and refer the Court to the reference document, which speaks for itself.

145.    Defendants deny the allegations in Paragraph 145 of the Second Amended Complaint, and refer the Court to the reference document, which speaks for itself.

146.    Defendants deny the allegations in Paragraph 146 of the Second Amended Complaint.

147.    Defendants deny the allegations in Paragraph 147 of the Second Amended Complaint.

### Count VI: Civil Conspiracy

**(Khaytin, Revuelta, Edward W. Napleton, Pelayo, and Ruiz)**

17

148.    Defendants incorporate by reference their responses contained elsewhere in this Answer as if fully set forth herein.

149.    Defendants deny the allegations in Paragraph 149 of the Second Amended Complaint.

150.    Defendants deny the allegations in Paragraph 150 of the Second Amended Complaint.

151.    Defendants deny the allegations in Paragraph 151 of the Second Amended Complaint.

152.    Defendants deny the allegations in Paragraph 152 of the Second Amended Complaint.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear, Defendants assert the Affirmative Defenses set forth below.

## FIRST AFFIRMATIVE DEFENSE
(Statute of Limitations)

Pursuant to the Fla. Stat. Ann. § 320.64(25), Plaintiff's claims are barred because Plaintiff failed to audit any alleged misconduct within the 12-month period immediately following payment of the warranty claims in question.

## SECOND AFFIRMATIVE DEFENSE
(Failure to State a Claim)

The Second Amended Complaint and each claim contained therein fail to state claims upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE
(No Damages or Injury)

Plaintiff's claims are barred to the extent Plaintiff did not sustain any actual or legally

cognizable injury.

### FOURTH AFFIRMATIVE DEFENSE
(Uncertain or Speculative Damages)

Plaintiff's claims are barred, in whole or in part, because the damages allegedly sustained

by Plaintiff are speculative and uncertain.

### FIFTH AFFIRMATIVE DEFENSE
(Unclean Hands)

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## COUNTERCLAIM/THIRD-PARTY COMPLAINT

### Introduction

1.      Defendant EFN West Palm Motor Sales LLC ("West Palm") brings these counterclaims and third-party claims against Hyundai Motor America Corporation ("HMA") and Hyundai Motor Company ("HMC") (together with HMA, "Hyundai").

2.      Hyundai has implemented unlawful incentive programs related to facility requirements, as well as unlawful distribution requirements for Genesis vehicles in Florida. HMA's Accelerate Program requires dealers to comply with HMA's GDSI (Global Design Space Identity) 2.0 facility requirements, including that dealers provide Hyundai-exclusive facilities to earn full margin (the "Accelerate Exclusivity Requirement"). By tying dealer margin to these facility requirements, HMA's Accelerate Program effectively provides varying per-vehicle "incentives" to Florida Hyundai dealers that lower the effective wholesale price of vehicles for certain Florida Hyundai dealers but not others.

3.      The price discounts available under HMA's Accelerate Program are often made accessible to favored dealers but not West Palm, rendering HMA's Accelerate Program not functionally available to West Palm. Those favored dealers pay lower prices for Hyundai motor vehicles as a result of the Accelerate Program, and are thus able to offer lower retail prices because they have a lower effective wholesale cost relative to competing dealers. This creates unlawful price discrimination under the Robinson-Patman Act.

4.      HMA has also violated the Robinson-Patman Act by allocating additional cooperative advertising funds to certain favored dealers, which has the same effect and purpose of a secret discount.

5.      HMA has also violated the Florida Dealer Act by establishing and implementing an unfair system of allocation of motor vehicles.

20

6.      West Palm seeks declaratory and injunctive relief, as well as compensatory damages (including treble damages) and punitive damages resulting from Hyundai's unlawful actions.

## Parties

7.      West Palm is an Illinois limited liability company with its principal place of business in Palm Beach County, Florida. West Palm is a "motor vehicle dealer" as defined in Fl. Stat. § 320.60(11)(a). West Palm brings these claims for itself with respect to claims for damages, injunctive relief and declaratory relief, and in the name of the Department of Highway Safety and Motor Vehicle of the State of Florida for the use and benefit of West Palm with respect to claims for injunctive relief pursuant to Fl. Stat. § 320.695. West Palm is part of the Napleton Automotive Group of affiliated dealers ("Napleton" or the "Napleton organization").

8.      HMA is a California corporation with its principal place of business in California. HMA is registered to do business in Florida and is actively doing business in Palm Beach County, Florida. HMA is a "distributor" as defined in Fl. Stat. § 320.60(5), a "manufacturer" as defined in Fl. Stat. § 320.60(9), and a "licensee" as defined in Fl. Stat. § 320.60(8).

9.      West Palm and HMA are parties to a Hyundai Dealer Sales and Service Agreement (the "Hyundai Dealer Agreement") pursuant to which West Palm operates a dealership for the sale and service of Hyundai Brand motor vehicles at 2301 Okeechobee Blvd, West Palm Beach, FL 33409 (the "Dealership Location"). The Hyundai Dealer Agreement is a "franchise agreement" as defined in Fl. Stat. § 320.60(1). "Genesis" is a luxury line make that was originally offered by Hyundai until it was severed from HMA and split its own company, which is administered in the United States by non-party Genesis Motor America Corp. ("GMA").

10.     HMC is a South Korean company. HMC is the parent company of HMA. HMC, through other subsidiaries, manufactures Hyundai and Genesis line-make motor vehicles. HMC conducts business in the State of Florida. HMC is liable under Fl. Stat. § 320.6405 for the all the acts and omissions of its distributor HMA. The Florida Dealer Act establishes that a "common entity of a manufacturer" or "distributor" [*i.e.*, HMA] is a manufacturer's [*i.e.*, HMC's] "agent" if the distributor or entity "by contractual arrangement or otherwise pursuant to the direction of the manufacturer, engages in the distribution in this state of line-make motor vehicles manufactured . . . by such manufacturer." Fl. Stat. § 320.6405. HMA as a manufacturer pursuant to Florida Statutes is subject to both: (1) the franchise agreement "as if [the manufacturer] and not the agent had executed the franchise agreement"; and (2) "all of the restrictions, limitations, remedies, and penalties of ss. 320.60-320.70 [the "Florida Dealer Act"] related to such franchise agreement, the performance thereof, or any cause of action pertaining thereto." *Id.*

## Jurisdiction and Venue

11.     This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 based on the same operative facts, and judicial economy, convenience and fairness to the parties will result if this Court assumes and exercises jurisdiction over the Counterclaim.

12.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Defendant/Counterclaim-Plaintiff, Plaintiff/Counterclaim-Defendant, and Third-Party Defendant are citizens of different states.

13.     West Palm's claims under the Robinson-Patman Act pose a federal question and therefore jurisdiction is also conferred on this Court pursuant to 28 U.S.C. § 1331.

14.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction.

15.     HMC has subjected itself to the personal jurisdiction of the courts of Florida by, *inter alia*: exerting direct control and influence over HMA's actions against Florida dealers, including West Palm and by virtue of Fl. Stat. § 320.6405.

16.     A foreign defendant can commit a tortious act in Florida "through telephonic, electronic, or written communications into Florida" so long as the cause of action arises from these communications" and the place of injury is within Florida." *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1329 (S.D. Fla. 2010).

17.     HMC's unlawful actions targeting West Palm and the Napleton organization has caused injury to West Palm in Florida.

18.     HMC has purposefully availed itself of the United States automotive market by producing and selling Hyundai vehicles specifically intended to be sold in the United States. HMC uses its American subsidiary, HMA, as its means for selling, marketing, and warranting Hyundai vehicles in the United States and this District and has set up distribution chains and taken other affirmative measures to make its vehicles available to consumers in the United States and this District, thereby availing itself of the benefits and protections of conducting business in the United States.

19.     HMC's purposeful availment of the privilege of doing business in Florida renders exercise of jurisdiction by this Court over it permissible under traditional notions of fair play and substantial justice.

20.     West Palm's claims arise out of HMC's contacts with the United States, including within this District.

21.     HMA and HMC have subjected themselves to the personal jurisdiction of the courts of Florida by manufacturing and selling Hyundai vehicles in this state. *See* Fla. Stat. § 320.61(5).

**HMA's System of Allocation**

22.    On November 17, 2020, HMA filed a baseless complaint against West Palm and other defendants falsely alleging that West Palm had committed warranty fraud by intentionally blowing engines subject to a recall and requesting reimbursement for those engines.

23.    On August 23, 2021, West Palm filed its answer, affirmative defenses, and counterclaims against HMA, which included counts for violation of the Robinson-Patman Act and multiple violations under the Florida Dealer Act.

24.    HMA is the sole source of new Hyundai vehicles for West Palm.

25.    Since HMA commenced this case in November 2020, West Palm's allocation of inventory has suffered. Even more so, after the filing of its counterclaims, West Palm experienced a dramatic reduction in allocation of motor vehicles. Because of the retrospective nature of sales reporting and the inventory pipeline, West Palm has only recently been able to examine its new vehicle allocations in comparison to its market competitors over the second half of the year. This examination has revealed HMA's scheme to starve West Palm of inventory.

26.    HMA purports to allocate vehicles to dealers based on a percentage of vehicles sold (known as "turn and earn") or "balanced days' supply", which calculates the number of days to sell the dealer's current new car inventory according to the dealer's current rate of retail sales.

27.    Yet, upon information and belief, HMA has not adhered to "turn and earn," "balanced days' supply" or any other objective methodology for vehicle allocation among its franchised south Florida dealers. Rather, all or most of HMA's allocation of vehicles to its dealers

is set on a discretionary basis by national or regional executives. Based on the available data, West Palm is not receiving its fair share of inventory from HMA.[1]

28.     As explained in the tables below, West Palm's competitors have received new vehicle inventory to replace sold units. In contrast, West Palm has been starved of allocation leaving it with little to no new car inventory, destroying its business and gutting its ability to compete. [2]

| Store | Number of 2022 Elantras Sold | Number of 2022 Elantras in Stock | Percentage of 2022 Elantras in Stock vs. Elantras Sold |
|---|---|---|---|
| Delray | 5 | 2 | 40% |
| Wallace | 25 | 6 | 24% |
| Coconut Creek | 98 | 31 | 31.6% |
| **West Palm** | **19** | **0** | **0%** |
| All South Florida Dealers (collectively) | 605 | 247 | 40% |
| Store | Number of 2022 Santa Fe's Sold | Number of 2022 Santa Fe's in Stock | Percentage of 2022 Santa Fe's in Stock vs. Santa Fe's Sold |
| Delray | 3 | 4 | 125% |
| Wallace | 33 | 29 | 88% |
| Coconut Creek | 50 | 46 | 92% |
| **West Palm** | **11** | **1** | **9%** |
| All South Florida Dealers (collectively) | 494 | 544 | 110% |
| Store | Number of 2022 Palisades Sold | Number of 2022 Palisades in Stock | Percentage of 2022 Palisades in Stock vs. Palisades Sold |
| Delray | 2 | 2 | 100% |
| Wallace | 40 | 17 | 42.5% |
| Coconut Creek | 47 | 26 | 55% |
| **West Palm** | **11** | **0** | **0%** |

---

[1] This stems from a review of recent data in vAuto Conquest's "Live Market View" software. vAuto is not affiliated with West Palm, but is an independent third-party platform that tracks market inventory conditions. *See* https://www.vauto.com/products/conquest/

[2] The data in these tables is as of November 6, 2021 and reflects the previous 45 days' activity. The percentage refers to the number of vehicles sold as a percentage of those in stock calculated based on inventory levels.

| | | | |
|---|---|---|---|
| All South Florida Dealers (collectively) | 386 | 228 | 59% |

29.     In short, HMA has failed to replace West Palm's sold units at the same rate as other competing dealerships. Such failure could not occur if a universally applied formula determined allocation. Nor can it be explained by general manufacturing and supply chain issues faced by HMA, since that would affect all dealers equally.

30.     HMA's failure to allocate sufficient new vehicle inventory has directly and negatively impacted West Palm's sales in the second half of the year. At the end of June 2021, before West Palm filed its counterclaims, West Palm's year-over-year sales were up 31.9%, which was in line with the year-over-year percentage change in sales for West Palm's Sales District (the "District") (36.5%) and consistent with other South Florida dealers.

| HYUNDAI- YTD | | | |
|---|---|---|---|
| | 2021 | 2020 | Change |
| Napleton North | 459 | 489 | -6.1% |
| Napleton WPB | 811 | 615 | 31.9% |
| | | | |
| Delray Hyundai | 520 | 567 | -8.3% |
| King Hyundai | 733 | 547 | 34.0% |
| Coconut Creek Hyundai | 2,040 | 1,487 | 37.2% |
| Rick Case Plantation | 1,728 | 1,288 | 34.2% |
| Rick Case Davie | 1,733 | 1,305 | 32.8% |
| | | | |
| Lehman Hyundai | 1,292 | 1,059 | 22.0% |
| Potamkin | 1,635 | 1,257 | 30.1% |
| Doral Hyundai | 2,202 | 1,392 | 58.2% |
| Braman Hyundai | 1,546 | 1,058 | 46.1% |
| | | | |
| Kendall Hyundai | 1,174 | 746 | 57.4% |
| Homestead | 680 | 317 | 114.5% |
| | | | |
| | | | |
| Total Hyundai | 16,553 | 12,127 | 36.5% |

31.     But the situation changed dramatically after West Palm filed its counterclaims. The chart below reveals the effect of West Palm's lack of inventory, showing the percentage change in year-over-year sales by month for West Palm Beach versus the District. Starting in September 2021, West Palm's sales are well below the District on a year-over-year basis as a direct result of the lack of inventory allocated to it by HMA.

27



32.     By the end of 2021, the results were dramatic. Except for Delray Hyundai, sales for all of the other Hyundai dealerships in the District are up at least 20% and some are higher than 50%. Meanwhile, the sales of West Palm have increased only 6.1%, and Napleton's other Florida Hyundai store (North Palm Hyundai) has *decreased* by -2.7%.

| HYUNDAI- YTD | | | |
|---|---|---|---|
| | 2021 | 2020 | Change |
| Napleton North | 760 | 781 | -2.7% |
| Napleton WPB | 1,400 | 1,320 | 6.1% |
| | | | |
| Delray Hyundai | 911 | 857 | 6.3% |
| King Hyundai | 1,387 | 1,056 | 31.3% |
| Coconut Creek Hyundai | 3,818 | 2,959 | 29.0% |
| Rick Case Plantation | 3,225 | 2,467 | 30.7% |
| Rick Case Davie | 3,266 | 2,428 | 34.5% |
| | | | |
| Lehman Hyundai | 2,303 | 1,907 | 20.8% |
| Potamkin | 3,103 | 2,229 | 39.2% |
| Doral Hyundai | 4,136 | 2,704 | 53.0% |
| Braman Hyundai | 2,980 | 2,255 | 32.2% |
| | | | |
| Kendall Hyundai | 2,272 | 1,566 | 45.1% |
| Homestead | 1,231 | 797 | 54.5% |
| | | | |
| | | | |
| Total Hyundai | 30,792 | 23,326 | 32.0% |

33.     In other words, even though West Palm had been keeping pace with other South Florida dealers at the mid-year point, by the end of the year, West Palm's year-over-year sales were significantly behind other South Florida dealers. That is a direct result of HMA having starved West Palm of needed inventory in the second half of 2021.

34.     Simply put, HMA has been purposely starving West Palm of inventory by using an unofficial discretionary system to reduce allocation to West Palm in order to retaliate against West Palm for the current litigation.

35.     HMA's retaliatory actions are harming West Palm in the form of lost sales, revenue, and profit.

**HMA's Accelerate Program**

36.     In or about January 2020, HMA announced the Accelerate Performance Bonus Program ("Accelerate Program"), which unlawfully conditions a majority of dealers' gross margin on whether a dealer complies with unilaterally set facility-related criteria. More specifically, HMA conditions an amount equal to 2% of the Manufacturer's Suggested Retail Price ("MSRP") of each Hyundai sold.

37.     Dealers, including West Palm, that cannot or do not meet HMA's arbitrary demands forgo payment and suffer an increased effective wholesale cost, which places them at a distinct competitive disadvantage as compared to other dealers that meet HMA's demands. Complying dealers benefit from lower wholesale prices, which allow them to offer prospective customers far lower retail pricing, allowing them to lure customers away from noncomplying dealers.

38.     The Accelerate Program results in unlawful and anti-competitive price discrimination, with certain dealers paying thousands of dollars more than others for goods of like grade and quality, *i.e.* materially identical motor vehicles. West Palm and other noncomplying

dealers to whom these so-called "incentive payments" are not functionally available cannot compete when neighboring complying dealers can sell materially identical vehicles at substantially lower prices.

39.     Among the conditions tied to dealer margin, the Accelerate Program unlawfully requires dealers to construct stand-alone Genesis facilities.

***Facility Requirements***

40.     The first Hyundai Genesis models debuted in 2008 and were sold by Hyundai dealers. In January 2018, HMA announced that the Genesis brand would be separated from Hyundai and sold as a separate line-make.  Initially, HMA intended to offer the now-separate Genesis franchise to only a select number of dealers. However, this plan was challenged  by Hyundai dealers and several state motor vehicle regulatory agencies, including the Florida Department of Highway Safety and Motor Vehicles, as a violation of state law and the Hyundai Dealer Sales and Service Agreement. Ultimately, in order to be licensed to sell Genesis brand vehicles in various states including Florida, GMA relented and agreed to offer the Genesis franchise to all Hyundai dealers.

41.     GMA became licensed to distribute Genesis vehicles in the State of Florida on October 30, 2018.  At that time, Hyundai dealers who accepted the Genesis franchise were approved by HMA and GMA to combine the Genesis brand within dealers' existing Hyundai facilities with only minor changes to include Genesis branding elements. West Palm was offered and accepted a Genesis motor vehicle franchise which was added to its Hyundai facilities pursuant to HMA and GMA's stated requirements.

42.     The Accelerate Program seeks to change the status quo by imposing unreasonable facility requirements unlawfully intended to winnow the dealer body and to coerce Hyundai

dealers to construct stand-alone Genesis facilities. HMA withholds from dealers so-called "incentive payments," amounting to 2% of MSRP of each Hyundai sold and 8% of MRSP of each Genesis sold, unless the dealer builds a new multi-million dollar stand-alone Genesis facility or invests additional millions of dollars to renovate their existing approved facilities from which they currently sell and service both Genesis and Hyundai vehicles. These facility requirements are not reasonable or justifiable given current and reasonably foreseeable projections of economic conditions, financial expectations, and West Palm's local market.

43.     Under the Accelerate Program, HMA conditions dealer margin on dealers' complying with HMA's GDSI (Global Design Space Identity) 2.0 facility requirements. Among the costly GDSI 2.0 facility obligations is a requirement that dealers provide Hyundai-exclusive facilities to earn full margin under the Accelerate Program (the "Accelerate Exclusivity Requirement"). The Accelerate Exclusivity Requirement obligates Hyundai dealers to remove other brands from their existing facilities, including the Genesis line-make (which used to be a Hyundai brand vehicle). Complying dealers receive an amount equal to 2% of MSRP of each Hyundai sold.

44.     To earn full margin under the Accelerate Program, dealers must commit to renovating their facilities to meet GDSI 2.0 facility standards, with HMA expressly reserving the right to amend, cancel or revoke the Accelerate Program facility component at any time for any reason. While West Palm stated in writing its willingness to comply, HMA's renovation requirements are impossible or extremely onerous to achieve, meaning that West Palm was effectively denied the ability to receive or accrue margin that other Hyundai dealers have received or accrued.

45.     In withholding 2% of MSRP of each Hyundai sold, HMA is engaging in a form of coercion where West Palm and other dealers are forced to either build stand-alone Genesis facilities or decide to sell or terminate their Genesis franchise, which has always been Hyundai's goal.

46.     Hyundai is well-aware that the substantial costs of building stand-alone facilities are not justified by the market realities of the Genesis line-make. There are only five Genesis models currently, and West Palm already showcases each of these models in its existing showroom. The market for the low-volume Genesis line-make does not remotely support West Palm's construction of an unnecessary multi-million dollar facility.

47.     By tying a substantial portion of dealer margin to such unreasonable facility requirements, HMA intentionally imposes on West Palm and others an existential dilemma – sink millions of unrecoverable dollars into unjustifiable facility improvements or suffer from substantially higher effective wholesale costs that will render the dealer non-competitive and significantly impair the dealer's substantial investments.

48.     Upon information and belief, HMA has exempted certain favored dealers from its facility requirements, entitling those dealers to substantially reduced effective wholesale pricing even when they failed to meet the facility components of the Accelerate Program that other dealers like West Palm are held to.  These are, in effect, secret price discounts for favored dealers.

49.     HMA's lower wholesale pricing, conditioned on unreasonable and selectively applied facility requirements, is not functionally available to West Palm.

**HMA's _Co-op Program_**

50.     HMA has a dealer marketing program that provides per-vehicle price discounts to dealerships to incentivize dealership marketing efforts through the allocation of cooperative advertising funds ("co-op funds").

51.     The initial offer of co-op funds made to the dealers is currently based on a mathematical equation applicable to all dealers (i.e., each vehicle wholesaled to the dealership generates a certain amount of co-op advertising funds).

52.     The dealer has a right to request additional co-op funds, which West Palm always did. Sometimes West Palm received the additional funds, other times it did not. While West Palm was forced to put its hand out for these monies to survive, HMA has never provided an explanation as to why, nor any transparency as to which dealers get the additional funds or how much they get.

53.     The distribution of any additional co-op funds is not based on fair and objective criteria. Rather, the allocation of additional co-op funds is based entirely on the whims of the HMA Regional General Manager.

54.     Upon information and belief, these "additional" co-op funds are consistently doled out to certain favored dealers.

55.     This co-op slush fund provides secret discounts that allow favored dealers to sell their cars at a lower effective price, giving them a competitive edge over dealers who do not receive any of the additional co-op funds or who receive a lower amount.

**FIRST COUNTERCLAIM**
**Violation of the Florida Dealer Act, Fl. Stat. § 320.64(18)**

56.     West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

57.     This Count seeks damages under Fl. Stat. § 320.697, injunctive relief under Fl. Stat.

§ 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86,

Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat. § 320.64(18).

58.     Under Fl. Stat. § 320.695, to the extent that this action seeks injunctive relief, this

action is brought by West Palm in the name of the Florida Department of Highway Safety and

Motor Vehicles and the State of Florida for the use and benefit of West Palm.

59.     Fl. Stat. § 320.64(18) provides that is illegal for HMA to:

… establish[] a system of motor vehicle allocation or distribution or … implement[] a
system of allocation or distribution of motor vehicles to one or more of its franchised motor
vehicle dealers which reduces or alters allocations or supplies of new motor vehicles to the
dealer to achieve, directly or indirectly, a purpose that is prohibited by §§ 320.60-320.70,
or which otherwise is unfair, inequitable, unreasonably discriminatory, or not supportable
by reason and good cause after considering the equities of the affected motor vehicle dealer
or dealers … As used in this subsection, "unfair" includes, without limitation, the refusal
or failure to offer to any dealer an equitable supply of new vehicles under its franchise, by
model, mix, or colors as the licensee offers or allocates to its other same line-make dealers
in the state.

60.     HMA is intentionally allocating far less inventory to West Palm in retaliation for its

Counterclaim against HMA.

61.     Thus, HMA is implementing a system of motor vehicle allocation that is unfair,

inequitable, unreasonably discriminatory, and not supportable by reason and good cause.

62.     HMA's actions violate Fl. Stat. § 320.64(18).

63.     Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate

remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the

use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . .

from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act

in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

64.     An injunction restraining HMA from retaliating against West Palm by allocating them less inventory than what they are entitled to in violation of Fl. Stat. § 320.64(18) is appropriate.

WHEREFORE, West Palm demands:

(a) under Fl. Stat. § 320.697, entry of a judgment against HMA for treble damages;

(b) under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) HMA has implemented or established a system of inventory allocation that is unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause in violation of the Florida Dealer Act;

(c) under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction restraining HMA from implementing its discriminatory system of allocation of motor vehicles;

(d) an order awarding West Palm's attorney's fees, interest, costs; and

(e) such other relief as this Court deems just and equitable.

**SECOND COUNTERCLAIM**
**Violation of the Florida Dealer Act, Fl. Stat. § 320.64(19)**

65.     West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

66.     This Count seeks damages under Fl. Stat. § 320.697, injunctive relief under Fl. Stat. § 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat. § 320.64(19).

67.     Under Fl. Stat. § 320.695, to the extent that this action seeks injunctive relief, this action is brought by West Palm in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm.

68.     Fl. Stat. § 320.64(19) provides that it is illegal for HMA to "delay[], refuse[], or fail[] to provide a supply of motor vehicles by series in reasonable quantities, including the models publicly advertised by the applicant or licensee as being available" to a franchised dealer "without good and fair cause" so long as such failure is not caused by acts outside HMA's control.

69.     HMA has failed to provide West Palm with a supply of motor vehicles in reasonable quantities.

70.     The fact that competing dealerships are being allocated significantly higher quantities of motor vehicles shows that HMA's failure to supply West Palm with vehicles is without good and fair cause.

71.     HMA's actions violate Fl. Stat. § 320.64(19).

72.     Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

73.     An injunction restraining HMA from retaliating against West Palm by delaying, failing, or refusing to provide West Palm with a supply of motor vehicles by series in reasonable quantities, in violation of Fl. Stat. § 320.64(19), is appropriate.

WHEREFORE, West Palm demands:

(a)     under Fl. Stat. § 320.697, entry of a judgment against HMA for treble damages;

(b)     under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) HMA has failed or refused to supply West Palm with a supply of motor vehicles by series in reasonable quantities in violation of Florida Dealer Act;

(c)     under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction restraining HMA from delaying, failing, or refusing to provide West Palm with a supply of motor vehicles by series in reasonable quantities, in violation of Fl. Stat. § 320.64(19);

(d)     an order awarding West Palm's attorney's fees, interest, costs; and

(e)  such other relief as this Court deems just and equitable.


**THIRD COUNTERCLAIM**
**Violation of the Florida Dealer Act, Fl. Stat. § 320.64(22)**

74.     West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

75.     This Count seeks damages under Fl. Stat. § 320.697, injunctive relief under Fl. Stat. § 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat. § 320.64(22).

76.     Under Fl. Stat. § 320.695, to the extent that this action seeks injunctive relief, this action is brought by West Palm in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm.

77.     Fl. Stat. § 320.64(22) provides that it is illegal for HMA to "refuse[] to deliver, in reasonable quantities and within a reasonable time, to any duly licensed motor vehicle dealer who has an agreement with such applicant or licensee for the retail sale of new motor vehicles and parts for motor vehicles sold or distributed by the applicant or licensee, any such motor vehicles or parts as are covered by such agreement."

78.     West Palm is an authorized Hyundai dealer that is party to a franchise agreement with HMA.

**79.**     HMA has refused to deliver to West Palm, in reasonable quantities and within a reasonable time, new motor vehicles as covered by the franchise agreement.

**80.**     This failure to deliver vehicles to West Palm cannot be explained or excused by supply chain issues, given that competing dealerships are being allocated significantly higher quantities of motor vehicles than West Palm.

**81.**     HMA's actions violate Fl. Stat. § 320.64(22).

**82.**     Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

83.     An injunction restraining HMA from retaliating against West Palm by refusing to deliver, in reasonable quantities and within a reasonable time, vehicles covered by West Palm's Dealer Agreement, in violation of Fl. Stat. § 320.64(22), is appropriate.

WHEREFORE, West Palm demands:

(f)  under Fl. Stat. § 320.697, entry of a judgment against HMA for treble damages;

(g)  under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) HMA has failed or refused to supply West Palm with a supply of motor vehicles by series in reasonable quantities in violation of Florida Dealer Act;

(h)  under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction restraining HMA from refusing to deliver, in reasonable quantities and within a reasonable time, vehicles covered by West Palm's Dealer Agreement, in violation of Fl. Stat. § 320.64(22);

(i)  an order awarding West Palm's attorney's fees, interest, costs; and

(j)  such other relief as this Court deems just and equitable.

## FOURTH COUNTERCLAIM

### Violation of Robinson-Patman Act, 15 U.S.C. § 13(a)
### (Against HMA and HMC)

84.     West Palm repeats and realleges the allegations of paragraphs 1 through 55 are re-alleged as if fully set forth herein.

85.     This Count is a claim arising under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, for Hyundai's violations of the Robinson-Patman Act, 15 U.S.C. § 13(a).

86.     At all times relevant to this action, West Palm, HMA, and HMC were, and are, persons engaged in commerce within the meaning of 15 U.S.C. § 13(a).

87.     HMA is a motor vehicle distributor engaged in the sale of motor vehicles in interstate commerce. The HMA vehicles sold to West Palm and its competitors are manufactured outside the state of Florida and transported across state lines to West Palm and its competitors for resale to consumers.

88.     Through the Accelerate Program, HMA has sold motor vehicles of like grade and quality in contemporaneous interstate sales to competitors of West Palm at lower prices than the prices at which those motor vehicles are sold to West Palm.

89.     West Palm competes with other Hyundai dealers in the South Florida market and elsewhere. Those dealers pay lower prices for Hyundai motor vehicles as a result of the Accelerate Program.

90.     As a result of the price differences referenced above, HMA has, in the course of commerce, discriminated in price in contemporaneous and consummated sales of commodities (*i.e.*, Hyundai vehicles) of like grade and quality to different purchasers (*i.e.*, one price to West Palm, another to the favored dealers).

91.     The effect of HMA's unlawful discrimination has been substantially to lessen competition between and among West Palm and the other Hyundai dealers with which it competes. Upon information and belief, the favored dealers who receive discounts through the Accelerate Program have lowered their retail prices to reflect their lower effective wholesale cost, forcing West Palm to lose sales, reduce its margins, or both.

92.     The discounts provided to competing Hyundai dealers through the Accelerate Program are not functionally available to West Palm.

93.     The favored dealers who receive discounts through the Accelerate Program provide no service or savings to HMA which are not provided in identical kind by West Palm. Each affected dealer maintains an inventory of bought vehicles on dealership property and competes to sell and service Hyundai vehicles in accordance with Hyundai Sales and Service Agreements.

94.     HMA exempts certain favored dealers from its facility requirements, entitling those dealers to slashed effective wholesale pricing even when they fail to meet the facility components of the Accelerate Program that other dealers like West Palm are held to.  These are, in effect, secret price discounts for favored dealers.

95.     HMA has also violated RPA through its allocation of cooperative advertising funds ("co-op funds") in a discriminatory manner. The distribution of additional co-op funds is based entirely on the whims of the HMA Regional General Manager. Favored dealers get the extra funds. Additional co-op funds are a form of secret discount. This puts West Palm at a competitive disadvantage.

96.     HMA's above-alleged price discrimination violates 15 U.S.C. § 13(a) of the Robinson-Patman Act.

97.     As a direct and proximate result of HMA's violation of 15 U.S.C. § 13(a) of the Robinson-Patman Act, West Palm has suffered injury to its business and property as (a) lost sales to favored competitors and (b) lost profit margin to help prevent the loss of such sales. West Palm's injury is of the kind the Robinson-Patman Act was designed to prevent and flows from that which makes HMA's conduct unlawful.

98.     HMC is jointly and severally liable for the unlawful actions of HMA, their wholly owned subsidiary.

WHEREFORE, West Palm demands entry of a judgment:

(a) declaring that HMA has violated the Robinson-Patman Act, 15 U.S.C. § 13(a), by and through its continued implementation of discriminatory price discounts under the Accelerate Program and its discriminatory allocation of co-op funds;

(b) treble damages in an amount to be proven at trial,

(c) enjoining, under 15 U.SC. § 26, HMA's continued implementation of discriminatory pricing through the Accelerate Program or otherwise;

(d) enjoining, under 15 U.S.C. § 26, HMA's continued implementation of discriminatory allocation of co-op funds;

(e) awarding West Palm attorney's fees and costs under 15 U.S.C. § 15(a) and 15 U.S.C. § 26; and

(f) granting such other relief this Court deems just and equitable.

## FIFTH COUNTERCLAIM
### Violation of the Florida Dealer Act, Fla. Stat. § 320.64(38)
#### (Against HMA and HMC)

99.     West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

100.    This Count is an action for damages under Fl. Stat. § 320.697, injunctive relief under Fl. Stat. § 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat. § 320.64(38).

101.    Under Fl. Stat. § 320.695, this claim is brought by West Palm in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm.

102.    Florida law provides that a licensee such as HMA may "offer a bonus, rebate, incentive, or other benefit program to its dealers in this state which is calculated or paid on a per vehicle basis and is related in part to a dealer's facility or the expansion, improvement, remodeling, alteration or renovation of a dealer's facility." Fl. Stat. § 320.64(38). If such a program is implemented, "[a]ny dealer who does not comply with the facility criteria . . . is entitled to receive a reasonable percentage of the . . . incentive . . . offered by the licensee under that program by complying with the criteria or eligibility requirements unrelated to the dealer's facility under that program." § 320.64(38), Fla. Stat.

103.    Fl. Stat. § 320.64(38) elaborates on what is to be considered a reasonable percentage, and creates a presumption that it would be reasonable for a licensee to pay eighty percent (80%) of the amount available under an incentive program to a dealer that complies with all incentive criteria other than the facility-related criteria.

104.    HMA has refused to pay its dealers who comply with all non-facility criteria a reasonable percentage of the incentives available under the Accelerate Program.

105.    West Palm has complied with all lawful Accelerate Program criteria other than GDSI 2.0.

106.    HMA's refusal to pay West Palm a reasonable percentage of the incentives available under the Accelerate Program violates Fl. Stat. § 320.64(38), and West Palm has been damaged as a result.

107.    Fl. Stat. § 320.64(38) also provides that a licensee such as HMA has violated the law if it has offered a bonus or incentive programs to a dealer or dealers in Florida that it does not offer to all other dealers in Florida.

108.    HMA's refusal to make the incentives payments available under the Accelerate Program available to West Palm on the same terms as it does to other dealers violates Fl. Stat. § 320.64(38), and West Palm has been damaged thereby.

109.    HMA has also violated Fl. Stat. § 320.64(38) by offering secret discounts to certain dealers, such as the additional co-op slush fund, and West Palm has been damaged due to the thumb HMA has placed on the scale in favor of West Palm's competition.

110.    Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

111.    An injunction restraining HMA from continuing to violate Fl. Stat. § 320.64(38) by failing to pay West Palm a reasonable amount of the incentives available under the Accelerate Program and by failing to make the Accelerate Program incentives available to West Palm on the same terms as all other dealers is appropriate.

112.    HMC is jointly and severally liable for the unlawful actions of HMA, its subsidiary.

WHEREFORE, West Palm demands:

(a)    under Fl. Stat. § 320.697, entry of a judgment against HMA and HMC for treble damages;

(b)      under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) HMA fails to pay West Palm a reasonable percentage of the bonuses, incentives, rebates, or other benefits available under the Accelerate Program in violation of Fl. Stat. § 320.64(38); and (2) in implementing unfair, unreasonable, arbitrary, inequitable and otherwise unlawful facility requirements, HMA fails or refuses to offer to West Palm all bonuses and incentives available under the Accelerate Program in violation of Fl. Stat. § 320.64(38);

(c)      under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction: (1) requiring that HMA pay West Palm a reasonable percentage of the incentives available under the Accelerate Program for so long as HMA continues to offer the Accelerate Program or comparable program to all other dealers in Florida; and (2) requiring that HMA make equally available to West Palm all incentives available under the Accelerate Program by ceasing the application of unfair, unreasonable, arbitrary, and inequitable facility criteria;

(d)      damages no less than $75,000 in an amount to be proven at trial;

(e)      an order awarding West Palm attorney's fees, interest, costs; and

(f)      such other relief as this Court deems just and equitable.

### SIXTH COUNTERCLAIM
### Violation of the Florida Dealer Act, Fla. Stat. § 320.64(37)
### (Against HMA and HMC)

113.    West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

114.    This Count is an action for damages under Fl. Stat. § 320.697, injunctive relief under Fl. Stat. § 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57,

Chapter 86, Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat. § 320.64(37).

115.     Under Fl. Stat. § 320.695, to the extent this action seeks injunctive relief, this action is brought by West Palm in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm.

116.     Fl. Stat. § 320.64(37) provides that a licensee such as HMA has violated the law if it has:

> refused to allow or has limited or restricted a motor vehicle dealer from acquiring or adding a sales or service operation for another line-make of motor vehicle at the same or expanded facility unless . . . the licensee can demonstrate that such refusal, limitation, or restriction is justified by consideration of reasonable facility and financial requirements and the dealer's performance for existing line-make.

117.     Through the Accelerate Program and GDSI 2.0, including the Accelerate Exclusivity Requirement, HMA has limited or restricted West Palm's ability to operate its Genesis sales and service operation at the dealership location without lawful justification.

118.     HMA's actions violate Fl. Stat. § 320.64(37).

119.     Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

120.     As a result, an injunction restraining HMA from implementing GDSI 2.0, including the Accelerate Exclusivity Requirement, in violation Fl. Stat. § 320.64(37), is appropriate.

121.     HMC is jointly and severally liable for the unlawful actions of HMA, its subsidiary.

46

WHEREFORE, West Palm demands:

    (a) under Fl. Stat. § 320.697, entry of a judgment against HMA and HMC for treble damages;

    (b) under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that HMA, through the Accelerate Program and GDSI 2.0, refused to allow or has limited or restricted West Palm from acquiring or adding another line-make sales or service operation at its Hyundai facility in violation of Fl. Stat. § 320.64(37);

    (c) under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction restraining HMA from implementing the Accelerate Exclusivity Requirement and GDSI 2.0;

    (d) an order awarding West Palm attorney's fees, interest, costs; and

    (e) such other relief as this Court deems just and equitable.

### SEVENTH COUNTERCLAIM
### Violation of the Florida Dealer Act, Fla. Stat. § 320.64(6)
### (Against HMA and HMC)

122.    West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

123.    This Count is an action for damages under Fl. Stat.§ 320.697, injunctive relief under Fl. Stat.§ 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat.§ 320.64(6).

124.     Under Fl. Stat.§ 320.695, to the extent this action seeks injunctive relief, this action is brought by West Palm in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm.

125.     Fl. Stat. § 320.64(6) provides that a licensee such as HMA has violated the law if it has "coerced or attempted to coerce any motor vehicle dealer to enter into any agreement with the licensee."

126.     By tying incentives in the Accelerate Program to GDSI 2.0 and the Accelerate Exclusivity Requirement, and by placing dealers who do not comply with such requirements at a cost disadvantage relative to dealers who receive full Accelerate Program incentives, HMA has coerced or tried to coerce West Palm and others to enter into an agreement with HMA to create a GDSI 2.0-compliant Hyundai-exclusive sales and service facility.

127.     HMA's actions violate Fl. Stat. § 320.64(6).

128.     Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

129.     An injunction restraining HMA from implementing the Accelerate Exclusivity Requirement in violation Fl. Stat. § 320.64(6) is appropriate.

130.     HMC is jointly and severally liable for the unlawful actions of HMA, its wholly owned subsidiary.

WHEREFORE, West Palm demands:

(a) under Fl. Stat. § 320.697, entry of a judgment against HMA and HMC for treble damages;

(b) under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that HMA, through the Accelerate Program, has coerced or attempted to coerce West Palm to enter into an agreement with HMA in violation of Fl. Stat. § 320.64(6);

(c) under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction restraining HMA from implementing the Accelerate Program and GDSI 2.0, including the Accelerate Exclusivity Requirement;

(d) an order awarding West Palm attorney's fees, interest, costs; and

(e) such other relief as this Court deems just and equitable.

## EIGHTH COUNTERCLAIM
### Violation of the Florida Dealer Act, Fla. Stat. § 320.64(10)(b)
#### (Against HMA and HMC)

131.    West Palm repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

132.    This Count is an action for damages under Fl. Stat. § 320.697, injunctive relief under Fl. Stat. § 320.695, and declaratory relief under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for HMA's violation of Fl. Stat. § 320.64(10)(b).

133.    Under Fl. Stat. § 320.695, to the extent this action seeks injunctive relief, this action is brought by West Palm in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm.

134.    Fl. Stat. § 320.64(10)(b) provides that a licensee such as HMA:

> may not require a motor vehicle dealer, by agreement, program, policy, standard or otherwise, to make substantial changes, alterations, or remodeling to, or to replace a motor vehicle dealer's sales or service facilities unless the licensee's requirements are reasonable and justifiable in light of the current and reasonable foreseeable projections of economic conditions, financial expectations, and the motor vehicle dealer's market for the licensee's motor vehicles.

135.    By tying incentives in the Accelerate Program to GDSI 2.0 and the Accelerate Exclusivity Requirement, and by placing dealers who do not comply with such requirements at a substantial cost disadvantage relative to dealers who receive full Accelerate Program incentives, HMA has required West Palm to make substantial changes to its facilities and to create a GDSI 2.0-compliant Hyundai-exclusive sales and service facility. These requirements are not reasonable and justifiable given current and reasonably foreseeable projections of economic conditions, financial expectations, and West Palm's market.

136.    HMA's actions violate Fl. Stat. § 320.64(10)(b).

137.    Fl. Stat. § 320.695 provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

138.    An injunction restraining HMA from implementing the Accelerate Exclusivity Requirement in violation of Fl. Stat. § 320.64(10)(b) is appropriate.

139.    HMC is jointly and severally liable for the unlawful actions of HMA, its wholly owned subsidiary.

WHEREFORE, West Palm demands:

(f) under Fl. Stat. § 320.697, entry of a judgment against HMA and HMC for treble damages;

(g) under 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) HMA, through the Accelerate Program, requires West Palm to make substantial changes, alterations, or remodeling to its sales or service facilities; and (2) the substantial changes, alterations, or remodeling to West Palm's sales or service facilities required by HMA are not reasonable and justifiable given the current and reasonable foreseeable projections of economic conditions, financial expectations, and West Palm's market for HMA's motor vehicles, in violation of Fl. Stat. § 320.64(10)(b);

(h) under Fl. Stat. § 320.695, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Palm, entry of an injunction restraining HMA from implementing the Accelerate Program and GDSI 2.0, including the Accelerate Exclusivity Requirement;

(i) an order awarding West Palm's attorney's fees, interest, costs; and

(j) such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

EFN West Palm Motor Sales LLC hereby demands trial by jury on all issues so triable.

Dated: June 28, 2022

ARENTFOX SCHIFF LLP

By:   /s/Charles A. Gallaer
      Russell P. McRory, Esq. (*pro hac vice*)
      Michael P. McMahan, Esq. (*pro hac vice*)
      Charles A. Gallaer, Esq.
      1301 Avenue of the Americas, Fl. 42
      New York, NY 10019
      Tel: 212-484-3900

      Taniel E. Anderson (*pro hac vice*)
      1717 K Street, NW
      Washington, DC 20006
      Tel: 202-857-6000

      *Attorneys for EFN West Palm Motor Sales, LLC*