UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-82102-Civ-MATTHEWMAN

HYUNDAI MOTOR AMERICA
CORPORATION,

      Plaintiff,

vs.

EFN WEST PALM MOTOR SALES, LLC, et al.,

      Defendants.

_____/

FILED BY_____KJZ_____D.C.

Nov 14, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING IN PART AND DENYING IN PART
## HMA'S MOTION TO STRIKE EXPERT REPORT
## AND EXCLUDE TRIAL TESTIMONY OF MARK SWANSON [DE 333]

THIS CAUSE is before the Court upon Plaintiff, Hyundai Motor America Corporation's ("HMA") Motion to Strike Expert Report and Exclude Trial Testimony of Mark Swanson ("Motion") [DE 333]. Defendants, EFN West Palm Motor Sales, LLC, Gene Khaytin, Ernesto Revuelta, Edward W. Napleton, Geovanny Pelayo, and Jorge Ruiz ("Defendants"), have filed a response to the Motion [DE 334], and HMA has replied [DE 338]. The Court held a hearing on the Motion via Zoom video teleconference on October 6, 2022. The matter is now ripe for review. The Court has carefully considered the parties' written submissions, the parties' oral argument at the hearing, the record, and applicable law.

## I.      BACKGROUND

Mark Swanson, a transportation safety consultant, was retained by Defendants to provide an analysis and expert opinions "relating to the National Highway Traffic Safety Administration's

1

("NHTSA") investigation of Theta II engines and Hyundai Motor America's ("Hyundai") inadequate compliance with NHTSA's investigation." [DE 333-1 at 2]. The entirety of his expert report and detailed opinions is on the docket at DE 333-1.

## II.    MOTION, RESPONSE, AND REPLY

In its Motion, HMA is seeking to strike the expert report and wholly exclude Mr. Swanson's trial testimony. [DE 333 at 2]. HMA explains that Defendants' operative Counterclaim "does not contain a single allegation regarding NHTSA's investigation of Theta II engines or HMA's purported failure to timely or appropriately act as part of the investigation," as Defendants voluntarily dismissed the claims involving these allegations. *Id.* HMA argues that, since Mr. Swanson's opinions are completely irrelevant, they are inherently not helpful to the jury. *Id.* HMA asserts that Mr. Swanson's opinions cannot be used to support Defendants' unclean hands affirmative defense since Defendants cannot demonstrate that HMA's wrongdoing was directly related to the allegations of warranty fraud raised in the operating Complaint. *Id.* at 6–7. HMA argues that "regardless of whether HMA acted quickly enough in its disclosures to NHTSA, this has nothing to do with Defendants intentionally blowing engines and submitting false warranty claims to HMA." *Id.* at 7. HMA next contends that Mr. Swanson's opinions are not the proper subject of expert testimony since they constitute an impermissible narrative of events and discussion of the purported knowledge and intent of HMA and NHTSA and also contain impermissible legal conclusions. *Id.* at 8–15. Finally, HMA maintains that Mr. Swanson's opinions should be excluded under Rule 403 as they "would only serve to create jury confusion and prejudice to HMA" and "these concerns substantially outweigh any possible relevance, and also require exclusion of Mr. Swanson's opinions." *Id.* at 15.

In response, Defendants argue that Mr. Swanson's report and opinions are directly relevant to both "Defendants' denials of HMA's affirmative allegations (i.e., the engines were already defective and therefore Defendants did not fraudulently destroy them) and Defendants' affirmative defense of unclean hands (i.e., Hyundai itself has engaged in rampant misconduct through its concealment of defective engines and bungled recall campaigns, precluding its efforts to equitably shift the burden of proving no fraud to Defendants)." [DE 224 at 3]. Defendants next point out that HMA does not challenge Mr. Swanson's qualifications. *Id.* at 6. Defendants argue that Mr. Swanson's report does not need to be scientific in nature to be reliable and that, in his report, he has sufficiently explained how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts. *Id.* at 8. Defendants further argue that Mr. Swanson's report and testimony would be helpful to the jury because the report and opinions are relevant and are the proper subject of expert testimony. *Id.* at 11–19. Finally, Defendants contend that the report and opinions are admissible and subject to cross-examination. *Id.* at 20.

In reply, HMA first asserts that Defendants are "unable to actually articulate why the extensive history which Mr. Swanson seeks to present to the jury as to, inter alia, the NHTSA investigation and HMA's purported 'negligence' in complying with the NHTSA investigation are relevant to whether Defendants committed warranty fraud against HMA." [DE 338 at 2–3]. HMA next argues that Mr. Swanson's opinions cannot be used to support Defendants' unclean hands affirmative defense since the opinions are not directly, immediately, or very closely related to the warranty fraud claims in the Complaint. *Id.* at 4–6. HMA maintains that Mr. Swanson's report "does not apply any expert analysis" and instead "simply recounts a lengthy narrative of events."

*Id.* at 6. According to HMA, Mr. Swanson's report also reaches "conclusory opinions as to HMA's and NHTSA's state of mind" and contains impermissible legal conclusions. *Id.* at 7–10. Lastly, HMA emphasizes that "even if Mr. Swanson's opinions had some arguable relevance (which they do not) and were the proper subject of expert testimony (which they are not), his opinions nevertheless should still be excluded under Rule 403." *Id.* at 10.

### III.   <u>RELEVANT LAW</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2–3 (S.D. Fla. July 1, 2020) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n*, 2020

WL 3581611, at *3 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd*., 326 F.3d 1333, 1341 (11th Cir. 2003) (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

"[C]ourts must remain chary not to improperly use [Rule 702's] admissibility criteria to supplant a plaintiff's right to a jury trial." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (quotation marks omitted)); *see also Quiet Tech. DC-8, Inc*., 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence ... [or to] supplant the adversary system or the role of the jury." (citation and quotation marks omitted)). But neither can a court abdicate its "gatekeeping role" to ensure that expert testimony is reliable before it is admitted, as required by *Daubert* and Rule 702. *See McLain v. Metabolife, Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) ("A trial court ... abuses its discretion by failing to act as a gatekeeper" to ensure reliability of expert testimony); *see also Wilson v. Flack*, No. 19-14294, 2022 WL 4477025, at *8 (11th Cir. Sept. 27, 2022).

## IV.   ANALYSIS AND RULINGS

As an initial matter, as discussed at the October 6, 2022 hearing, Defendants' counsel represented at the hearing that Defendants are not seeking to admit into evidence Mr. Swanson's lengthy expert report, and the Court does not intend to admit into evidence Mr. Swanson's expert

report.[1] The Court will, however, allow the report to be used for purposes of refreshing Mr. Swanson's recollection and impeachment, if appropriate. Therefore, to the extent that HMA argues that Mr. Swanson's expert report should be excluded, this issue is resolved, and HMA's Motion is therefore granted in part to the extent that Mr. Swanson's report shall not be admitted at trial. The Court will now address the admissibility of Mr. Swanson's oral testimony and opinions.

A.   Mr. Swanson's Qualifications

With regard to the *Daubert* analysis, HMA does not dispute Mr. Swanson's qualifications and has waived any argument about his qualifications. The Court also independently finds Mr. Swanson to be qualified in light of his credentials. *See* DE 333-1 at 1–4; DE 334 at 6–8.

B.   Reliability of Mr. Swanson's Methodology

The Court therefore turns to the reliability of Mr. Swanson's methodology. The parties agree that "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliable [sic] applied to the facts.'" *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942–43 (11th Cir. 2015) (quoting *United States v. Frazier*, 387 F.3d 1244 at 1261 (11th Cir. 2014) (en banc)). The parties simply disagree as to the applicability of that law to the facts in the case at hand.

Here, Mr. Swanson has provided two primary opinions. First, he states that

Hyundai was negligent by failing to act according to industry standards and NHTSA regulations after Hyundai learned information related to a serious safety

---

[1] This Court does not normally, absent special circumstances, or agreement of the parties, allow an expert's report to be submitted to the jury as they often contain inadmissible, irrelevant, or unfairly prejudicial statements or information. *See, e.g.*, *W. Palm Beach Acquisitions, Inc. v. Kia Motors Am., Inc.*, No. 20-CV-80780, 2022 WL 1211403, at *3 (S.D. Fla. Apr. 25, 2022); *Plain Bay Sales, LLC v. Gallaher*, No. 18-CV-80581, 2022 WL 585707, at *3 (S.D. Fla. Feb. 25, 2022); *Apple Inc. v. Corellium, LLC*, No. 19-81160-CV, 2020 WL 7414523, at *3 (S.D. Fla. July 29, 2020), *report and recommendation adopted*, No. 19-81160-CIV, 2020 WL 7409000 (S.D. Fla. Dec. 16, 2020).

defect in Theta II engines to Hyundai. More specifically, Hyundai learned about a safety defect in its Theta II engines as early as 2015, but then actively made efforts to conceal that information from the American public and NHTSA, and failed to take appropriate steps to initiate vehicle recalls, as it should have. Hyundai should have acted much more quickly and deliberately to investigate and ascertain the precise extent of the defect in its vehicles and conduct commensurately planned recall campaigns, but it did not.

[DE 333-1 at 4]. Second, he opines that

Hyundai's failure to act quickly to address the safety defect in the Theta II engines eventually resulted in significant involvement by NHTSA in the form of robust oversight of Hyundai's implementation of subsequent recall campaigns. Even after NHTSA conducted an investigation to determine the extent of Hyundai's previous knowledge of the defective Theta II engine – and found that Hyundai should have initiated a broader recall campaign far earlier than it did – Hyundai continued to inadequately respond to the problem, in NHTSA's opinion. NHTSA then held mandatory monthly status meetings with Hyundai executives to oversee Hyundai's administration of its recall campaigns, which is unusual. Even more significantly, NHTSA eventually fined Hyundai in the amount of up to $210 million and imposed a series of rigorous compliance conditions – an unprecedented civil penalty that shows NHTSA's view of the nature of Hyundai's failures, lack of transparency, and inadequate cooperation with federal regulators and investigators.

[DE 333-1 at 4-5]. The remainder of the report provides an overview of NHTSA and its investigations, the NHTSA recall process, examples of typical recalls, the NHTSA investigations into the Theta II engine defect, non-NHTSA legal proceedings and investigations, the 2020 Consent Order, and Hyundai's prior Consent Order. [DE 333-1]. It additionally provides more detailed opinions regarding concealment of the Theta II defect and the 2020 Consent Order. *Id.*

After very careful review, the Court will not permit Mr. Swanson to testify as to all of the matters addressed in his lengthy expert report, as discussed further below. However, the Court finds that, with regard to those subjects upon which the Court will permit Mr. Swanson to testify, which are discussed in detail below, Mr. Swanson's methodology is reliable. He relies on his experience, including previously working as a Safety Defects Engineer at the NHTSA and in the

Defect Assessment Division at the NHTSA, to reach his conclusions. It is clear that his experience is a sufficient basis for his admissible opinions, and that his experience has been reliably applied to the facts.

The Court has carefully reviewed a case relied upon by HMA, *In re Trasylol Products Liability Litigation*, 709 F. Supp. 2d 1323 (S.D. Fla. 2010), to support its position that the entirety of Mr. Swanson's expert testimony should be excluded. In that case, the court initially felt that an "FDA expert could be helpful to the jury." *Id.* at 1339. The *Trasylol* court noted that other judges had expressed concerns about the plaintiff's expert witness, so, in an attempt to strictly limit the expert's testimony, the court found it necessary to hold a *Daubert* hearing. *Id.* After a six-hour hearing, the court excluded the plaintiff's expert's testimony from trial, finding that she "generally takes a collection of facts, imputes motive and knowledge, and draws unsupported conclusions unrelated to any regulatory expertise." *Id.* at 1347. The court also concluded that the expert was an "advocate presented with the trappings of an expert but with no expectation or intention of abiding by the opinion constraints of Rule 702." *Id.* at 1351.

While this Court fully agrees with Judge Middlebrooks' insightful analysis in *Trasylol*, the case at hand is factually distinguishable for several reasons including, but not limited to, the following: a) Mr. Swanson's areas of testimony and opinions can be more easily parsed, as laid out below; b) there is no evidence of other courts having had issues with Mr. Swanson; c) he is not solely imputing motive and knowledge and drawing unsupported legal conclusions; and d) his report evidences that he can, in fact, testify on certain topics in a reliable manner based on his directly relevant work experience.

C.   <u>Relevance and Whether Mr. Swanson's Testimony Would Assist the Trier of Fact</u>

The main argument in HMA's Motion is that Mr. Swanson's testimony is not relevant to the pending claims and defenses in the case. Relevancy is an admissibility standard under Federal Rules of Evidence 401, 402, and 403, and it is also integral to the third factor of the *Daubert* analysis—whether the testimony would assist the trier of fact. In light of the allegations made by HMA in paragraphs 21–30 of the Second Amended Complaint [DE 144], and in light of the specific claims and defenses in this case, the Court finds that certain topics found within the expert report are relevant, would assist the trier of fact, and should be permitted after a Rule 403 analysis. More specifically, the NHTSA engine recall provides context to, and is inextricably intertwined with, the fraud allegations HMA has made against Defendants.

**1.   Topics Upon Which Mr. Swanson Shall Be Permitted to Testify**

Mr. Swanson shall be permitted to testify about the following: (1) what NHTSA is and how it functions; (2) how NHTSA recalls generally work and a general overview of NHTSA investigations; (3) the Theta II recalls pertaining to Hyundai and its Theta II engines; (4) why there was a Hyundai warranty fraud program and how it worked (who managed it and how it was executed); (5) the NHTSA investigations into the Theta II engine defect involving Hyundai; and (6) the 2020 Consent Order involving HMA, including the fines and sanctions imposed against HMA.

**2.   Topics Upon Which Mr. Swanson Shall Not Be Permitted to Testify**

First of all, Mr. Swanson cannot make any legal conclusions. He cannot state that HMA was negligent, or that HMA should have acted much more quickly and deliberately to investigate and ascertain the precise extent of the defect in its vehicles and/or address the safety defects.

Similarly, Mr. Swanson cannot testify that HMA actively made efforts to conceal any information regarding the Theta II defect itself. Second, Mr. Swanson cannot impute motive or intent to HMA. He also cannot impute motive or intent to NHTSA as he was not involved in the recall. Third, Mr. Swanson cannot testify about any civil class action lawsuit or associated settlement, criminal investigation, federal grand jury subpoenas, or whistleblower complaints or associated settlements related to HMA. Fourth, Mr. Swanson cannot discuss the Volvo or GM Recalls as examples of when car manufacturers acted more appropriately than Hyundai did during its recall. Fifth, Mr. Swanson cannot testify about Kia or NHTSA's interactions with Kia. All of these topics have no relevance or minimal relevance to the claims and defenses in this lawsuit. And to the extent any such topics may arguably be relevant, the Court finds that they are more unfairly prejudicial to HMA than they are probative and must be excluded under Federal Rule of Evidence 403.

Finally, the Court notes that parties filed a Joint Stipulation Regarding Certain Arguments and Evidence to be Precluded at Trial, in Lieu of Motions in Limine [DE 355]. Thereafter, the Court entered a Paperless Order approving and adopting that Joint Stipulation [DE 360]. In light of these filings, Mr. Swanson cannot testify regarding any of the 13 topics delineated in the Joint Stipulation, several of which are also discussed in this Order.

## V.     CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that HMA's Motion to Strike Expert Report and Exclude Trial Testimony of Mark Swanson [DE 333] is **GRANTED IN PART AND DENIED IN PART**, as specifically stated in this Order.

The Court's rulings herein are without prejudice to any party's ability to seek reconsideration of this Court's Order during the crucible of trial, outside the presence of the jury,

in the event circumstances arise which support such a request.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of November, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge