UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-82102-Civ-MATTHEWMAN

HYUNDAI MOTOR AMERICA
CORPORATION,

    Plaintiff,

vs.

EFN WEST PALM MOTOR SALES, LLC, et al.,

    Defendants.
_____/

FILED BY ___KJZ___ D.C.
Nov 14, 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE AND EXCLUDE TRIAL TESTIMONY OF JAMES W. SMITH [DE 352]

THIS CAUSE is before the Court upon Defendants, EFN West Palm Motor Sales, LLC, Gene Kaytin, Edward W. Napleton, Geovanny Pelayo, Ernie Revuelta, and Jorge Ruiz's (collectively, "Defendants") Motion to Strike and Exclude Trial Testimony of James W. Smith ("Motion") [DE 352]. Plaintiff, Hyundai Motor America Corporation ("HMA") has filed a response [DE 375], and Defendants have replied [DE 386]. The Court held a hearing on the Motion via Zoom video teleconference on November 7, 2022. The matter is now ripe for review. The Court has carefully considered the parties' written submissions, the parties' oral argument at the hearing, the record, and the applicable law.

    **I.    BACKGROUND**

James W. Smith, P.E., is a Principal Engineer and a Professional Mechanical Engineer at Exponent Engineering and Scientific Consulting. [DE 352–1]. He was retained as an expert by

1

HMA to conduct "an analysis of claims included in a complaint filed by Mark Eddleman on April 23, 2020." *Id.* at 2 of 90. His investigation and analysis "focuses on the claim that NAG[1] participated in 'large-scale warranty fraud against Hyundai' related to an engine recall announced by Hyundai, and that 'Defendants and NAG Executive-1 engaged in a scheme to defraud Hyundai based on the manufacturing issue Hyundai had announced.'" *Id.* The entirety of his expert report and detailed opinions is on the docket at DE 352–1. At issue in the pending Motion is solely Section 10 of the report entitled "Repair Order (RO) Review." [DE 352–1 at 70–81]. Mr. Smith discuss eight different ROs in Section 10 and subsequently concludes in his Summary of Section 10 as follows:

> 10.9 Summary of Findings to Date
>
> These repair record examples show a pattern of FL121 behavior consistent with the fraud described by Eddleman – FL121 acquires a used vehicle without an engine problem, and at some time after the acquisition, while still in the possession of FL121, the engine is reported by FL121 to be requiring a replacement. However, these examples also show that FL121 performs inspections of used vehicles that include starting the engine, checking for engine noises and diagnostic codes, and checking the condition of the engine oil. In these examples FL121 did not identify any engine problems during their UVI and CPO inspections – no seized engines or knocking engines were initially identified. After some time, where FL121 may continue with repairs and touch ups to the vehicles and a small number of miles may be added to the odometer, FL121 reports the engines as seized or knocking.
>
> As discussed previously, the progression of this engine failure mode occurs gradually. The connecting rod bearing begins to wear, and eventually an audible knock develops. Over time and with continued wear of the rod bearing, the audible knock becomes more noticeable and the friction between the bearing and the crankshaft pin increases. Eventually the condition of the bearing can produce sufficient friction to cause the crankshaft to stop rotating, causing an engine seizure. Although the mileage required to progress from a detectable engine knock to engine seizure depends on factors such as manufacturing quality and engine maintenance, Exponent observed that the audible knock is detectable for several hundreds of

---

[1] "NAG" is the abbreviation for Napleton Automotive Group.

> miles or more of driving before engine seizure.
>
> Mr. Jeffrey Lange, expert for the defendants in *Hyundai Motor America Corp v North American Automotive Services, Inc., et al.* (20-82102-CV-Middlebrooks/Matthewman) agreed that a connecting rod bearing that begins to generate a knock as a result of the recall failure mode will not progress quickly to an engine seizure [Deposition pgs 28-30]. Exponent continues to review the FL121 repair records and reserves the right to supplement this list of examples.

*Id.* at 81.

## II.     MOTION, RESPONSE, AND REPLY

In their Motion, Defendants are moving under Federal Rules of Evidence 702 and 703 to partially exclude the expert report and testimony of Mr. Smith. [DE 352 at 1].[2] Specifically, they seek to exclude solely Section 10 of the report in which "Smith simply describes various vehicle Repair Orders ("ROs") from the EFN West Palm dealership, and then—without any relevant expertise or methodology—speculates about what those ROs mean in this case." *Id.* Defendants contend that Section 10 should be stricken because "Smith is not qualified to offer opinions on ROs," "Smith offers no discernable methodology," and "Smith's analysis is unhelpful to the jury within the meaning of Eleventh Circuit law, because he merely cloaks factual information and advocacy in the veneer of an expert." *Id.* Defendants also argue that Mr. Smith improperly "insinuates that fraudulent acts occurred based upon nothing more than a series of dates and mileage numbers on paperwork." *Id.* at 7. They explain that "Section 10 is nothing more than a recitation of evidence, meant to tell the jury (through the veneer of an expert) how it should interpret that evidence. HMA's counsel is certainly capable of doing the same during closing

---

[2] It should be noted that, on October 26, 2021, the prior presiding judge in this case, the Honorable Donald M. Middlebrooks, United States District Judge, entered an Order on Defendants' Motion to Exclude [DE 222], which Order pertained to Mr. Smith. However, that Order dealt with different issues than those raised in the instant Motion.

3

argument after having fact witnesses identify the ROs discussed in Section 10. Indeed, HMA's counsel has questioned several witnesses about these same ROs." *Id.* at 7–8.

In response, HMA first explains that Section 10 "concerned an analysis of Repair Orders created in EFN's service department that Mr. Smith performed to determine whether there was evidence to corroborate the claim by Mark Eddleman that EFN would acquire used vehicles through trade or auction for the purpose of submitting fraudulent Theta II claims to HMA." [DE 375 at 2]. HMA argues that, "[b]ecause there are certain symptoms associated with the recall condition's failure mode, the Repair Orders would tend to corroborate Mr. Eddleman if they contained evidence that vehicles that had engines in good working order at the time they were acquired soon became the subject of Theta II claims despite having little to no mileage added to their engines." *Id.* HMA maintains that Mr. Smith actually applied his "knowledge and understanding to the information about engine condition contained in the Repair Orders discussed in the challenged portion of his report" and did not simply summarize the Repair Orders as claimed by Defendants. *Id.* at 3.

With regard to Mr. Smith's qualifications, HMA explains that he "applied his expertise to assess information about engine condition that Defendants themselves documented in order to determine if it was corroborative of Mr. Eddleman's allegations. He is well-qualified to have done so." [DE 375 at 5]. With regard to Mr. Smith's methodology, HMA contends that Mr. Smith properly "applied his expert understanding of the Theta II failure mode to evidence Defendants created concerning engine condition at one mileage to other evidence Defendants created concerning an allegedly different condition at the same or nearly the same mileage." *Id.* at 6. Finally, HMA argues that Mr. Smith's testimony on Section 10 would aid the jury because "he has

4

not simply listed information from these documents," but rather has "considered whether information in Defendants' documents is consistent with the Theta II failure mode or, instead, is consistent with Mr. Eddleman's claim that used vehicles with good engines were being acquired for purposes of submitting fraudulent claims." *Id.*

In reply, Defendants point out that HMA's response contains no cases and that "its strategy is smoke-and-mirrors." [DE 386 at 1]. Defendants next assert that HMA has offered no evidence of Mr. Smith's qualifications to analyze the repair orders. *Id.* at 2. According to Defendants, "[k]nowledge of mechanical processes and engines simply does not translate to experience in dealership operations just because these subjects broadly relate to cars." *Id.* at 2–3. Defendants next argue that HMA has offered no explanation of Mr. Smith's methodology as it pertains to Section 10. *Id.* at 5–6. They explain that "HMA claims that Smith's 'methodology' of reading RO dates and mileages is reliable because of Mr. Smith's experience of knowing that Theta II engines will not immediately seize before displaying other symptoms like knocking, which appear after time on the road. But in his deposition, he contradicts this argument by saying that, essentially, a defective Theta II can fail at any time." *Id.* at 7. Finally, Defendants contend that "Smith's Section 10 analysis will be unhelpful to the jury" as "Section 10 is nothing more than a reading of documentary evidence meant to tell the jury, through the lips of an expert, how it should interpret that evidence." *Id.* at 8. Defendants further contend that HMA has not sufficiently responded to this argument and that Mr. Smith is improperly trying to tell a jury what to conclude. *Id.* at 8–9.

### III. RELEVANT LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation

and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2–3 (S.D. Fla. July 1, 2020) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n*, 2020 WL 3581611, at *3 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

"[C]ourts must remain chary not to improperly use [Rule 702's] admissibility criteria to supplant a plaintiff's right to a jury trial." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) ("Vigorous cross-examination, presentation of contrary evidence, and careful

6

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (quotation marks omitted)); *see also Quiet Tech. DC-8, Inc.*, 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence ... [or to] supplant the adversary system or the role of the jury." (citation and quotation marks omitted)). But neither can a court abdicate its "gatekeeping role" to ensure that expert testimony is reliable before it is admitted, as required by *Daubert* and Rule 702. *See McLain v. Metabolife, Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) ("A trial court ... abuses its discretion by failing to act as a gatekeeper" to ensure reliability of expert testimony); *see also Wilson v. Flack*, No. 19-14294, 2022 WL 4477025, at *8 (11th Cir. Sept. 27, 2022).

## IV. ANALYSIS AND RULINGS

As an initial matter, the Court does not intend to admit into evidence Mr. Smith's written expert report.[3] The Court will, however, allow the report to be used for purposes of refreshing Mr. Smith's recollection and impeachment, if appropriate. Therefore, to the extent that Defendants argue that Section 10 of Mr. Smith's expert report should be excluded, this issue is resolved, and HMA's Motion is therefore granted in part to the extent that Section 10 of Mr. Smith's written report shall not be admitted at trial. The Court will now address the oral testimony of Mr. Smith

---

[3] This Court does not normally, absent special circumstances, or agreement of the parties, allow an expert's report to be submitted to the jury as they often contain inadmissible, irrelevant, or unfairly prejudicial statements or information. *See, e.g., W. Palm Beach Acquisitions, Inc. v. Kia Motors Am., Inc.*, No. 20-CV-80780, 2022 WL 1211403, at *3 (S.D. Fla. Apr. 25, 2022); *Plain Bay Sales, LLC v. Gallaher*, No. 18-CV-80581, 2022 WL 585707, at *3 (S.D. Fla. Feb. 25, 2022); *Apple Inc. v. Corellium, LLC*, No. 19-81160-CV, 2020 WL 7414523, at *3 (S.D. Fla. July 29, 2020), *report and recommendation adopted*, No. 19-81160-CIV, 2020 WL 7409000 (S.D. Fla. Dec. 16, 2020). The Court previously advised the parties in this case of the Court's position regarding admission of written expert reports at trial during a prior Daubert hearing involving a different expert (Mr. Swanson), and the parties were in agreement that no expert written reports would be admitted at the jury trial of this lawsuit.

pertaining to Section 10 of his report.

### A. Mr. Smith's Qualifications as They Pertain to Section 10

With regard to the first prong of the *Daubert* analysis, Defendants admit that Mr. Smith is qualified as a trained mechanical engineer but argue that his qualifications are an insufficient basis for his opinions in Section 10 of the report. According to Defendants, Mr. Smith's opinions in Section 10 should be excluded because he is not an expert in "dealership operations and paperwork." [DE 352 at 5]. It seems that Defendants are too narrowly interpreting the qualifications analysis.

The Court finds that Mr. Smith is qualified to testify about repair orders. He is a Principal Engineer in the engineering and consulting firm Exponent Engineering and Scientific Consulting. [DE 375 at 4]. In 2017, he was retained by Hyundai to "assist with its study into the root cause of the Theta II engine failures that led to those recalls" for about 1.5 years. *Id.* During the course of the project, Mr. Smith was "involved in the disassembly and inspection of hundreds of Theta II engines" and "studied the progression to engine failure associated with the recall condition." He also presented findings from his study of the Theta II issue to the National Highway Traffic Safety Administration (NHTSA). *Id.* Finally, Mr. Smith has obtained an M.S. in Mechanical Engineering and a B.S. in Aerospace Engineering, has "28 years of experience related to the testing and inspection of vehicle components, the assessment of engine designs and performance, and the assessment of data related to vehicle performance," and also has "significant experience in the study of bearings and in the field of tribology (i.e. friction, wear, and lubrication as relates to bearings)." *Id.* In sum, Mr. Smith is clearly qualified to testify about the repair orders and related documents as they relate to Theta II engine failures, especially in light of his expertise regarding

Theta II engines. His testimony shall not be excluded simply because he is allegedly not an expert in dealership paperwork.

### B. Reliability of Mr. Smith's Methodology with Regard to Section 10

The Court therefore turns to the reliability of Mr. Smith's methodology. "When an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliable [sic] applied to the facts.'" *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942–43 (11th Cir. 2015) (quoting *United States v. Frazier*, 387 F.3d 1244 at 1261 (11th Cir. 2014) (en banc)).

As to Mr. Smith's methodology for Section 10 of the report, he reviews and analyzes the repair orders and related documents based on his experience. In effect, he looks at repair orders for eight vehicles and applies his expertise based on his understanding of the Theta II engine failure mode to analyze the repair orders.

The Court will not permit Mr. Smith to testify as to all of the matters addressed in Section 10 of the report, as discussed below. However, the Court finds that, with regard to the subjects upon which the Court will permit Mr. Smith to testify, which are discussed below, Mr. Smith's methodology is reliable despite Defendants' arguments to the contrary. He relies on his extensive experience to reach his conclusions. It is clear that his experience is a sufficient basis for his admissible opinions, and that his experience has been reliably applied to the facts.

### C. Whether Mr. Smith's Testimony as to Section 10 Would Assist the Trier of Fact

Defendants are seeking to exclude the entirety of Mr. Smith's testimony discussed in Section 10 of his report, which includes subsections 10.0 through 10.9—12 total pages of the report

in total. The Court finds that Mr. Smith's explanation of the eight repair orders and related documents in light of his understanding of the mode of the Theta II engine failure would be helpful to the jury—within limits—as discussed in more detail below.

### 1. Topics Upon Which Mr. Smith Shall Be Permitted to Testify

Mr. Smith shall be permitted to discuss the eight repair orders. He shall also be permitted to opine whether the repair orders are, in his opinion, suspicious or unusual in light of his expert knowledge of the mode of the Theta II engine failure. Mr. Smith can point out issues he sees in the eight repair orders based on his expertise. He can also testify from the documents admitted as to when the cars were bought at auction from Manheim, when they were inspected by Defendants, when the engines failed, their mileage, and related topics, and why this information may or may not be suspicious or unusual to him in his expert opinion. Mr. Smith can opine as to what the records show about the inspections of the vehicles by Defendants, what the eight repair orders subsequently indicate, and why this is unusual or suspicious in his opinion. Finally, he can testify that the mode of the Theta II engine failure occurs gradually, which he believes is inconsistent with the repair orders, inspection reports, and related documents.

### 2. Topics Upon Which Mr. Smith Shall Not Be Permitted to Testify

Some of Mr. Smith's proposed opinions and testimony shall be excluded as they exceed the parameters of admissible expert testimony under Federal Rules of Evidence 702 and 703, and they are more unfairly prejudicial than probative under Federal Rule of Evidence 403. Therefore, Mr. Smith shall <u>not</u> be permitted to testify about the following.

First, he cannot testify about Mark Eddleman's testimony or claims, as referenced in Section 10.0. The Court will not allow him to parrot back the disputed testimony or claims of Mr. Eddleman.

Second, Mr. Smith cannot opine that the eight repair orders show a pattern of FL 121 behavior consistent with the fraud described by Mr. Eddleman, as stated in Section 10.9. Mr. Smith can address the repair orders and his related opinions as stated above in this Order but he cannot specifically reference the testimony of Mr. Eddleman in an effort to "corroborate" or put his expert imprimatur on Mr. Eddleman's testimony.

Third, Mr. Smith cannot testify regarding Mr. Lange's alleged "agreement" as stated in Section 10.9.

Fourth, Mr. Smith cannot testify that the repair invoices establish that Defendants committed fraud or make any legal conclusions whatsoever.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Strike and Exclude Trial Testimony of James W. Smith [DE 352] is **GRANTED IN PART AND DENIED IN PART**, as specifically stated in this Order.

The Court's rulings herein are without prejudice to any party's ability to seek reconsideration of this Court's Order during the crucible of trial, outside the presence of the jury, in the event circumstances arise which support such a request.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of November, 2022.

                                                               WILLIAM MATTHEWMAN
                                                               United States Magistrate Judge