# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

HYUNDAI MOTOR AMERICA CORPORATION,

    Plaintiff,

    v.

EFN WEST PALM MOTOR SALES, LLC,

    Defendant/Counterclaim
    Plaintiff/Third-Party Plaintiff

GENE KHAYTIN; ERNESTO REVUELTA;
EDWARD W. NAPLETON; GEOVANNY PELAYO,
JORGE RUIZ,

    Defendants.


EFN WEST PALM MOTOR SALES, LLC;
for itself and in the name of the Department of
Highway Safety and Motor Vehicles of the State of
Florida, for its use and benefit,

    Counterclaim-Plaintiff/Third-Party
    Plaintiff,

    v.

HYUNDAI MOTOR AMERICA CORPORATION,

    Counterclaim-Defendant,

Case No. 9:20-cv-82102-WM

**DEFENDANTS' EXPEDITED SECOND MOTION FOR SANCTIONS FOR
SPOLIATION OF EVIDENCE AGAINST PLAINTIFF
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

LEGAL STANDARD.................................................................................................................. 5

ARGUMENT ............................................................................................................................... 6

I.     HMA's spoliation of additional engines after lesser sanctions requires dismissal. ........... 6

II.    HMA had a continuing duty to offer the returned engines for inspection. ....................... 9

III.   In the alternative, HMA's case must be significantly limited. ....................................... 10

CONCLUSION.......................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bahr v. NCL (Bahamas) Ltd.*,
  No. 19-cv-22973-BLOOM/Louis, 2022 WL 293255 (S.D. Fla. Feb. 1, 2022) ........................10

*C&M Oil Co. v. CITGO Petroleum Corp.*,
  No. 04-22901-CIV-HIGHSMITH/SIMONTON, 2007 WL 9751801 (S.D. Fla.
  Feb. 28, 2007) ..............................................................................................................................5

*Flury v. Daimler Chrysler Corp.*,
  427 F.3d 939 (11th Cir. 2005) .................................................................................................8, 9

*Hornady v. Outokumpu Stainless USA*,
  572 F.Supp.3d 1162 (S.D. Ala. Nov. 18, 2021) ..........................................................................8

*Malautea v. Suzuki Motor Co.*,
  987 F.2d 1536 (11th Cir. 1993) ...................................................................................................8

*Martello v. Prod. Quest Mfg., LLC*,
  No. 6:12-cv-1304-Orl-22GJK, 2014 WL 2565194 (S.D. Fla. June 6, 2014) ..............................6

*Telectron, Inc. v. Overhead Door Corp.*,
  116 F.R.D. 107 (S.D. Fla. June 4, 1987) .....................................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 37(b)(2)(A) .....................................................................................6

Federal Rule of Civil Procedure 26(e) .............................................................................................10

Pursuant to Local Civil Rule 7.1(d)(2), Defendants seek an expedited order for spoliation sanctions, given the imminency of trial. An expedited order under Local Civil Rule 7.1(d)(2) is warranted here, given that a specially set trial is scheduled to begin in less than one month. Defendants request hearing on this matter at the prescheduled conference on December 20, 2022.

## PRELIMINARY STATEMENT

"The undisputed evidence shows that Napleton #121 returned 917 Theta II engines to Plaintiff from September 2015, the year the recall began, to April 2021. . . . [T]he 144 engines returned from Defendants after Mr. Kim's email [until the litigation started on November 17, 2020] constitute critical evidence in this litigation."
- *Hon. William Matthewman, ECF No.175 ("Spoliation Order") at 17–18.*

"An intentional failure performed in the manner described by Eddleman will leave evidence on the internal components of the engine. Some of the damage observed in the tested engines that were intentionally-seized is distinct from the damage that occurs in a recall engine failure. The evidence can be identified by careful inspection."
- *Smith First Report at 35 (Mar. 5, 2021); Second Report at 25 (June 27, 2022).*

"FL 121 . . . replaced 306 engines above expected from January 2016 through December 2021."
- *Fourth Smith Report (Oct. 7, 2022).*

"In connection with the [new 2022] report, I did not inspect any additional engines in that report."
- *Smith Dep. Tr. at 8:25–9:2 (Nov. 14, 2022).*

Undeterred by the Spoliation Order, HMA continued to destroy returned engines even after being sanctioned. At least 251 post-complaint engines are now relevant because HMA's new expert report asserts that fraud and damages continued *over a year after* the complaint through December 2021. As a result, Defendants must ask this Court for more sanctions. Because the egregious conduct has been repeated, only the strongest of sanctions will suffice: dismissal of HMA's claims.

This Court has already weighed, measured, and found wanting HMA's failed efforts to preserve the crucial evidence at the heart of its case: the actual engines. During the July 2021

1

spoliation hearing, HMA's case hinged on the allegation that Defendants intentionally damaged engines before the November 2020 complaint. As a result, this Court issued targeted sanctions covering the 144 engines returned during the five months between the date of HMA's internal preservation letter (June 9, 2020) and the complaint (November 17, 2020).

Defendants must ask this Court for further sanctions. With trial imminent, HMA changed its theory again. Now, the alleged scheme did not end in November 2020, but continued on. HMA's expert James Smith issued a new set of expert reports, the latest served on October 7, 2022 ("Fourth Smith Report"). Based on Smith's new theories, he calculates damages through December 31, 2021. At his November 14, 2022 deposition, Smith admitted that he inspected no new engines for this new analysis. And HMA's counsel has offered no explanation for the fate of the hundreds of engines that West Palm returned after November 2020. When asked what happened to the engines West Palm returned ***after the July 2021 Spoliation Order***, HMA's counsel had no response.

Defendants file this motion because the 251 additional engines are apparently unavailable and likely destroyed. HMA and its counsel had a ***continuing*** duty to preserve this material evidence. HMA should not be allowed to attempt to extend the liability and damages period of the alleged scheme after once again allowing critical evidence to be lost, particularly after this Court has admonished HMA, "a large sophisticated corporation," for its "inexplicable failure" to "ensure compliance" with its preservation obligations. Spoliation Order at 22, (ECF No. 175).

HMA admitted that it took no steps to preserve engines (beyond sending an ignored preservation email). The 251 post-complaint engines that HMA did not preserve have now been made relevant by its new litigation position. At the time of the first spoliation motion, some 143 engines returned between November 2020 and June 2021 were already destroyed. But more egregiously, after the spoliation hearing, HMA continued destroying engines. There is no excuse after being sanctioned by this Court. All told, between June 2020 (duty to preserve date) and

2

December 2021 (end of Smith's new damages period), West Palm returned almost 400 engines that are unaccounted for and likely destroyed. About 108 of those engines disappeared *after* the Spoliation Order.

HMA has not learned its lesson. It must be taught a final one. Because of its extraordinary, bad-faith tactics during discovery, HMA's claims must be dismissed.

### STATEMENT OF FACTS

Defendants refer the Court to the Spoliation Order (ECF No. 175 at 7–11) for the initial relevant facts. This motion focuses on the new relevant facts below.

As this Court found, between the June 9, 2020 preservation email and the November 17, 2020 complaint, HMA spoliated 144 returned engines. *See id.* Between November 17, 2020 and December 31, 2021, West Palm returned an additional 251 engines to HMA. *See* McAskill Decl. at 2-3(Ex. A-1, A-2). Of those 251, about 108 were returned after the Spoliation Order. *See id.*

On July 7, 2022, HMA moved for leave to file the Second Smith Report. ECF No. 316. Smith used a new statistical analysis to argue that the accused fraud continued after the complaint. He also, for the first time, calculated damages through December 2021. This was the first indication that HMA intended to extend the accused fraud and damages past the filing of the November 17, 2020 complaint.

In response, Defendants noted that the Second Smith Report represented a major change to the scope and nature of HMA's claims and evidence, and that Defendants would need time to digest all of Smith's new evidence, accusations, and claims. *See* ECF No. 321 at 16–17.

On August 15, 2022, the Court granted HMA's motion for leave to file the Second Smith Report. The same day, Defendants asked for supplemental data beyond 2019. *See* McMahan Decl. Ex. A. The requested data supposedly supporting Smith's new analyses and damages calculations.

On September 30, 2022 (the last day of discovery and nearly six weeks later), HMA finally

3

provided the requested data, and also explained that Smith would need to update his report (once again) as a result of those new data.

Three days later, Smith corrected his Second Report with updated analyses related to engine seizure rates ("Third Smith Report") (McMahan Decl. Ex. B). On October 6, 2022, Smith updated his report yet again ("Fourth Smith Report") with a corrected damages calculation running through December 2021. (McMahan Decl. Ex. C).

On November 7, 2022, Defendants served a report responsive to the Second, Third, and Fourth Smith Reports. McMahan Decl. at 6. On November 14, 2022, Defendants deposed Smith:

> Q.    In connection with your June 2022 [Second] report, did you inspect any engines that were replaced by Napleton West Palm?
>
> A.    In connection with the June 22 report, I did not inspect any additional engines in that report.
>
> (McMahan Decl. Ex. D at 8:22–9:2)
>
> Q.    Can you describe to me how an engine that is intentionally damaged has evidence that is different than the typical recall failure?
>
> A.    Well, I explained that in my report, of course, and what I say are things like the surfaces of the bearings might look different, they might be white, black, there might be smearing surfaces, shiny areas on the surfaces that would involve connecting rod bearings and main bearings. There would be potentially damage to the skirts on the pistons and the piston walls where debris is allowed to be deployed and the scraping of the debris might occur. It's not washed away by moving oil. There might be bearing debris that is deposited around the interior of the engine block and ladder frame that's not washed away by moving oil. Those would be many of the differences I observed.
>
> Q.    Are all those differences that can be observed through a physical inspection of an engine?
>
> A.    That's correct.

(McMahan Decl. Ex. D at 31:17–32:11) Smith's admission that he inspected no additional West Palm engines since this case began was eye-opening, considering West Palm returned hundreds of engines during that period. It also begged the question of what happened to all those returned engines. On December 5, 2022, Defendants' counsel emailed HMA's counsel to put this engine

4

issue on the agenda for a meet-and-confer the next day. But at the meet and confer, HMA's counsel could not explain what happened to all the engines returned by West Palm after the Spoliation Order. Their only response: "Why didn't you ask for them sooner?" McMahan Decl. 9.

By email on December 8, 2022, Defendants' counsel asked to meet and confer again about the engines. HMA's counsel proposed 4 pm on December 9, 2022. Defendants' counsel accepted and scheduled the meeting. At 3:23 pm on December 9, 2022, HMA's counsel stated that they would not be able to meet and confer on the request from Monday, December 5, 2022, as "Counsel currently does not have a complete inventory of the engines we have preserved." HMA's counsel further stated that "we hope to have a fulsome response by the first of the week." Subsequent email revised that timeline, stating that counsel was "willing to meet and confer on Tuesday afternoon." Defendants' counsel showed up for the 4 pm conference call but HMA's counsel did not. McMahan Decl. at 11. Given that Defendants are seeking information regarding engines that HMA has had in its possession since 2021, after previously being admonished for not supervising collection and preservation, it seems unlikely that any efforts were taken to preserve these engines, or else HMA's counsel would already know about it. Defendants' counsel has been asking about these engines for five days and can no longer wait due to the imminent trial. This motion follows.

## **LEGAL STANDARD**

Defendants refer the Court to the legal standards found in the Spoliation Order at 11–16, (ECF No. 175).

"A default judgment sanction requires a willful or bad faith failure to obey a discovery order. . . . The severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *C&M Oil Co. v. CITGO Petroleum Corp.*, No. 04-22901-CIV-HIGHSMITH/SIMONTON, 2007 WL 9751801, at *3 (S.D. Fla. Feb. 28, 2007) (citing *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th

5

Cir. 1993) (imposing default judgment against party who "failed to comply with the Court's discovery orders, has obstructed the discovery process, and has allowed for the spoliation of evidence")). "Federal Rule of Civil Procedure 37(b)(2)(A) vests this Court with the authority to sanction a party that 'fails to obey an order to provide or permit discovery.' . . . Thus, the Court may, if appropriate, dismiss the action or prohibit Plaintiff from introducing a designated matter into evidence." *Martello v. Prod. Quest Mfg., LLC*, No. 6:12-cv-1304-Orl-22GJK, 2014 WL 2565194, at *1 (S.D. Fla. June 6, 2014) ("The Court has considered lesser sanctions, such as striking Plaintiff's expert report or treating certain facts as admitted, but the level of misconduct present here threatens not only Defendants' ability to litigate this case, but the integrity of the Court and its Orders.").

## ARGUMENT

**I.     HMA's spoliation of additional engines after lesser sanctions requires dismissal.**

As Yogi Berra would say, "it's déjà vu all over again." This Court already sanctioned HMA for failing to take "reasonable steps to ensure compliance" with its discovery and preservation obligations. Spoliation Order at 22, (ECF No. 175). This Court saw this as "Plaintiff throwing up its hands and not properly following its procedure." *Id*. HMA's hands are still up and now more engines are gone.

The foundational elements for spoliation sanctions are met once again. First, the returned engines existed at one time. Second, HMA knew—both from its counsel and from the Court—that it was under a duty to preserve all engines related to fraud claims. Third, the returned engines "constitute critical, . . . . essential and crucial physical evidence that did not get preserved despite Plaintiff's clear duty to preserve those engines on or after June 9, 2020." Spoliation Order at 18, (ECF No. 175).

Next, the issue of HMA's bad faith. This Court made ten findings that support bad faith:

6

1. The returned engines are material: "[T]he engines are undoubtedly critical physical evidence that could have had an important impact on resolving matters in dispute." *Id.* at 20–21.[1]

2. HMA took no steps to preserve the returned engines. *Id.* at 22.

3. HMA's counsel took no steps to preserve the returned engines. *Id.*

4. HMA had no compelling excuse for shifting the blame for the spoliation. *Id.* at 23.

5. "[The] available evidence shows that the eight preserved engines do not support Plaintiff's allegations that Defendants intentionally damaged the engines." *Id.*

6. HMA's Executive Director, Robert Grafton, revealed "that there was an 'agenda' and a 'race to judgment' by Plaintiff's parent company, HMC, against 'Napleton.' The Grafton email arguably evinces a goal of putting Napleton out of business, asserting that: 'We have 1 shot at Napleton and if not managed correctly Napleton survives with all his stores.'" *Id.* at 24.

7. HMA knew that it needed to preserve the engines and created a policy to that effect that was not followed. *Id.*

8. Defendants promptly and repeatedly asked for production of the engines and found out only at the close of discovery that they were lost. *Id.* at 25.

9. HMA "is an extremely large, sophisticated corporation represented by in-house and outside counsel when its duty to preserve engines arose." That counsel has a duty to supervise compliance with HMA's preservation efforts. *Id.* at 25–26.

10. HMA's response to Defendants' spoliation motion about control over the process was inaccurate. *Id.* at 27.

As a result:

> Plaintiff's conduct in this case is frankly shocking to this Court. It violates principles of fundamental fairness for a large sophisticated corporation like Plaintiff to file a lawsuit alleging that one of its dealers, Napleton #121, along with other Defendants, engaged in a fraudulent scheme to purposely damage and blow Theta II engines to obtain warranty monies from Plaintiff, and then fail to preserve any of the 144 of the engines which were returned by Defendants after its duty to preserve evidence arose. Those 144 engines were crucial evidence that were lost forever due to the conduct of Plaintiff.

*Id.* at 27.

---

[1] This Court recently re-confirmed that "the 144 engines constituted relevant and material evidence and that Defendants are prejudiced by their complete inability to examine the inside and outside of those engines." ECF No. 406 at 7.

If this Court was shocked before, it should be enraged now. Beyond all the same bad-faith factors from before, HMA was on extra notice of its duty to preserve returned engines because of the repeated emphasis by this Court on their critical nature to the defense of the case, and the fact that HMA was already sanctioned. After the Spoliation Order, HMA apparently continued to destroy returned engines for half a year, and now wants to expand the liability and damages period to encompass the same period when it continued spoliating engines.

HMA cannot be allowed to walk into the courthouse and present specious, circumstantial evidence of engine fraud from June 2020 to December 2021, after spoliating (or at best concealing) the most important physical evidence in the case. Continued spoliation of such evidence after lesser sanctions shows that HMA was not deterred. This demands the most severe sanction: dismissal. *See Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131 (S.D. Fla. June 4, 1987) ("Resort to 'the most severe in the spectrum of sanctions'—dismissal of an action or the entry of default judgment—is clearly appropriate where the offending party is found to have exhibited 'flagrant bad faith' and its counsel has acted with 'callous disregard' for the rules of discovery.") (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)); *Mallutea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542–43 (11th Cir. 1993) (affirming striking of pleadings for party's refusal to comply with court orders on discovery); *Hornady v. Outokumpu Stainless USA*, 572 F.Supp.3d 1162, 1185 (S.D. Ala. Nov. 18, 2021) ("A district court may impose case-ending sanctions for litigation misconduct under its inherent power."); *cf. Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944–45 (11th Cir. 2005) ("No lesser sanction will suffice in this case. . . . Plaintiff's failure to preserve the vehicle resulted in extreme prejudice to the defendant . . . .").

The Spoliation Order's lesser sanction gave HMA its one "get out of jail free card." Despite finding clear evidence of HMA's bad faith in allowing evidence to be destroyed, this Court imposed only an adverse jury instruction, which allowed HMA to rebut the adverse presumption.

8

This Court previously ruled that HMA's original round of misconduct was "analogous to *Flury*." Spoliation Order at 28. In *Flury*, the Eleventh Circuit concluded:

> Plaintiff's spoliation of critical evidence in this case deprived the opposing party of an opportunity to put on a complete defense. . . . [A]s a result, defendant was unable to examine the vehicle's condition. We cannot imagine a case in which the evidence destroyed would prove more critical. The resulting prejudice to defendant is incurable by ***any sanction other than dismissal***.

*Flury*, 427, F.3d at 947. The same is true here: "[t]he lost engines go to the very heart of this case of alleged engine warranty fraud." Spoliation Order at 29, (ECF No. 175). HMA's first spoliation could have earned a *Flury* dismissal sanction, but "Defendants [did] not seek the severe sanction of dismissal." *Id.* But Defendants should have. HMA continued spoliating, adding insult to injury.

To allow HMA to get away with more of the same misconduct again would be unjust. Even after the Spoliation Order, HMA continued to lose evidence, and with that evidence gone, now seeks to expand the scope of the case.

Defendants request enhanced spoliation sanctions: (1) dismissal of HMA's claims and (2) attorney's fees, expert fees, and costs for the second spoliation period after the Spoliation Order.

**II.     HMA had a continuing duty to offer the returned engines for inspection.**

As noted before, the sole excuse offered by HMA's counsel was "Why didn't you ask for them sooner?" McMahan Decl. ___. HMA is wrong about who has the burden here.

Back in 2021, "Defendants very promptly and repeatedly asked for production of the engines at issue and for their examination." Spoliation Order at 25, ECF No. 175. HMA provided one formal discovery response:

> 1. All Engines that were returned to Hyundai by Defendants concerning the Recall Campaign, including the Engines associated with the Warranty Claims.
>
> **RESPONSE: All engines in the possession of HMA, or its experts, have been made available for inspection.**

9

ECF No. 113-8 at 1. HMA never supplemented this response, despite supplementing other discovery responses on September 30, 2022 (the last day of discovery).

Federal Rule 26(e) creates an affirmative duty to supplement discovery responses. This is an on-going duty, which required HMA produce new evidence known to be responsive (like returned engines), even after the close of discovery. *See Bahr v. NCL (Bahamas) Ltd.*, No. 19-cv-22973-BLOOM/Louis, 2022 WL 293255, at *3 (S.D. Fla. Feb. 1, 2022) ("The duty to supplement continues after the close of discovery.") (collecting cases). HMA cannot continue to destroy evidence and then, after the evidence is lost, point the finger at Defendants for not asking—once again—for the engines that they asked for multiple times.

Nor was there any reason for Defendants to even think to ask until HMA tried to expand the scope of the alleged fraud and damages after the complaint. That did not occur until just recently. And what's the logic of HMA's excuse? If Defendants had asked one more time, HMA wouldn't have continued spoliating? Even if Defendants were clairvoyant and asked about the engines the day after receiving the Second Smith Report in July 2022, those 2021 engines were already gone.

### III. In the alternative, HMA's case must be significantly limited.

At the very least, if the Court declines to dismiss claims, there should be a new ***non-rebuttable*** adverse jury instruction concerning all returned engines after the June 9, 2020 preservation email, which began the spoliation period. HMA should also be precluded from offering any evidence about engine fraud or damages for the same period. HMA has apparently spoliated every single engine returned since the preservation email, since the complaint, and since the Spoliation Order. HMA's expert, Smith, has testified again and again that through physical inspections of West Palm's returned engines he could determine whether they were damaged intentionally or failed from the recall condition. Smith admitted he didn't inspect a single engine

10

in connection with his Second, Third, and Fourth Reports all issued in 2022. This cannot be accidental.

Smith originally inspected eight engines returned by West Palm. "[A]n inspection initially determined that six of them showed no signs of being intentionally 'blown' or damaged. And in subsequent discovery, it turns out that the remaining two engines broke down on the road while being driven by their owners and were shown to have not been intentionally damaged . . . ." Spoliation Order at 23, (ECF No. 175). "Thus, available evidence shows that the eight preserved engines do not support Plaintiff's allegations that Defendants intentionally damaged the engines." *Id*.

There is a strong inference that both Smith and HMA know full well that more complete inspections of the engines returned by West Palm would have been exculpatory—as the eight engines Smith inspected turned out to be exculpatory. This Court agreed: "[A]vailable evidence shows that the eight preserved engines do not support Plaintiff's allegations that Defendants intentionally damaged the engines. These facts may have provided some motivation for Plaintiff to not carefully and prudently follow Mr. Kim's preservation email policy and could explain why Plaintiff did not have anybody check to see that the engines were being preserved." *Id*. at 23–24.

This Court inferred that HMA's failure to preserve hundreds of returned engines and Smith's failure to inspect any more returned engines after the original eight failed to prove their case meant that HMA may not like what the returned engines would show. "The fact that the eight engines which Plaintiff preserved before its duty to preserve arose reflected no evidence of intentional damage by Defendants raises an inference that the 144 engines which Plaintiff failed to preserve after its duty to preserve arose were not preserved by Plaintiff to avoid having to face such negative evidence at trial." *Id*. at 24. Shockingly, those eight engines Smith inspected in June 2020 remain the only engines returned by West Palm that Smith has inspected in this case to date.

11

Now, discussing returned engines destroyed *after* the Spoliation Order, there is only one possible inference. HMA and counsel are intentionally concealing evidence from the Court and the jury. This is extreme bad faith. If dismissal sanctions are not issued, HMA must be prohibited from presenting evidence from the spoliation period onward and the jury must hear what HMA did. It would give HMA an unfair advantage to be permitted to destroy the best exculpatory evidence and then use statistics and pictures to attempt to establish liability and damages for that same spoliation period.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that this Court grant Defendants' motion for sanctions and dismiss all of Plaintiff's claims with prejudice; or, in the alternative, preventing Plaintiff from presenting any evidence about fraud or damages after June 2020 and with a new, non-rebuttable adverse jury instruction. Defendants also request attorney's fees, expert fees, and costs for the second spoliation period after the Spoliation Order.

## CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION

Under Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good-faith effort to resolve the issues but has been unable to resolve the issues.

Dated: December 9, 2022

Respectfully submitted,

**ARENT FOX, LLP**

By:   /s/Charles A. Gallaer
Russell P. McRory, Esq. (*pro hac vice*)
Michael P. McMahan, Esq. (*pro hac vice*)
Charles A. Gallaer, Esq. (Florida Bar # 117729)
Christopher Koenig, Esq. (*pro hac vice*)
Daisy Sexton, Esq. (*pro hac vice*)
Brian Farkas, Esq. (*pro hac vice*)
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
Tel: 212-484-3900
Fax: 212-484-3990

Taniel E. Anderson (*pro hac vice*)
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000

*Attorneys for Defendants*