UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-82102-Civ-MATTHEWMAN

HYUNDAI MOTOR AMERICA
CORPORATION,

        Plaintiff,

vs.

EFN WEST PALM MOTOR SALES, LLC,

        Defendants.

_____/

FILED BY_____SW_____D.C.

Dec 29, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' EXPEDITED SECOND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST PLAINTIFF [DE 443]

THIS CAUSE is before the Court upon Defendants, EFN West Palm Motor Sales, LLC d/b/a Napleton's West Palm Beach Hyundai ("West Palm" or "EFN" or "Napleton 121")[1], Edward W. Napleton, Gene Khaytin, Ernie Revuelta, Jorge Ruiz, and Geovanny Pelayo's (collectively, "Defendants") Expedited Second Motion for Sanctions for Spoliation of Evidence Against Plaintiff ("Motion") [DE 443]. Plaintiff, Hyundai Motor America Corporation ("Hyundai" or "HMA"), has filed a Response [DE 450], and Defendants have filed a Reply [DE 453]. The Court heard expedited oral argument on the Motion on December 20, 2022. The next day the parties submitted additional authority and declarations as required by the Court at the hearing. [DEs 462–464].

---

[1] Throughout this litigation, the parties have referred to Defendant EFN interchangeably as "West Palm," or "EFN," or "Napleton 121," and the Court does so in this Order.

1

## I.   Background

On July 22, 2021, the Court entered an Order Granting in Part and Denying in Part Defendants' Motion for Spoliation Sanctions ("Spoliation Order") [DE 175]. The Spoliation Order is incorporated herein, and the Court assumes the reader's familiarity with that Order. That prior Spoliation Order dealt with Hyundai's loss of 144 Theta II engines received from Defendant West Palm between the dates of June 9, 2020 (when Hyundai's preservation duty was acknowledged in an internal preservation email from Hyundai's in-house counsel, Mr. Kim) and November 17, 2020 (the date of the filing of Hyundai's initial Complaint in this case). Now, on the very eve of the January 3, 2023 specially set jury trial, this Court is forced to address Defendants' claims of further spoliation of critical evidence by Hyundai, that is, Hyundai's subsequent post-Complaint loss— and post-prior Spoliation Order loss—of a large number of additional Theta II engines received from Defendant West Palm.

## II.   Motion, Response, and Reply

Defendants first point out that Hyundai's expert, James Smith, has calculated damages through December 31, 2021, in his expert reports. [DE 443 at 2]. They next argue that "251 additional engines are apparently unavailable and likely destroyed" despite Hyundai's continuing duty to preserve them pursuant to Federal Rule of Civil Procedure 26(e). *Id.* Defendants later clarify that they returned "almost 400 engines" to Hyundai and "[a]bout 108 of these engines disappeared after the Spoliation Order." *Id.* at 3. They argue that all of the elements for spoliation sanctions are met here and that, "[b]eyond all the same bad-faith factors from before, Hyundai was on extra notice of its duty to preserve returned engines because of the repeated emphasis by this Court on their critical nature to the defense of the case, and the fact that Hyundai was already sanctioned." *Id.* at 6–8. Defendants request that the Court dismiss Hyundai's claims and award

them "attorney's fees, expert fees, and costs for the second spoliation period after the Spoliation Order." *Id.* at 9. They alternatively request that the Court find that there should be a "new non-rebuttable adverse jury instruction concerning all returned engines after the June 9, 2020 preservation email which began the spoliation period. Hyundai should also be precluded from offering any evidence about engine fraud or damages for the same period." *Id.* at 10. Lastly, Defendants contend that there is a "strong inference that both Smith and Hyundai know full well that more completed inspections of the engines returned by West Palm would have been exculpatory—as the eight engines Smith inspected turned out to be exculpatory." *Id.* at 11.

In response, Hyundai asks the Court to reject the Motion to the extent it is actually a motion for reconsideration. [DE 450 at 2]. However, it agrees to "withdraw its claim for damages in regard to engine claims submitted between July and December 2021, the only time period at issue that was not addressed, expressly or implicitly, by the Court's Spoliation Order." *Id.* Hyundai also agrees to "forego any reference at trial to the claims Defendants[ ] submitted in the approximately six months between the Court's Spoliation Order and December 2021 (and any damages claimed in relation thereto)." *Id.* at 4. Hyundai believes that "Defendants returned 108 engines and submitted 134 claims during these months"; therefore, Hyundai "is withdrawing all damage claims and reference to the 134 engine claims submitted during this period." *Id.* at 6. Hyundai further asserts that "the appropriate remedy would be to extend the same rebuttable presumption to these engines that currently applies only to engines returned between the date of Mr. Kim's email and the date of the Complaint. 83 additional engines were returned by Defendants during this period (167 engine replacement claims were submitted during this same period)." *Id.* at 9. Hyundai argues that no additional sanction is necessary or warranted for these engines "because the same facts apply to this period as to the period covered by the Court's Spoliation Order." *Id.* at 8.

Hyundai asserts that it has taken "significant and substantial steps to preserve engines since learning on June 15, 2021, that engines were not being preserved." [DE 450 at 2]. It is "still investigating the extent to which engines have been preserved since the date of the Court's Spoliation Order." *Id.* at 3. Thus, dismissal of its Complaint is not appropriate under the law or the facts. *Id.* at 10.

In reply, Defendants emphasize that Hyundai "has conceded that it continued to spoliate critical evidence after the Spoliation Order." [DE 453 at 1]. Defendants contend that no lesser sanction than dismissal will suffice. *Id.* They further contend that Hyundai's promise to investigate the additional missing engines on the eve of trial is completely insufficient. *Id.* at 2. According to Defendants, Hyundai's offer to limit damages to the period from November 2020 to June 2021 is "untenable" since Hyundai's expert, James Smith, would have to modify his expert report, and then Defendants would have to re-depose him and have their own expert serve an amended rebuttal report; there is no time left before trial to accomplish this. *Id.* at 3. Defendants assert that the "ongoing destruction of engines returned by West Palm is relevant not only to Hyundai's affirmative claims, but also to Defendants' defenses" and "without those engines, Defendants have been robbed of the ability to present exculpatory evidence to the jury." *Id.* at 8.

### III.   Applicable Law

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Gaff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). In a diversity action such as the instant case, federal law governs the evidentiary matter of spoliation sanctions. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944, 949 (11th Cir. 2005). Although federal law governs, "the Court may look to state law for guidance

to the extent that it is consistent with federal law." *Penick v. Harbor Freight Tools USA, Inc.*, 481 F. Supp. 3d 1286, 1291 (S.D. Fla. 2020) (Bloom, D.J.) (quoting *Wilson v. Wal-Mart Stores, Inc.*, 2008 WL 4642596, at *2 (M.D. Fla. Oct. 17, 2008)).

A district court has "broad discretion" to impose spoliation sanctions, which derives "from the court's inherent power to manage its own affairs" and "achieve the orderly and expeditious disposition of cases." *Flury*, 427 F.3d at 944. In this Circuit, spoliation sanctions may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.* at 945; *see also Oil Equip. Co. Inc. v. Mod. Welding Co. Inc.*, 661 F. App'x 646, 652 (11th Cir. 2016). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to [e]nsure the integrity of the discovery process." *Flury*, 427 F.3d at 944.

While dismissal of claims should be a "last resort," it is an appropriate sanction if "noncompliance with discovery orders is due to willful or bad faith disregard for those orders." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986); *see also United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1318 (11th Cir. 1997). "Dismissal of a case with prejudice is considered 'an extreme sanction that may be properly imposed <u>only</u> when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'" *Warner v. Tinder, Inc.*, 675 F. App'x 945, 946 (11th Cir. 2017) (quoting *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005)). "Findings satisfying both prongs of [this] standard are essential before dismissal with prejudice is appropriate." *Id.* (internal alterations omitted) (quoting *Betty K Agencies, Ltd.*, 432 F.3d at 1339).

IV.    Analysis

The Court has carefully reviewed the entire docket and record, including all papers, Declarations, and exhibits filed by the parties, and has heard lengthy argument from the parties' counsel at the expedited December 20, 2022 hearing on this matter, in an effort to determine to what extent Plaintiff Hyundai has continued to lose, destroy, and spoliate critical evidence, that is, Theta II engines received from Defendant West Palm. This additional loss, destruction and spoliation of Theta II engines received from West Palm is not seriously contested by Hyundai and has quite surprisingly occurred not only after Hyundai filed its initial Complaint in this case on November 17, 2020, but also after the Court entered its prior Spoliation Order [DE 175] on July 22, 2021. That prior Spoliation Order, entered approximately 17 months ago, sanctioned Hyundai by way of a rebuttable adverse jury instruction, as follows: "The jury is to be instructed to presume that the lost engines were relevant and favorable to Defendants and unfavorable to Plaintiff, but that Plaintiff can attempt to rebut this presumption through its presentation of evidence, including expert testimony." [DE 175 at 30].

In light of the evidence of additional, unabated spoliation of Theta II engines by Hyundai, the Court must determine whether further, more serious sanctions are now appropriate. But before considering the possibility of any additional appropriate sanctions, the Court will first address certain key factual issues underlying this dispute.

   A.  **Hyundai Admits that It Failed to Preserve All Theta II Engines Obtained from West Palm from November 17, 2020 (the Date that It Filed Its Complaint in this Case) through December 31, 2021 (the End Date of Its Damages Claim).**

Defendants' Expedited Motion for Spoliation Sanctions [DE 443], filed on December 9, 2022, claims that Hyundai spoliated "at least" an additional 251 Theta II engines which Hyundai

6

obtained from West Palm after the filing of Hyundai's initial Complaint in this case on November 17, 2020, through the end date of its damages claim—December 31, 2021. *Id.* at 1. Defendants claim that, of those 251 spoliated post-Complaint Theta II engines, "about 108" were spoliated <u>after</u> this Court's first Spoliation Order was entered on July 22, 2021. *Id.* at 6. Hyundai admits in its Response to the Motion that "many," or "a large extent of," post-Complaint Theta II engines it obtained from West Palm "have not been preserved." [DE 450 at 2, 10]. In that Response filed by Hyundai on December 15, 2022—just 19 days before the start of the specially set January 3, 2023 jury trial—Hyundai stated that it was "still investigating the extent to which engines have been preserved since the date of the Court's Spoliation Order," *Id.* at 3, and that "it is unable at this time to provide a clear answer to the Court about exactly how many engines are available, where those engines that *might* be available currently are, and whether the condition of any engines that *might* still be available has been modified." *Id.* at 7 (emphasis added).

In other words, more than two years after the filing of its RICO and fraud lawsuit against Defendants on November 17, 2020, which lawsuit is based on an alleged scheme by Defendants to intentionally "blow" and damage Theta II engines in order to fraudulently receive warranty payments from Hyundai, and just days before the start of the jury trial, Hyundai still has not developed a proper and robust preservation plan for the Theta II engines at issue, and is largely in the dark as to the extent of its loss, destruction, and spoliation of those engines. The Court will address this further later in this Order when it addresses any further sanctions that may be appropriate against Hyundai in light of this extraordinary situation.

Although the parties' recent filings related to Defendants' Motion seem to differ on the precise number of post-Complaint Theta II engines received by Hyundai from West Palm, it is clearly a very large number. While Defendants claim the number of post-Complaint lost,

destroyed, and spoliated Theta II engines to be "at least 251" [DE 443 at 4], the Declaration of Joel Smith filed by Hyundai states that it received 191 Theta II Engines from West Palm during the period of the filing of its initial Complaint in this case through December 31, 2021. [DE 463–1 at ¶ 12]. At this point, in light of Hyundai's demonstrated continuing inability to preserve and document the Theta II engines received from West Palm, the Court has serious doubts as to the accuracy of any of its Theta II engine numbers presented.[2] Therefore, at this point, Hyundai's claims as to the number of lost, destroyed, and spoliated engines are entitled to little credibility. Nevertheless, whether the precise number of post-Complaint Theta II engines Hyundai received from West Palm is 251, 191, or some other number, the loss, destruction, and spoliation of such a large number of Theta II engines by Hyundai—when it had a clear and obvious duty to preserve such critical evidence in this lawsuit—is deeply troubling to the Court. This is simply not how litigation in federal court is supposed to proceed, and the Court is truly astounded that it is having to deal with this issue on an expedited basis over the holidays prior to the start of the January 3, 2023 jury trial.

Moreover, it is crystal clear that Hyundai has lost, destroyed and spoliated **_all_** of the post-Complaint Theta II engines it received from West Palm, and a look at the parties' recently filed Pretrial Stipulation confirms this fact. The parties' Pretrial Stipulation filed on November 23, 2022 [DE 417 at 19] contains certain uncontested facts relevant to this spoliation issue, as follows:

---

[2] The Court also rejects Hyundai's argument that, since West Palm allegedly did not return all of the engines to Hyundai, West Palm could have inspected those engines itself. This argument is a red herring. First, there is insufficient factual support in the record that West Palm has retained any engines for which it submitted warranty claims to Hyundai which are at issue in this lawsuit. Second, Hyundai could not claim damages as to engines that were not returned and for which no claims were submitted, so these engines did not constitute relevant evidence. Third, Hyundai never once requested production of Defendants' allegedly retained engines. Fourth, as stated above, the Court gives little credibility to any engine numbers now advanced by Hyundai. Fifth, Defendants are the victim of Hyundai's spoliation here. The Court will not blame the victim as the trial court did in *Flury*, which then led to reversal by the Eleventh Circuit.

**44. Of the 917 failed engines returned by West Palm to HMA, eight were preserved and available for inspection and testing by Defendants. ECF No. 113-9 at 26; see also ECF No. 113-10 at 123:8-25.29.**

**45. HMA did not preserve the two engines mentioned in its Complaint at ¶¶57-58.**

**46. Besides the eight engines identified in Smith's report, HMA has not preserved any other engines returned by West Palm.**

Thus, it is undisputed that Hyundai failed to preserve the Theta II engines at issue in this lawsuit.[3]

Moreover, the eight Theta II engines referenced above were obtained by Hyundai before June 9, 2020, and before its duty to preserve arose. Further, as noted in the Court's prior Spoliation Order, "available evidence shows that the eight preserved engines do not support Plaintiff's allegations that Defendants intentionally damaged the engines." [DE 175 at 23].

## B. The Dispute Over 23 (or 22) Theta II Engines—or Parts of Theta II Engines— that Hyundai Asserted at the December 20, 2022 Hearing It Belatedly Located.

At the December 20, 2022 hearing, Hyundai effectively admitted, as it had in its written Response to Defendants' Motion, that it had lost, destroyed, and spoliated the Theta II engines it received from West Palm after its duty to preserve arose. Hyundai's counsel stated at the December 20, 2022 hearing that there was "no doubt" that a "better job" could have been done by Hyundai. [DE 465, 12/20/22 Hearing Transcript ("Tr.")  at 28: 11–17]. Hyundai's counsel also stated: "Again, I'm not suggesting that it was ok to lose track of so many engines. Candidly, we still don't know exactly what engines are where." *Id.* at 43: 5 –7.

However, Hyundai claimed at that hearing that, in or about May 2022, it had located 23 Theta II engines received from West Palm. Hyundai was not clear as to the specifics of these 23

---

[3] As has been documented throughout this case, when West Palm had Theta II engines to return under the Hyundai warranty program, an entity called YRC would pick up the engines from West Palm. As acknowledged by Hyundai's counsel at the December 20, 2022 hearing, YRC was an agent of HMC, the parent company of Hyundai.  [Tr. at 33: 3–5]. Therefore, when the Theta II engines left West Palm, they were clearly in the possession, custody and control of Hyundai and HMC, who thereafter lost, destroyed and spoliated them.

recently located Theta II engines, and the Court was initially under the impression that these 23 Theta II engines were received by Hyundai from West Palm post-Complaint. Hyundai claimed that Defendants never sought to inspect those engines. Defendants responded at that hearing that what Hyundai actually recovered in or about May 2022 were useless Theta II engine parts in disorganized boxes with no chain of custody and of no evidentiary value. After hearing counsel address this dispute over the 23 engines, or parts of 23 engines, the Court ordered the parties to file affidavits or declarations addressing the facts underlying these 23 Theta II engines—or parts— by the close of business on the next day, December 21, 2022. Simply stated, the Court wanted more and clearer factual information regarding how these 23 engines were located and further factual specifics.

The parties complied and filed their respective Declarations, which are discussed below.

### 1. The Bader Declaration Filed by Defendants

Defendants filed the Declaration of Nicholas A. Bader, Esq., [DE 462–1], which states that he is counsel for Defendant West Palm in the related "Termination Case" filed by West Palm against Hyundai currently pending in this district under case number 21-cv-80348-Cannon/Matthewman. *Id.* at ¶ 1. In that related Termination Case, on February 4, 2022, West Palm served a request for inspection of all Theta II engines returned by West Palm to Hyundai. *Id.* at ¶ 2. On May 12, 2022, Hyundai's counsel advised Mr. Bader for the first time that Hyundai may have located 23 Theta II engines returned by West Palm. *Id.* at ¶ 4. On May 19, 2022, Hyundai's counsel informed Mr. Bader that the 23 engines were already disassembled and separated, and it was clear to Mr. Bader that they were not useful evidence. *Id.* at ¶ 5. Hyundai's counsel represented to Mr. Bader that the 23 Theta II engines had all been disassembled by a team of Hyundai Motor Company ("HMC") engineers. *Id.* at ¶ 6. Hyundai's counsel was unable to explain any discernable

chain of custody and did not identify or disclose individuals who were involved in the gathering, storage, transport, disassembly, or general handling of the 23 engines or their credentials for doing same. *Id.* at ¶ 7. Hyundai's counsel told Mr. Bader that the disassembled components were separated, with smaller pieces and components stored in cardboard boxes marked with the VIN's, while engine blocks and larger components were stored in separate containers. *Id.* at ¶ 8. Mr. Bader was informed that, for several engines, the containers with the larger components and blocks were missing entirely *Id.* at ¶ 9.

According to Mr. Bader, Hyundai's counsel stated that they were arranging for the 23 engines to be sent to Exponent so Hyundai's expert James Smith could examine them, but Mr. Bader asked them to pause sending those engines until the parties could further discuss how to address this extremely late disclosure. *Id.* at ¶ 10.[4] On the evening of May 19, 2022, Hyundai provided a list of the 23 engines. [DE 462–1 at ¶ 12]. A review showed that two of the 23 engines were replaced by Napleton's Missouri dealership and not by West Palm. *Id.* at ¶ 13. Another VIN was a customer's car that Hyundai repurchased, but West Palm never replaced that engine. *Id.* Further, the records revealed that almost all of the engines were replaced between May and July 2020, which means they were probably returned to or in Hyundai's possession after the June 9, 2020 preservation letter. *Id.* Further, given the reported condition of the 23 engines, Hyundai's tardy discovery, and the deadline for West Palm's expert's report (May 20, 2022), the 23 engines had no evidentiary value, and the parts from the 23 engines represented some surviving artifacts from the already adjudicated spoliation. *Id.* at ¶ 14.

According to Mr. Bader, as a result of the above, on June 22, 2022, the parties in the Termination Case entered into a stipulation agreeing to the same adverse jury instruction entered

---

[4] Mr. Bader has also attached his contemporaneous notes of the May 19, 2022 call as Exhibit A to his Declaration. *Id.* at 11; DE 462–1, Ex. A.

in this case, which stated that only parts from additional engines were located; the Court adopted the Stipulation on June 28, 2022. *Id.* at ¶¶ 15–17. Finally, engineers from HMC previously disassembled the 23 engines and presumably inspected those engines without notifying West Palm. *Id.* at ¶ 18. The 23 engines were never produced in useable form in either case and were not identified until the evening before West Palm's expert report was due in the Termination Case. *Id.*

## 2. The Smith Declaration Filed by Hyundai

Hyundai filed the Declaration of Joel Smith [DE 463–1], who is one of the attorneys representing Hyundai. [5] First, Mr. Smith's Declaration states that the assertion made by Hyundai's counsel at the December 20, 2022 hearing that 23 Theta II engines had been recovered was incorrect; rather, only 22 were recovered. *Id.* at 3 n.1. Mr. Smith explains that, after learning on June 15, 2021, that 144 engines had been lost or disposed of, Hyundai and its counsel began to investigate whether it was possible that any of these 144 engines could be located. *Id.* at ¶ 3. Through this investigation, Hyundai's counsel learned that there were 170 engines in containers

---

[5] The Court notes that it directed that the Declarations to be filed by the parties by the close of business on December 21, 2022, **only** address the **facts** underlying the dispute regarding the 23 Theta II engines---or parts thereof—raised at the December 20, 2022 hearing. *See* Tr. at 53: 22. The Court specifically stated that the Declarations were to contain "no legal argument." *Id.* Defendants' Declaration of Nicholas A. Bader [DE 462-1] complied with that directive. However, Hyundai's Declaration of Joel Smith inexplicably and improperly starts out with two paragraphs of unsolicited legal argument including a case citation regarding sanctions [DE 463-1 at ¶¶ 1–2], then addresses at length the deposition testimony and expert reports of Defendants' expert Mr. Lange and unsolicited legal argument related thereto, *Id.* at ¶¶ 14-18, then goes on to argue the alleged "exaggerations" of Defendants, *Id.* at ¶ 19, and then attaches quite lengthy deposition expert reports and deposition excerpts of Mr. Lange. [DE 463–1, Exs. D, E, F, G]. The Court does not appreciate or countenance this sharp litigation practice, in which Hyundai converted what was supposed to be a factual Declaration into an unauthorized sur-reply filled with legal argument. The Court gave the parties the opportunity to separately cite additional case law without argument ***in addition to*** the directed factual Declarations, and Hyundai separately filed its case law citations. [DE 464]. The Court did not authorize Hyundai to turn a simple factual Declaration about the disputed 23 engines or parts thereof into an improper sur-reply. The final paragraph of the Declaration exemplifies this, when it asserts: "The statements in this Declaration are meant only to show that Defendants have overstated the prejudice to them, as shown by their own actions and the statement of their expert. Hyundai does not mean to suggest that the engines at issue in Defendants' Motion should not have been preserved." [DE 463–1 at ¶ 20]. The Court reiterates that the purpose of the Declaration was not meant for Hyundai to argue that Defendants have overstated the prejudice to them; rather, it was to address the facts underlying the dispute over the 23 engines or parts thereof. While the Court could strike the Declaration due to Hyundai's violations, the Court will instead simply separate the wheat from the chaff in Hyundai's Smith Declaration so that it can expeditiously resolve this matter.

located at a facility in Chino, CA, called the North American Quality Center ("NAQC"), operated by a company called Hyundai Kia Technical Center, Inc. ("HATCI"). *Id.* at ¶ 4. At counsel's direction, a HATCI employee opened each container to determine whether any contained engines that had been returned by West Palm, and, after the December 20, 2022 hearing, at counsel's direction, HATCI personnel confirmed these 22 engines are being preserved and are still at the NAQC facility where they were located. *Id.* at ¶ 5.

Addressing the May 19, 2022 telephonic meet and confer with West Palm's counsel in the related Termination Case, Mr. Smith states that Hyundai's counsel, Kevin Malloy and Todd Norman, notified counsel for West Palm in the sister Termination Case that these engines had been located and were available for inspection. *Id.* at ¶ 6. Hyundai's counsel explained that these engines were disassembled, that the engines' internal components (such as rod bearings and main bearings) were packaged in plastic containers, and that a list, by VIN, that identified whether both a cardboard box and a plastic container, or only one or the other, had been located for each VIN would be provided. *Id.* On May 19, 2022, Hyundai's counsel emailed the aforementioned list to West Palm's counsel. *Id.* at ¶ 7. The list explained that the internal and external components had been located for 16 engines, that the internal components had been located for five additional engines, and that the external components for one additional engine had been located. *Id.* [6]

Mr. Smith states that West Palm did not request to inspect these engines at that time or subsequently and that West Palm and Hyundai agreed to a proposed stipulation that was entered by the Court in the Termination Case concerning spoliation that specifically referenced these engines and noted that "[n]either party may present testimony or evidence concerning the

---

[6] That email and the list it forwarded was attached as Exhibit A to Mr. Smith's Declaration. *Id.*; DE 453–1, Ex. A.

Subsequently Located Engines at trial." [DE 453–1 at ¶ 8].[7] Mr. Smith states that, during the negotiations that preceded this stipulation, West Palm's counsel requested the provision prohibiting reference to the subsequently located engines. *Id.* at ¶ 10. Other Defendants have never requested to inspect these engines. *Id.* at ¶ 11.

3.   The Court's Analysis of the Competing Declarations

Based on the above, it is now clear to the Court that these recently discovered Theta II engines have no bearing whatsoever on whether Hyundai lost, destroyed, or spoliated Theta II engines after the filing of its initial Complaint in this case on November 17, 2020. First, Hyundai's submitted Declaration reduces the 23 engines to 22 engines. Second, Defendants' submitted Declaration establishes that two of the 22 Theta II engines were from a Missouri dealership and wholly unrelated to this lawsuit, while another was never replaced by West Palm, reducing the number to 19 Theta II engines. Third, the 19 Theta II engines were all returned by West Palm to Hyundai before the June 9, 2020 internal Hyundai preservation email and before the filing of Hyundai's initial lawsuit in this case on November 17, 2020. Fourth, the Stipulation entered in the related Termination Case specifically referred to "parts from" the engines [21-cv-80348-Cannon/Matthewman, DE 183 at 2], reflecting that the engines were disassembled in large part and were in different boxes and containers.

Thus, while the belatedly located Theta II engines may have some relevance as to the Court's consideration and determination of appropriate sanctions, as will be discussed later, they have absolutely no bearing whatsoever on whether Hyundai lost, destroyed, and spoliated Theta II engines after it filed its initial Complaint in this case and after the Court entered its prior Spoliation

---

[7] Attached to Mr. Smith's Declaration as Exhibit B is a copy of the stipulation entered in the related Termination Case. *Id.* at ¶ 9; DE 453–1, Ex. B.

Order. The facts clearly establish that Hyundai has lost, destroyed, and spoliated all Theta II engines received from West Palm between November 17, 2020, and December 31, 2021.

<strong>V.      Findings</strong>

**A.  Hyundai's Duty to Preserve the Theta II Engines.**

The Court first finds, as it did in its prior Spoliation Order [DE 175], that Plaintiff Hyundai had a clear duty to preserve all Theta II engines received from West Palm from June 9, 2020 (the date of Hyundai's internal preservation email by Mr. Kim) through and including December 31, 2021 (the end date of its damages claim in this lawsuit).

**B.  Hyundai's Loss, Destruction and Spoliation of All Theta II Engines Received from West Palm after the Filing of Its Initial Complaint.**

The Court next finds that Plaintiff Hyundai failed to preserve all Theta II engines received from West Palm from the filing of its initial Complaint on November 17, 2020, through December 31, 2021. The precise number of Theta II engines received by Hyundai during this period is not completely clear, but it is at least 191 engines and as many as 251 engines or more. It is unnecessary for the Court to determine the precise number of engines because it is clear that it is a very large number, and it is also clear the Hyundai lost, destroyed, and spoliated all of the engines it received from West Palm from November 17, 2020 through December 31, 2021. Moreover, when this is considered in conjunction with the Court's prior Spoliation Order, it is crystal clear that Hyundai lost, destroyed, and spoliated every single one of the hundreds of Theta II engines it received from West Palm after Hyundai's preservation duty arose on June 9, 2020, through December 31, 2021.

15

## C. **The Three Foundational Elements for Spoliation Are Once Again Indisputably Met.**

The Court's prior Spoliation Order entered approximately 17 months ago addressed the three foundational elements of Spoliation noted by the Honorable Beth Bloom in *Penick v. Harbor Freight Tools USA, Inc.*, 481 F. Supp. 3d 1286, 1291–92 (S.D. Fla. 2020) (Bloom, D.J.), and found that all three had been met regarding Hyundai's prior spoliation of 144 Theta II engines received from West Palm between June 9, 2020, and November 17, 2020. [DE 175 at 17–18]. Now, the Court once again finds that all three foundational elements for spoliation have been met, this time in regard to all of the Theta II engines received by Hyundai from West Palm from November 17, 2020, through December 31, 2021.

The first two foundational elements require little discussion. As to the first element, it is met because the Theta II engines at issue in this Order clearly existed at one time and none—not one—were preserved. As to the second element, it is quite clear that Hyundai had a duty to preserve the Theta II engines at issue and wholly failed to do so, as found previously above in this Order and in the Court's prior Spoliation Order.[8]

As to the third foundational element, the Court once again finds, as it did in its prior Spoliation Order [DE 175 at 18], that the Theta II engines at issue in this Order constitute critical evidence. Of this, there can be no doubt. The pending Second Amended Complaint [DE 144] filed by Hyundai against Defendants alleges a warranty fraud scheme in which Defendants intentionally damaged or "blew" Theta II engines as part of a warranty fraud scheme to obtain warranty

---

[8] Hyundai makes the frivolous argument in its Response that the Court's prior Spoliation Order "did not include an instruction or order concerning engines that would be returned by Defendants after the date of the Order." [DE 450 at 11]. However, the obligation and duty to preserve evidence is on Hyundai, not the Court. Likewise, Hyundai knew that it was seeking damages through the end of December 31, 2021, and therefore it knew it had the duty to preserve the Theta II engines during that time frame. Never in its wildest imagination would this Court think that after it sanctioned Hyundai for spoliating evidence—as it did in its prior Spoliation Order—that it would then have to tell Hyundai to stop spoliating evidence. Hyundai had an independent duty to preserve, and to stop spoliating the Theta II engines, and it violated that duty.

payments from Hyundai. *See* DE 144, Second Amended Complaint at ¶¶ 56, 71, 72, 96. According to the Second Amended Complaint and Pretrial Stipulation, Hyundai paid $7,000 to West Palm for each Theta II engine replaced by West Palm under the warranty program. *Id.* at ¶ 96; DE 417 at 5. Thus, there is no doubt that the Theta II engines are at the very heart of this lawsuit. They are indeed the crux of this lawsuit.

Defendants had the right to have their own experts examine the numerous Theta II engines that Hyundai claims were intentionally blown or damaged. Such internal and external examination of the engines, their fluids, oil, debris, and components could have clearly assisted in Defendants' defense of this case. Although Hyundai has continually made the argument that Defendants' own engineering expert, Jeffrey Lange, P.E., stated he could not determine by an examination of an engine whether it was intentionally blown and damaged as Hyundai claims or whether it failed due to the recall condition, and although Hyundai continues to make that argument in its Response, DE 450 at 7, 10, n. 8, Hyundai's argument in this regard has been continually inaccurate.

A review of Mr. Lange's Declaration filed in this case states that "it may be possible to determine, with a proper inspection that goes beyond how and what Mr. Smith [Hyundai's expert] reviewed, whether an engine has characteristics that are consistent or inconsistent with intentional engine destruction as described by Mr. Eddleman." [DE 383–2 at ¶ 11]. Mr. Lange also clearly stated:

> Specifically, Mr. Smith's testing and inspections were inadequate to distinguish intentionally destroyed engines from recall failure engines. However, my extensive evaluation revealed physical evidence that maybe used to make such distinctions. If the missing oil, debris, and other samples had been provided, additional testing could be performed by additional experts such as a tribologist, rheologist, spectroscopist, and/or metallurgist to evaluate how an engine failed.

*Id.* at ¶ 12(b). He went on to state: "I believe that the unavailability of engines is material and highly relevant to the evaluation and testing that I could have performed." *Id.* at ¶ 12(c). Finally,

he stated that: "In my opinion, a proper inspection and analysis of the engines replaced by the Napletons would be the best way to scientifically determine how an engine failed and whether or not those engines were intentionally destroyed in a manner described by Mark Eddleman." *Id.* at ¶ 14. Moreover, at the December 20, 2022 hearing, Hyundai's counsel acknowledged that even Hyundai's own expert, Mr. Smith, stated that examination of an engine could determine if it failed due to oil starvation as opposed to a recall condition. [Tr. at 36: 3–10].

Hyundai points out that it has certain evidence such as statistics showing, for example, an elevated rate of engine return from Napleton 121, as well as dealership paperwork and potential witnesses, all of which allegedly supports its claims of Theta II engine warranty fraud by Defendants. But statistics can be misleading, paperwork can be disputed or ambiguous, and witnesses can lie or recall facts inaccurately. However, scientific evidence is often key in a lawsuit, such as that which could potentially be obtained if the Theta II engines at issue in this lawsuit had been preserved as required, timely produced, and scientifically and mechanically examined pre-trial.

While it is clear that Hyundai's spoliation of all the Theta II engines at issue prevented Defendants from properly and fully examining the most critical evidence in this case, and while this fact is clearly relevant to the issue of the severe prejudice claimed by Defendants as will be discussed later in this Order, it is also relevant to the Court's finding of the critical nature of the lost and spoliated Theta II engines. Those hundreds of Theta II engines received by Hyundai from West Palm from June 9, 2020, through December 31, 2021, were clearly and unequivocally critical evidence in this lawsuit and should have been preserved by Hyundai.

### D. **Bad Faith.**

The Court's prior Spoliation Order found that Hyundai had engaged in bad faith spoliation of 144 Theta II engines which constituted critical evidence which Hyundai had a duty to preserve. [DE 175 at 19–28]. The Court recited ten factors supporting a finding of bad faith on the part of Hyundai in the spoliation context. The prior Spoliation Order and its finding of bad faith dealt with the 144 Theta II engines received by Hyundai from West Palm between the June 9, 2020 internal Hyundai preservation email and the November 17, 2020 initial filing of its Complaint in this case. The Court incorporates those bad faith findings in this Order and adds the following additional and supplemental bad faith findings.

After Hyundai was explicitly put on notice of its loss, destruction, and spoliation of 144 critical Theta II engines, and even after the Court found that Hyundai had, in fact, improperly spoliated the 144 engines and imposed sanctions upon Hyundai, Hyundai continued to lose, destroy, and spoliate all Theta II engines returned by West Palm after the date of the filing of its November 17, 2020 Complaint through December 31, 2021. It did not save and preserve even one Theta II engine during this time frame. Although Hyundai devotes several pages of its Response to explaining how complex and difficult it is for Hyundai to preserve the Theta II engines at issue, DE 450 at 13–17, that excuse is completely unavailing. It was Hyundai and/or its parent company, HMC, who created the logistical procedure which caused the Theta II engines returned by West Palm to travel a circuitous route to ultimately be lost, missing, or destroyed. The circuitous logistical route involving Hyundai, HMC, Mobis America, Mobis, YRC Freight, and Translead in Mexico, was all Hyundai and/or its parent company HMC's doing. They created this complicated process, and they now want to justify or excuse their spoliation because it was allegedly too hard to preserve the engines. However, there is simply no exception to a party's duty to preserve

19

evidence because the party itself established complex procedures which allegedly made it impossible for that party to preserve evidence. Every litigant has a strict duty to preserve evidence in a lawsuit, and Hyundai is no exception. The Court refuses to recognize an exception to Hyundai's preservation duties because it was assertedly too difficult to preserve the Theta II engines.

Hyundai and its parent company HMC[9] have an extensive in-house legal department, and Hyundai is represented in this lawsuit by three teams of well-qualified attorneys from different, well-respected law firms. It is inexplicable to the Court how Hyundai and its parent HMC could have shirked their duty to preserve the Theta II engines received from West Palm before the lawsuit was filed from the period of June 9, 2020 forward, after the lawsuit was filed, and during the litigation of this lawsuit. There is simply no excuse or justification for this spoliation of critical evidence. And, although it appears that counsel has made efforts to get Hyundai and its parent company HMC to preserve the Theta II engines at issue in this lawsuit, Hyundai and its parent HMC have simply been unable and unwilling to take the necessary steps to preserve the engines. As the Court stated at the December 20, 2022 hearing, it is hard to understand why from the time its preservation duty arose on June 9, 2020, and especially from the time it was explicitly put on notice of the spoliation of 144 engines and received spoliation sanctions from this Court, that Hyundai did not simply take the necessary steps to preserve the remaining engines by, for example, renting a warehouse in the area and instructing its agents and employees to deliver any Theta II engines received from West Palm to the warehouse and to keep them there until this lawsuit was concluded. In this regard, at the December 20, 2022 hearing, Hyundai's counsel responded, "Well, Your Honor, in hindsight, that would have been the better approach, and I don't want to suggest

---

[9] HMC was previously a Third-Party Defendant in this case while the spoliation was ongoing, but HMC was dropped from the case on November 30, 2022 [DE 424].

to you that that couldn't have been done." [Tr. at 33: 3–5]. Unfortunately, such a simple step was never taken, and the Court finds this to be further evidence of Hyundai's bad faith.

While the Court does accept the representation that Hyundai's counsel have, to some degree, attempted after-the-fact to locate and obtain the spoliated engines, and while the Court does not find that Hyundai's counsel intentionally attempted to lose, destroy, or spoliate the engines, this does not mean that Hyundai did not act in bad faith as that term is used in the spoliation context. *See Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1351 (S.D. Fla. 2016) (Marra, D.J.) ("[B]ad faith in this context does not require malice" and "is defined by weighing the degree of the spoliator's culpability against the prejudice to the opposing party" (quoting *Flury*, 427 F.3d at 946)). The continued loss, destruction, and spoliation of Theta II engines in this case by Hyundai after the filing of its Complaint, and after Hyundai was explicitly notified of the ongoing spoliation, and after this Court sanctioned Hyundai for the loss, destruction, and spoliation of Theta II engines 17 months ago, as well as the unabated, continued loss, destruction, and spoliation of Theta II engines does, in fact, constitute bad faith. It is clear in this case that the degree of Hyundai's culpability is high and the prejudice to Defendants is severe.

Finally, the Court does find troubling Hyundai's discovery conduct in relation to this issue. On January 29, 2021, two months after Hyundai filed this lawsuit, Defendants made a request for production which stated: "Make available for inspection all engines that you purport Defendants damaged as part of any fraudulent scheme against Hyundai." [DE 162–4, RFP # 61]. Then, about a month and a half later, on March 11, 2021, Defendants requested "[a]ll Engines that were returned to Hyundai by Defendants concerning the Recall Campaign, including the Engines associated with the Warranty claims." [DE 157–17]. The parties stipulated that these requests were made. [DE 168 at 7; DE 417 at 21]. The parties also stipulated that, on the very last day of

discovery, Hyundai stated that all engines in the possession of Hyundai were available for inspection. [DE 417 at 21; DE 113–8 at 1]. This discovery response was served on May 17, 2021, and Hyundai never supplemented that discovery response as required under Federal Rule of Civil procedure 26(e). Hyundai never once supplemented its discovery response to say the Theta II engines were lost, destroyed, and spoliated, that they were not in their possession, that they were not available for inspection, or provided any further clarity. It is interesting and quite concerning that, while Hyundai did supplement other discovery responses after the close of discovery as required under Rule 26(e), it never supplemented its discovery response as to the Theta II engines referenced above. *See Bahr v. NCL (Bahamas) Ltd.*, No. 19-CV-22973-Bloom/Louis, 2022 WL 293255, at *3 (S.D. Fla. Feb. 1, 2022) ("The duty to supplement continues after the close of discovery."). Defendants suggest that Hyundai was trying to keep their continued spoliation from being uncovered. Whatever the reason for Hyundai's failure to supplement this critical discovery response as required by Rule 26(e), it is further evidence of bad faith by Hyundai.

In sum, the Court finds that Hyundai has acted in bad faith as that term is used in the spoliation context. In the interest of brevity, the Court will not address the bad faith law in this Order as it previously did so in great detail in its first Spoliation Order [DE 175 at 11–28], which is incorporated herein.

## VI.   <u>Appropriate Sanctions</u>

The Court easily finds that Hyundai's level of culpability is high and that Defendants have been severely prejudiced, and continue to be severely prejudiced, by Hyundai's loss, destruction, and spoliation of all Theta II engines between June 9, 2020, and December 31, 2021. The more difficult and crucial issues before this Court are whether the severe prejudice to Defendants can be cured, and if so, what additional sanctions are appropriate to cure the prejudice.

The Court emphasizes that Hyundai's spoliation has gone beyond what the Court could have ever anticipated or envisioned. Hyundai is a repeat spoliator. Hyundai failed to fully heed the Court's prior Spoliation Order and continued to spoliate Theta II engines—critical evidence—that Hyundai had a clear, obvious, and long-standing duty to preserve. In fact, the Court finds that the spoliation in this case is much more egregious now as the Court is more fully informed of the record at this point, having ruled on summary judgment, *Daubert* motions, motions in limine, and an abundance of other issues in this case. The additional facts of which the Court is now aware, and the status of Hyundai as a repeat spoliator, establishes with clarity that the Court's prior sanction of a rebuttable presumption jury instruction is insufficient. Such sanction previously imposed is not sufficiently meaningful as discussed by the Eleventh Circuit in *Flury*, *supra*.

There has been continuing spoliation by Hyundai since it was explicitly notified of the prior spoliation of 144 Theta II engines and since entry of the Court's Spoliation Order. Since new facts and evidence regarding this spoliation have been uncovered, the Court also has a basis to reconsider the Spoliation Order. *See Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1352 (S.D. Fla. 2010) (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)). In light of the new facts presented, and the evidence of repeat, continued spoliation, the Court has reconsidered the sanction imposed in its prior Spoliation Order and finds that sanction to be insufficient to fully cure the severe prejudice suffered by Defendants as a result of Hyundai's unabated spoliation. The Court now fully understands the great extent of Hyundai's spoliation as well as the severe prejudice to Defendants dating back to June 9, 2020. This new understanding mandates new sanctions. Moreover, Hyundai's spoliation misconduct has not only severely and unfairly prejudiced Defendants, but it has also negatively affected the

integrity of the discovery and judicial process in this case. Thus, the Court must consider the appropriate sanctions in this context.

The Court has broad discretion to fashion an appropriate remedy for spoliation and determining an appropriate sanction "is assessed on a case-by-case basis." *In Matter of Complaint of Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 523 (S.D. Fla. 2015) (citations omitted). Sanctions the Court may impose include, but are not limited to, default judgment, adverse inference or adverse instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation. *Id.* "Factors to be considered when determining the seriousness of the sanctions to impose vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *Id.*

Here, the sanction of a rebuttable presumption adverse jury instruction is no longer sufficient to cure the prejudice to Defendants in light of the past and the ongoing spoliation of every single one of the hundreds of Theta II engines received by Hyundai from West Palm from June 9, 2020, through December 31, 2021. Furthermore, Hyundai's offer to withdraw its claim for damages in regard to engine claims submitted between July 2021 and December 2021, and to forego any reference at trial to the claims Defendants submitted in the approximately six months between the Court's Spoliation Order and December 2021, is also insufficient to cure the severe prejudice suffered by Defendants. While this concession from Hyundai shows that it acknowledges its improper spoliation of Theta II engines in this case, it does not go far enough. Once again, this is because, *inter alia*, there has been ongoing and repeat spoliation in this case since June 9, 2020.

However, the Court also finds that dismissal of Hyundai's claims with prejudice appears to be too severe a sanction here when lesser spoliation sanctions will suffice. *See Warner v. Tinder,*

*Inc.*, 675 F. App'x 945, 946 (11th Cir. 2017) ("Dismissal of a case with prejudice is considered 'an extreme sanction that may be properly imposed <u>only</u> when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'") (internal citations omitted).

The Court has spent significant time and resources in its endeavor to determine the appropriate sanctions in this specific case with the specific record evidence that exists. This is not a decision that the Court takes lightly. After considering the entire docket, the parties' arguments, and the applicable law, the Court finds that the following sanctions are required to cure the severe prejudice suffered by Defendants. The Court notes that these are essentially the very same sanctions that were suggested as an alternative to dismissal of Hyundai's claims in both Defendants' Motion and Reply. [DE 443 at 12; DE 453 at 10], and the Court does find them to be appropriate here.

First, the Court will prevent Hyundai from presenting any evidence, testimony, or expert opinions of fraud or damages after June 9, 2020, which is the date when Hyundai's preservation duty was acknowledged in an internal preservation email from Hyundai's in-house counsel, Mr. Kim. *See Hecht v. Dillard House, Inc.*, No. 2:08-CV-00186-WCO, 2009 WL 10668301, at *9 (N.D. Ga. Oct. 1, 2009) (court excluded evidence and testimony "concerning anything that occurred after the filing of this lawsuit"). Hyundai shall make no reference to the warranty claims submitted by Defendants, or warranty fraud, or a warranty fraud scheme or enterprise, from June 9, 2020, through December 31, 2021. The Court finds that the July 2021 date suggested by Hyundai and the November 2020 filing of the Complaint are insufficient here. As stated repeatedly throughout this Order, this is a unique factual scenario where Hyundai is a repeat spoliator and has

been continuously spoliating evidence from June 9, 2020, through December 31, 2021—even after receiving the benefit of the Court's prior Spoliation Order and its findings therein.

Second, the Court finds that a new non-rebuttable adverse jury instruction is appropriate here. An "adverse inference makes a finding or imposes a rebuttable presumption that the missing evidence would have been unfavorable to the party engaging in the misconduct." *Fed. Trade Comm'n v. First Universal Lending, LLC*, 773 F. Supp. 2d 1332, 1352 (S.D. Fla. 2011) ("There are different types of adverse inferences: (1) a jury may be instructed that certain facts are deemed admitted and must be accepted as true; (2) the Court may impose a mandatory, albeit rebuttable, presumption; or (3) the jury must presume that the lost evidence is relevant and favorable to the innocent party, but also consider the spoliating party's rebuttal evidence, and then decide whether to draw an adverse inference." *Penick*, 481 F. Supp. 3d at 1295-96; *Schultze v. 2K Clevelander, LLC*, No. 17-CV-22684-Moreno/Louis, 2018 WL 4859071, at *7 (S.D. Fla. Oct. 4, 2018). The first of these types of adverse instructions is appropriate under the current facts. Therefore, Defendants shall promptly submit a proposed non-rebuttable adverse jury instruction for review by the Court. The jury shall be instructed that the following facts are deemed admitted and shall be accepted as true: a) Hyundai had a clear legal duty to preserve all Theta II engines it received from Defendant West Palm from June 9, 2020 through December 31, 2021; b) Hyundai improperly lost, destroyed, and spoliated all of the hundreds of Theta II engines it received from Defendant West Palm from June 9, 2020 through December 31, 2021; and c) the jury shall presume that inspection and examination of  those Theta II engines would have been favorable to Defendants and unfavorable to Hyundai in this lawsuit.

Third, the Court will reserve ruling on Defendants' request for attorney's fees, expert fees, and costs until the conclusion of the jury trial set to begin on January 3, 2023.

The Court again emphasizes that, while it has independently determined appropriate sanctions, Defendants also requested these sanctions as an alternative to dismissal of Hyundai's claims in both Defendants' Motion and Reply. [DE 443 at 12; DE 453 at 10]. Further, the Court has endeavored to tailor the sanctions to the scope of Hyundai's spoliation.

Based on the foregoing, the Court **ORDERS** that Defendants' Expedited Second Motion for Sanctions for Spoliation of Evidence Against Plaintiff [DE 443] is **GRANTED IN PART AND DENIED IN PART,** as stated in this Order. The parties shall proceed accordingly.

**ORDERED and ADJUDGED** in chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of December 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge