SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

HYUNDAI MOTOR AMERICA CORPORATION,

        Plaintiff,

    v.                                 Case No. 9:20-cv-82102-WM

EFN WEST PALM MOTOR SALES, LLC,

        Defendant/Counterclaim
        Plaintiff/Third-Party Plaintiff

GENE KHAYTIN; ERNESTO REVUELTA;
EDWARD W. NAPLETON; GEOVANNY PELAYO,
JORGE RUIZ,

        Defendants.


EFN WEST PALM MOTOR SALES, LLC;
for itself and in the name of the Department of Highway
Safety and Motor Vehicles of the State of Florida, for its
use and benefit,

        Counterclaim-Plaintiff/Third-Party
        Plaintiff,


**DEFENDANTS' MOTION FOR ENTITLEMENT TO AN
AWARD OF PARTIAL ATTORNEY'S FEES AND COSTS
BASED ON PLAINTIFF'S SPOLIATION OF EVIDENCE**

## **TABLE OF CONTENTS**

Preliminary Statement.................................................................................................. 1

Factual and Procedural Background .......................................................................... 3

Standard of Review...................................................................................................... 4

Argument ...................................................................................................................... 5

I.     Defendants are entitled to fees and costs as a result of HMA's repeat spoliation. .............. 5

  A.   Bad Faith .......................................................................................................... 6

  B.   Prejudice to Defendants................................................................................... 7

  C.   Sanction to Cure Prejudice ........................................................................... 10

II.    Defendants' requests for fees are targeted and conservative. ........................... 11

III.   Defendants' requests for costs are targeted and conservative. ......................... 14

  A.   Experts ............................................................................................................ 14

  B.   Trial Preparation and Presentation Costs ................................................... 16

Conclusion ................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atl. Sea Co., S.A. v. Anais Worldwide Shipping, Inc.*,
    No. 08-23079-CIV, 2010 WL 2346665 (S.D. Fla. June 9, 2010)............................................6

*Austrum v. Fed. Cleaning Contractors, Inc.*,
    149 F. Supp. 3d 1343 (S.D. Fla. 2016) ...............................................................................6

*Brown v. Lawn Enf't Agency, Inc.*,
    369 F. Supp. 3d 1224 (N.D. Fla. 2019).................................................................................9

*Chambers v. Nasco, Inc.*,
    501 U.S. 32 (1991)..............................................................................................................10

*EFN West Palm Motor Sales, LLC v. Hyundai Motor America Corp.*
    (No. 21-80348-CIV-CANNON/MATTHEWMAN) .............................................................12

*In re Elec. Mach. Enters., Inc.*,
    416 B.R. 801 (Bankr. M.D. Fla. 2009), *aff'd in part*, 474 B.R. 778 (M.D. Fla.
    2012) ...................................................................................................................................11

*Flury v. Daimler Chrysler Corp.*,
    427 F.3d 939 (11th Cir. 2005) ..............................................................................................6

*Meyrowitz v. Brendel*,
    No. 16-81793-CV-MARRA/MATTHEWMAN, 2018 WL 1718289 (S.D. Fla.
    Apr. 9, 2018) ......................................................................................................................12

*N. Pointe Cas. Ins. Co. v. Block*,
    No. 12-20964-CIV-COOKE/GOODMAN, 2013 WL 12116141 (S.D. Fla.
    Feb. 28, 2013) ......................................................................................................................4

*Norelus v. Denny's, Inc.*,
    628 F.3d 1270 (11th Cir. 2010) ..........................................................................................12

*Penick v. Harbor Freight Tools, USA, Inc.*,
    481 F. Supp. 3d 1286 (S.D. Fla. 2020) ................................................................................6

*Qantum Comm'ns Corp. v. Star Broad., Inc.*,
    473 F. Supp. 2d 1249 (S.D. Fla. 2007) ..............................................................................10

*In re Skanska USA Civil Southeast Inc.*,
    340 F.R.D. 180 (N.D. Fla. 2021) ........................................................................................11

*Tien v. Red Coats, Inc.*,
    753 F. App'x 768 (11th Cir. 2018) ........................................................................11

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*,
    253 F.3d 1332 (11th Cir. 2001) ............................................................................4

*Williams v. R. W. Cannon, Inc.*,
    657 F. Supp. 2d 1302 (S.D. Fla. 2009) ...............................................................12

**Statutes**

28 U.S.C. § 1920 ............................................................................................1, 4, 14

**Other Authorities**

Alan Hirsch & Diane Sheehey, AWARDING ATTORNEY'S FEES AND MANAGING
    FEE LITIGATION (2d. ed. 2005) ............................................................................10

S. D. Fla. L.R. 7.3 ................................................................................. *passim*

Under Local Civil Rule 7.3, Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs EFN West Palm Motor Sales, LLC ("EFN"), Gene Khaytin, Ernesto Revuelta, Edward W. Napleton, Geovanny Pelayo, and Jorge Ruiz (collectively, "Defendants"), by their undersigned counsel, respectfully move the Court for a partial award of attorney's fees and costs.

### Preliminary Statement

Plaintiff Hyundai Motor America Corporation ("HMA") filed this lawsuit in November 2020, accusing Defendants of engaging in a nefarious scheme to destroy Theta II engines so that they could file fraudulent warranty claims. HMA has spent two-and-a-half years aggressively pursuing claims for fraud, civil conspiracy, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on this purported "engine blowing."

That campaign ended in resounding defeat on January 18, 2023, when a unanimous jury rejected all of HMA's claims. Final Judgment was entered on January 19, 2023 in favor of Defendants, ending HMA's effort to destroy a local car dealership in West Palm Beach.

The evidence presented to the jury was extensive. Two dozen witnesses. Thousands of pages of exhibits. Extensive charts and demonstratives on both sides. But one type of evidence was conspicuously absent: physical engines.

In a lawsuit about engines, one might have expected that engines would have been the star witness. One might have also expected that those engines would have been examined by both sides before trial.[1] A scientific examination could have determined whether a Theta II engine failed

---

[1] The jury certainly expected to see engines. One juror even asked about them: "Mr. Smith, are you normally ordered to bring in the physical evidence that you test in regard to a trial?" Trial Tr. at 72:12-13 (Jan. 9, 2023, ECF No. 578).

1

"naturally" (i.e., as a result of the recall condition that affected millions of engines[2]) or "fraudulently" (as a result of Defendants' alleged misconduct). Indeed, such physical examinations could have avoided the need for a trial in the first place.

But the jury did not see a single engine. That is because HMA destroyed the engines at the heart of its own lawsuit—the very engines that would have proven or disproven its claims. The Court is familiar with this spoliation, having **twice** granted sanctions against HMA. Indeed, the Court found that HMA's "unabated," "inexplicable," and "bad faith" spoliation of the "unequivocally critical evidence" resulted in "severe prejudice" to Defendants and "negatively affected the integrity of the discovery and judicial process in this case." The Court, "truly astounded" by the scope of the spoliation, sanctioned HMA by chronologically limiting the evidence that it could present on fraud or damages, and also gave the jury a non-rebuttable adverse instruction to presume that a vast universe of spoliated engines would have been favorable to Defendants and unfavorable to HMA. (*See generally*, ECF No. 466).

When Defendants moved for sanctions the second time, they requested attorney's fees and costs. (ECF No. 443 at 9). The Court decided to adjudicate that request after the trial. (ECF No. 466 at 26). Now that trial is over, Defendants renew that application.

Despite the significant expenditures that HMA forced Defendants to incur, Defendants now seek only a fraction of those fees and costs. As described in detail herein, Defendants are limiting the fees period to the seven months between July 1, 2022 and January 19, 2023. They are also limiting the requested fees and costs to those directly connected to defending against HMA's claims, and not those attributable to the counterclaims or third-party claims. Moreover, the fees

---

[2] *See* "NHTSA Announces Consent Orders with Hyundai and Kia Over Theta II Recall," Nov. 27, 2020, https://www.nhtsa.gov/press-releases/nhtsa-announces-consent-orders-hyundai-and-kia-over-theta-ii-recall.

and costs sought have been heavily discounted in multiple ways to ensure that this application is both reasonable and conservative. These expenses were necessary to defend against claims that never should have been brought in the first place in the absence of the critical evidence that HMA destroyed in bad faith.

<u>**Factual and Procedural Background**</u>

For brevity, the Court is respectfully referred to the factual and procedural history described in the Declaration of Russell P. McRory, dated February 21, 2023 (the "McRory Declaration" or "McRory Decl."). Defendants presume the Court's familiarity with its July 22, 2021 Order sanctioning HMA (the "First Sanctions Order," ECF No. 175) and its December 29, 2022 Order sanctioning HMA (the "Second Sanctions Order," ECF No. 466), which are discussed at length in the McRory Declaration.

Defendants complied with the requirements of Local Rule 7.3(b) by serving a draft of this Motion on HMA on February 21, 2023. That draft included argument on entitlement to fees and costs, as well as comprehensive information about the precise amounts owed (including invoices from ArentFox Schiff LLP and all vendors for which Defendants seek reimbursement).

Thereafter, HMA moved to bifurcate the issues of entitlement and amount. Defendants did not oppose that request, and the Court agreed to bifurcation. (ECF Nos. 591, 592). The parties subsequently held a meet-and-confer on the issue of entitlement, and could not come to an agreement.

Accordingly, this Memorandum of Law is substantially identical to the draft served on HMA under Local Rule 7.3(b), except that it addresses only the issue of entitlement and not the amounts sought. In further support of this Motion, Defendants also attach the original McRory Declaration, dated February 21, 2023, served on HMA. That Declaration provides the factual

background for both entitlement and amount, though the Court may disregard any portion that it deems irrelevant at this stage.[3]

## Standard of Review

Motions for attorney's fees and costs are governed by Local Civil Rule 7.3. There are eight requirements. It must: (1) be served within 60 days[4] of entry of judgment; (2) identify the judgment, order, and grounds entitling the moving party to the award; (3) state the amount sought; (4) disclose the terms of any applicable fee agreement; (5) provide the identity, experience, and qualifications for each timekeeper for whom fees are sought, the number of hours expended, a description of the tasks performed during those hours, and the applicable hourly rate; (6) describe and document with invoices all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920; (7) be verified; and (8) certify that a good-faith effort to resolve issues by agreement

---

[3] The first portion of the McRory Declaration (¶¶ 1-38) focuses on entitlement to fees and costs, while the second portion (¶¶ 39-123) focuses on the amounts sought. Entitlement and amount are inherently interrelated, as many of the expenditures incurred by Defendants after July 1, 2022 were caused by HMA's spoliation. Additionally, HMA alerted the Court to the total amount sought by this Motion through its Motion for Bifurcation. (ECF No. 591 at 2). For these reasons, Defendants offer the Court a "full picture" as it considers entitlement. In light of the bifurcation, however, the McRory Declaration omits nearly all of the cited exhibits (e.g., law firm invoices, vendor receipts, and analytical charts), except Exhibit J—which is an expert report by Steven A. Tasher of Wyatt Partners (the "Tasher Report"). Tasher is a legal fees expert with over 50 years of experience as a law firm partner, general counsel, and consultant. The Tasher Report analyzes Defendants' entitlement to fees from his experience in the industry, as well as the reasonableness of the amounts and categories of fees and costs that Defendants seek.

[4] Local rules govern the timing and process for motions for fees and costs. *See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001); *N. Pointe Cas. Ins. Co. v. Block*, No. 12-20964-CIV-COOKE/GOODMAN, 2013 WL 12116141, at *2 (S.D. Fla. Feb. 28, 2013), report and recommendation adopted, No. 12-20964-CIV-COOKE/GOODMAN, 2013 WL 12116142 (S.D. Fla. Apr. 10, 2013).

occurred pursuant to Local Rule 7.3(b), describing what was and was not resolved by agreement and addressing separately the issues of entitlement to fees and amount.[5]

Here, all eight factors are satisfied. The Motion (1) is filed by March 20, 2023 (i.e., within 60 days of entry of judgment) and complies with the Court's Order on bifurcation (ECF No. 592); (2) is based upon the Court's Second Sanctions Order (ECF No. 466) and related procedural history; (3) seeks an award of specific attorney's fees and costs; (4) describes the key terms of the fee arrangement between ArentFox and Defendants; (5) includes background on timekeepers, their hours, work, and associated costs; (6) attaches all invoices establishing the non-taxable costs sought; (7) is verified; and (8) describes the efforts undertaken under Local Rule 7.3(b).[6]

## Argument

### I.   Defendants are entitled to fees and costs as a result of HMA's repeat spoliation.

This Court has already decided that HMA spoliated critical evidence in bad faith. (ECF No. 466 at 19-22). That spoliation occurred unabated over two years, notwithstanding HMA's duty to preserve evidence and notwithstanding the First Sanctions Order that made that duty crystal clear. (*Id*. at 6). The Court further held that HMA's spoliation caused extreme prejudice to Defendants and harmed the administration of justice in this case. (*Id*. at 23-24). Defendants are entitled to an award of their reasonable fees and costs as a sanction for that spoliation.

The Second Sanctions Order describes the legal standards for sanctioning a party for its spoliation. (*Id*. at 4-5). Briefly, a court's power to impose sanctions "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of

---

[5] Pursuant to Local Rule 7.3(b), Defendants served a draft copy of this Motion on HMA's counsel on February 21, 2023 as described above.

[6] The information in Local Rules 7.3(a)(3)-(6) was provided to HMA on February 21, 2023, but is not included here due to the subsequent bifurcation. (ECF No. 592).

cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citation omitted). As relevant here, "'sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.'" *Atl. Sea Co., S.A. v. Anais Worldwide Shipping, Inc.*, No. 08-23079-CIV, 2010 WL 2346665, at *1 (S.D. Fla. June 9, 2010) (quoting *Flury*, 427 F.3d at 944).

Courts have broad discretion in fashioning appropriate remedies for spoliation. *See Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1346 (S.D. Fla. 2016). Factors to be considered when "determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1294 (S.D. Fla. 2020) (citation omitted).

Each of these three factors is met here. Indeed, this Court already determined the first two factors, which require no further analysis. The third factor of why an award of fees and costs is required to cure Defendants' prejudice is discussed in greater depth.

### A.    Bad Faith

This Court already adjudicated HMA's bad faith—twice. (ECF No. 175 at 19-28; ECF No. 466 at 19-22). The Second Sanctions Order concluded that HMA continued to act in bad faith, as that term is used in the spoliation context. *First*, even after the First Sanctions Order, HMA continued spoliating all Theta II engines returned by EFN. This was not just a single, second instance of spoliation. Rather, it was a systematic, continuing spoliation of dozens and dozens of engines resulting in many independent acts of spoliation. Unlike document destruction, which typically occurs with a single action deleting multiple files, destroying an engine is a singular act

that cannot be treated the same way. *Second*, HMA is a massive corporation with "an extensive in-house legal department" that was represented by "three teams of well-qualified attorneys from different, well-respected law firms" in this action, yet still spoliated critical evidence. And *third*, HMA never supplemented written discovery responses as to the Theta II engines in its possession despite receiving Theta II engines from EFN throughout the pendency of the litigation. (ECF No. 466 at 19-22). For all of these reasons, HMA's bad faith is clearly established and conclusively adjudicated by the Second Sanctions Order.

> **B.      Prejudice to Defendants**

The Court has already detailed the prejudice sustained by Defendants: "The Court easily finds that Hyundai's level of culpability is high and that Defendants have been severely prejudiced, and continue to be severely prejudiced, by Hyundai's loss, destruction, and spoliation of all Theta II engines between June 9, 2020, and December 31, 2021." (*Id*. at 22). There are three important ways in which Defendants were prejudiced.

*First*, Defendants lost the opportunity to inspect the engines at the heart of the lawsuit. Defendants "had the right to have their own experts examine the numerous Theta II engines that Hyundai claims were intentionally blown or damaged. Such internal and external examination of the engines, their fluids, oil, debris, and components could have clearly assisted in Defendants' defense of this case." (*Id*. at 17). Defendants' expert should have had the chance to look at ***all*** returned engines. This Court is well aware, based on trial evidence, that every engine that HMA's expert, James Smith, examined for his initial report was ***exculpatory for Defendants***. (Trial Tr. at 208:21-213:23 (Jan. 6, 2023 ECF No. 578)). No engine showed evidence of intentional destruction. For those that Smith claimed were "consistent with" intentional destruction, the owners testified that, in fact, their cars failed on the road before Defendants ever touched them.

(Trial Tr. at 33:12-15 (Jan. 10, 2023, ECF No. 579), 29:24-30:3 (Jan. 11, 2023, ECF No. 580)). HMA came to court without a single engine that showed physical evidence of fraudulent "destruction." Accordingly, it was not just **_possible_**, but **_highly likely_** that any additional engines would have similarly proven Defendants' innocence.

_Second_, Defendants were prejudiced by being forced to shift major aspects of their defensive strategy in the four-and-a-half months before trial, which compelled them to incur substantial fees and costs. Smith created his first report on March 5, 2021 (the "First Smith Report," ECF No. 131-1). HMA's theories of the case derived from the First Smith Report, which centered on examining actual engines that EFN returned to HMA after their replacement. Defendants were prepared to rebut this engine-based analysis. But suddenly, HMA's strategy shifted, when it served the Second Smith Report. (ECF No. 316). The Second Smith Report deleted all references to the exculpatory engines. Instead, Smith focused on statistical analyses to support HMA's theories of warranty fraud. He also argued, for the first time, that the alleged fraud continued after HMA's Complaint was filed on November 17, 2020. Smith identified brand new vehicle identification numbers ("VINs") that Defendants scrambled to investigate before trial. Suddenly, the case was no longer engine-based, but focused on statistics and circumstantial evidence (e.g., oil pan photographs). To make matters worse, Smith **_continued updating_** his report and adding new (and "corrected") statistical data on multiple occasions over the fall and winter of 2022 (on October 4, 2022, October 7, 2022, and October 11, 2022). After the Second Sanctions Order, which cut the damages period, HMA served **_yet another_** revised report on the weekend before jury selection. These major changes resulted in tremendous burden on Defendants.

ArentFox needed to continually adjust its defense strategies—including new expert analyses[7]—all without actual physical evidence.[8] This also ran up Defendants' bill, forcing them to incur fees and costs that never should have been necessary in the first place.[9]

    *Finally*, there is a third way in which Defendants were prejudiced by HMA's spoliation, which is purely pragmatic. Had engine inspections confirmed that no engines were intentionally destroyed, HMA would likely have dropped this lawsuit. HMA would not continue to pay three major law firms to attack a local dealership if scientific analysis cleared Defendants of any misconduct. This whole affair could have been resolved in early 2021. But no scientific analysis could occur because HMA destroyed the engines. The prejudice to Defendants was enormous: millions of dollars in legal fees, reputational damage after being publicly accused of fraud, and years of distraction from core business operations.

    Despite all of this, HMA has repeatedly asked this Court to reconsider the prejudice decision—and this Court has repeatedly declined those invitations. *See, e.g.*, ECF 406 (rejecting HMA's request to "exclude argument about, or reference to, Hyundai's spoliation of 144 Theta-II engines" described in the First Sanctions Order); ECF No. 466 n. 5 (rejecting HMA's argument that the prejudice caused by the spoliation described in the Second Sanctions Order was "overstated").

---

[7] On November 7, 2022, Defendants served the Responsive Report of Edward M. Stockton, who responded to the new allegations and methods in the Second Smith Report.

[8] For this reason, the significant shifts in Smith's opinions in late June 2022 is an appropriate (and conservative) moment to begin calculating Defendants' fees and costs.

[9] *See Brown v. Lawn Enf't Agency, Inc.*, 369 F. Supp. 3d 1224, 1229 (N.D. Fla. 2019) ("[T]his Court also finds it appropriate to consider how this case was litigated. A [party] 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [the other side] in response[.]'") (citation omitted).

In sum, Defendants have faced extreme prejudice from HMA's spoliation, as this Court has adjudicated, and were forced to expend huge sums that never should have been necessary.

**C.      Sanction to Cure Prejudice**

An award of fees and costs is necessary to cure the prejudice to Defendants. Indeed, when faced with spoliation, an award of fees and costs is a common sanction in the Eleventh Circuit.

*First*, Defendants should be reimbursed for the monies they should not have needed to spend in the first instance. It is well established that courts may "award fees against parties or attorneys as a sanction for misconduct." Alan Hirsch & Diane Sheehey, AWARDING ATTORNEY'S FEES AND MANAGING FEE LITIGATION at 1 (2d. ed. 2005). Fees are appropriate "when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46 (1991) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978). The purpose of awarding fees is to "***mak[e] the prevailing party whole*** for expenses caused by his opponent's obstinacy." *Id.* (emphasis added). The importance of awarding fees "is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case.'" *Qantum Comm'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007) (citation omitted). The spoliated Theta II engines were undoubtedly the "linchpin" of this case. HMA's misconduct was severe, resulting in enormous legal expenses for Defendants, and a complete award of fees is necessary to make Defendants whole.

*Second*, beyond reimbursing Defendants, an award of fees and costs is also appropriate for deterrence. HMA's conduct "negatively affected the integrity of the discovery and judicial process in this case." (ECF No. 466 at 23-24). That is no small statement. This Court concluded that HMA, acting in bad faith, impeded the ability of the federal courts to fairly administer justice. When crafting spoliation sanctions, a court will consider "the potential for abuse if sanctions are not

10

imposed." *Tien v. Red Coats, Inc.*, 753 F. App'x 768, 770 (11th Cir. 2018) (citation omitted). In other words, spoliation sanctions "assure that the non-spoliator does not bear an unfair burden" but also create a "deterrent effect on miscreant [parties]." *In re Elec. Mach. Enters., Inc.*, 416 B.R. 801, 873 (Bankr. M.D. Fla. 2009), *aff'd in part*, 474 B.R. 778 (M.D. Fla. 2012) (citations omitted); *see also Matter of In re Skanska USA Civil Southeast Inc.*, 340 F.R.D. 180 (N.D. Fla. 2021) (awarding costs and fees incurred in prosecuting spoliation motion).

It is difficult to imagine a more textbook case warranting sanctions. Given the conduct described in the Second Sanctions Order, this is precisely the type of scenario requiring the Court to send a message: a party cannot be a "repeat spoliator," force its opponent to expend millions of dollars, and then walk away unscathed with an adverse instruction and no more. This is particularly true for a multinational corporate plaintiff that brings a lawsuit against a local business and its employees, effectively forcing them to pay millions of dollars in defense costs to prevail at trial.

Here, the fees are not even a punishing sanction. Defendants are not seeking to profit from an award. The fees are just a ***reimbursement*** of expenses incurred and paid by Defendants due to HMA's adjudicated bad faith and repeat spoliation.

Both to reimburse Defendants (making them whole), and to send a message to future litigants that unabated spoliation will not be tolerated, an award of fees and costs is appropriate.

## II.     Defendants' requests for fees are targeted and conservative.

The scope of this Motion is circumscribed. Defendants are not seeking reimbursement of all attorney's fees expended in defending HMA's lawsuit for the past two-and-a-half years—notwithstanding the fact that HMA began spoliating ***before*** it filed its Complaint, and a broader request for reimbursement would therefore be entirely justified. Rather, Defendants are taking a conservative approach to their request for fees and costs.

11

Because the Court has bifurcated the issue of entitlement from the amounts owed, this Motion will not delve into the reasonableness of the dollars sought. (ECF No. 592). However, Defendants do want to emphasize the ways in which the Motion is substantively limited, circumscribing the scope of the entitlement sought:

- Defendants seek fees only from July 1, 2022 to January 19, 2023 (the "Relevant Period"), even though HMA's spoliation caused more increased fees before July 1, 2022.[10] (*See* McRory Decl. ¶ 82).

- Defendants are not seeking fees for work on EFN's counterclaims or third-party claims. The Motion relates only to fees and costs attributable to defending against HMA's affirmative claims. (*Id.* ¶ 86).

- Defendants seek fees only for work performed by ArentFox's "core team" of nine attorneys and one paralegal. This Motion excludes fees of seventeen professionals who also worked on this litigation between July 1, 2022 and January 19, 2023. (*Id.* ¶ 84).

- Defendants are not seeking fees generated from its local counsel, GrayRobinson, P.A., which consulted and assisted ArentFox throughout this litigation. (*Id.* ¶ 83).

- Defendants do not seek fees for work or consultation involving *EFN West Palm Motor Sales, LLC v. Hyundai Motor America Corp.* (No. 21-80348-CIV-CANNON/MATTHEWMAN) (the "Termination Case"). EFN is represented by separate counsel in the Termination Case. ArentFox has occasionally communicated with or supported the Termination Case. To be conservative, Defendants do not seek reimbursement for time spent collaborating on the Termination Case, even though such work contributed to the results here. (*Id.* ¶85).

Additionally, there were a number of instances where time entries reflected work that was "blended" between compensable and non-compensable work. Examples would include group

---

[10] Defendants reserve the right to seek additional fees and costs incurred after January 19, 2023, based on HMA's continued attempts to litigate its claims or pursue additional motion practice. Additionally, while Defendants are not seeking the fees and costs of this Motion ("fees-on-fees"), we reserve all rights to seek fees and costs incurred as a result of any opposition filed by HMA. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010) (permitting "fees on fees"); *Williams v. R. W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1318 (S.D. Fla. 2009) (awarding fees to party for filing post trial motion on fees); *Meyrowitz v. Brendel*, No. 16-81793-CV-MARRA/MATTHEWMAN, 2018 WL 1718289, at *11 n.4 (S.D. Fla. Apr. 9, 2018) (finding fees-on-fees to be necessary and appropriate).

strategy meetings (where both the claims and counterclaims would have naturally been discussed), general trial preparation, or meetings with witnesses who had information about both claims and counterclaims. (*Id*. ¶¶ 86-93). In these instances, Defendants applied a discounted rate suggested by the Tasher Report, which considered the following data points to be instructive in determining an appropriate blended rate:

- **Plaintiff's Opening Statement:** On January 4, 2023, the Court gave each side 75 minutes for their respective opening arguments. HMA agreed that it would need approximately 15 minutes (or 20%) for its discussion of the counterclaims. (Tr. at 19:11-20 (Jan. 4, 2023, ECF No. 575)).

- **Plaintiff's Closing Statement:** On January 17, 2023, the Court gave each side 75 minutes to the closing argument. (Tr. at 207:4-25(Jan. 17, 2023, ECF No. 583)). Once again, HMA's counsel indicated she would need approximately 15 minutes (or 20%) to address the counterclaims. (Tr. at 17:9-13 (Jan. 18, 2023, ECF No. 584)).

- **Trial Transcript Pages:** Of the 2,180 pages of trial transcript, roughly 486 (approximately 22%) were devoted to counterclaim witnesses or argument.

(*See generally*, Tasher Report ¶¶ 141(a)-(c)).

With these numbers, the Tasher Report concludes that 20% is an appropriate discount for "blended" time entries. (*Id*. ¶ 142). The fact that HMA and Defendants voluntarily agreed to this allocation as between the claims and the counterclaims/third-party claims for both their opening and their closing statements is significant. The opening and closing statements are, needless to say, critical moments in a jury trial. The parties' allocation of timing on these claims are therefore very enlightening as to the way that the parties themselves valued the respective sides of the case.

Defendants engaged in a line-by-line analysis of all ArentFox invoices. Any non-compensable time entries (e.g., time spent on the counterclaims) were removed and highlighted in red. Any "blended" time entries were highlighted in yellow and reduced by 20%.[11]

---

[11] Again, these color-coded invoices and associate summary charts are not filed with this Motion, but are generally described in the McRory Declaration.

13

In sum, the fees sought through this Motion are conservative. Defendants seek entitlement only to a highly targeted set of fees.

## III.    **Defendants' requests for costs are targeted and conservative.**

Consistent with the request for entitlement to attorney's fees, Defendants' requested entitlement to their reasonable litigation costs is equally targeted and conservative. The costs generally relate to expert witnesses, trial preparation, and trial expenses. None of these costs are taxable and none overlap with other requests for costs.[12]

### A.    **Experts**

Defendants had three experts: Mark Swanson ("Swanson"), Jeff Lange ("Lange"), and Edward Stockton ("Stockton"). Swanson and Lange spent 100% of their time assisting Defendants' defense of HMA's fraud and RICO claims. Stockton, however, supported both the defensive case as well as the counterclaims. (McRory Decl. ¶ 95). Each expert's role in the litigation, as well as the scope of reimbursement sought through the Motion, is described below:

- **Lange:** Lange is the principal of Lange Technical Services, Inc. Defendants retained Lange to evaluate testing of the Theta II engines. Lange provided written reports and addenda on his findings. Lange's written report was dated April 26, 2021 and supplemented on May 14, 2021. These reports came before the Relevant Period, and Defendants therefore do not seek any reimbursement for their creation even though the issues are directly related to engine testing. Moreover, because no actual engines or testimony about engines was presented by HMA at trial (because of HMA's spoliation), Defendants ultimately made the strategic decision not to call Lange as a witness. Nevertheless, Lange provided extensive consultation with ArentFox throughout the litigation (and trial) and especially during the Relevant Period in connection with evaluating HMA's claims—including the multiple reports produced by Smith, which were "updated" on multiple occasions in the fall and winter of 2022. (McRory Decl. ¶ 96).

- **Swanson:** Swanson is the principal of Kinetic Metrics, LLC, an automotive consulting firm. He provided both a written expert report (dated July 26, 2022) as well as testimony at trial on January 9, 2023. An engineer, he spent thirteen years at NHTSA. During that time, he worked on multiple investigations for the Vehicle Integrity Division of the Office

---

[12] Defendants are not seeking many other costs borne during the Relevant Period (e.g., Westlaw, Federal Express, messengering services, etc.).

of Defects Investigation, including investigations of engineering failures. Based on his extensive professional experience, Swanson's report and testimony explained the regulatory context around NHTSA's investigation and resulting penalties of HMA. For example, he offered his views on NHTSA's function, its common regulatory practices particularly relating to recalls, its investigation of the Theta II defects and recalls, the legal and regulatory proceedings that resulted from HMA's conduct, and the nature of the concealed Theta II defects and penalties assessed to Hyundai as a result of its conduct compared to other investigations. (McRory Decl. ¶ 97).

- **Stockton:** Stockton is the Chairman of the Board and Vice President and Director of Economics Services of The Fontana Group, Inc., which provides economic consulting services on the retail motor vehicle industry and other industries throughout the United States, Canada, and other countries. Stockton provided a written report (dated November 7, 2022) to oppose James Smith's Second Report and testified at trial on January 11, 2023. As noted above, Stockton provided expert consulting services on both Defendants' defensive case (i.e., intentional engine destruction issues) and the counterclaims and third-party claims (i.e., allocation of vehicles to EFN). Consistent with the rest of this Motion, Defendants seek only reimbursement for the portion of Stockton's work that related to defending against HMA's affirmative claims—specifically, for only the period from October 16, 2022 through January 19, 2023. In other words, Defendants further shave three-and-a-half months from Stockton's invoices from the Relevant Period. This is because, during the summer and early fall of 2022, he was largely focused on counterclaim-related issues. In the later fall and winter of 2022 and 2023, he became more focused on assisting ArentFox respond to the updated reports by Smith as well as general preparation for trial. As reflected by the expert analysis of the Tasher Report, Defendants seek only 80% of the sums charged by Stockton between October 16, 2022 and January 19, 2023, because approximately 20% of his time related to the counterclaims and third-party claims. (*See* Tasher Report ¶¶ 138-145; McRory Decl. ¶ 97).

In sum, this Motion seeks entitlement to expenditures related to their three expert witnesses. Specifically, Defendants request reimbursement of all expenses related to Lange and Stockton during the Relevant Period, and 80% of expenses related to Stockton between October 16, 2022 and January 19, 2023.

**B.      Trial Preparation and Presentation Costs**

Beyond experts, Defendants seek reimbursement for other non-taxable costs that were reasonable and necessary to defend against HMA's claims.[13] These categories are generally described below:

- **E-Discovery:** At the outset of this litigation, Defendants retained Stroz Friedberg, LLC as its e-discovery vendor. Stroz Friedberg processed about 108,000 incoming and outgoing documents produced by the parties; generated targeted searches and reports; and consulted with ArentFox on an ongoing basis. Stroz Friedberg also charges a monthly document storage fee based on the size of the electronic storage required to store the significant amount of data collected and produced during this litigation. Because a portion of the e-discovery in this litigation related to the counterclaims and third-party claims, not all of the costs associated with Stroz Friedberg are compensable. As reflected by the expert analysis of Mr. Tasher, Defendants seek only 80% of the sums charged by Stroz Friedberg during the Relevant Period. (*See* Tasher Report ¶¶ 138-145; McRory Decl. ¶¶ 100-104).

- **Hotel:** Defendants reserved ten guest rooms at the Hilton West Palm Beach between December 28, 2022 and January 19, 2023. These rooms were used by ArentFox attorneys, one Senior Paralegal, a trial technician, Defendants' in-house counsel, and a rotating group of expert witnesses as they were needed during the trial. As reflected by the expert analysis contained in the Tasher Report, Defendants seek only 80% of this sum because 20% of the time is attributable to the counterclaims and third-party claims. (*See* Tasher Report ¶¶ 138-145). Defendants would have needed to travel to Florida for trial of their claims even if HMA's claims did not go to trial—albeit for a significantly shorter period of time. In the exercise of discretion, Defendants are also not seeking the additional monies paid to the Hilton for food, beverages, and other miscellaneous services, and seek only reimbursement for the rooms themselves. (*See* McRory Decl. ¶¶ 105-108).

- **Trial Technology Services:** Defendants engaged Fulcrum Legal Graphics, Inc. to provide audiovisual assistance and graphics during the trial. James Beall, Senior Trial Tech at Fulcrum, provided primary support. Beall's work was evident throughout the trial, including, for example, preparation of deposition designation video clips, PowerPoints during opening and closing arguments, and exhibit "call outs" and displays during live witness testimony. Beall was physically in Florida before the trial to help ArentFox attorneys prepare their arguments, direct examinations, and cross-examinations, as well as throughout the trial. Because a portion of Fulcrum's work related to the counterclaims and

---

[13] In an additional effort to be conservative, Defendants are not seeking reimbursement of many categories of costs that they incurred during the Relevant Period. For example, the Motion does not include travel expenses (e.g., airfare, car rentals, etc.), Federal Express, messenger services, or legal research. (McRory Decl. ¶¶ 109-110, ¶ 123 n.12).

third-party claims, not all of the costs attributable to Fulcrum are compensable. As reflected by the expert analysis contained in the Tasher Report, Defendants seek only 80% of the sums charged by Fulcrum during the Relevant Period. (*See* Tasher Report ¶¶ 138-145; McRory Decl. ¶¶ 111-114).

- **Equipment Rentals:** Defendants rented technology equipment to support their trial preparation and presentation. Some of this equipment was used in the hotel, while other equipment was brought to Court. ArentFox contracted with a company called SmartSource. Examples of the rented equipment included an industrial copy machine, a Wi-Fi router, eight 22-inch computer monitors, and various necessary cables.[14] As explained by the McRory Declaration, "the equipment rented by SmartSource was necessary to prepare for, and present, Defendants' defenses to HMA's claims." (McRory Decl. ¶ 117). ArentFox attorneys needed to have full technological capabilities to work from the hotel before the start of the trial and throughout the trial (e.g., nights, weekends, etc.). Renting this equipment was less expensive and more practical than renting separate office space in West Palm Beach. Because this equipment was also used to support Defendants' work on their counterclaims and third-party claims, not all of the costs attributable to SmartSource are compensable. As reflected by the expert analysis contained in the Tasher Report, Defendants seek only 80% of the sums charged by SmartSource during the Relevant Period. (*See* Tasher Report ¶¶ 138-145; McRory Decl. ¶¶ 115-118).

- **Jury Consultant:** Defendants engaged Victory Trial Consulting, LLC to provide jury consultation services. Victory is a full-service national trial consulting firm providing assistance to attorneys in case evaluation, trial strategy, thematic development, jury selection, trial communication, and witness evaluation. ArentFox relied upon Betty Dunkum, Esq., Victory's CEO, for her insight during jury selection, as well as opening and closing statements. As explained by the McRory Declaration, "having a jury consultant is critical, particularly in large and complex litigation." (McRory Decl. ¶ 120). Of course, the same jury heard both the defensive claims and the counterclaims and third-party claims. As reflected by the expert analysis contained in the Tasher Report, Defendants therefore seek only 80% of these consulting costs. (*See* Tasher Report ¶¶ 138-145; McRory Decl. ¶¶ 119-122).

These types of costs are common and unsurprising, particularly in a complex federal litigation such as this one. As explained by the Tasher Report, "[t]hese are exactly the types of costs that I would expect to see for this type of matter, and it is my experience that these costs are customarily charged to clients, having paid for these types of services for many decades. They are, moreover, modest, and the types of costs that are charged to clients across the country." (Tasher

---

[14] Defendants needed to rent monitors, but did not need to rent computers because the ArentFox team brought their own laptops. (McRory Decl. at 28 n.11).

Report ¶ 134). In sum, the Motion seeks entitlement to this narrow and discounted set of costs that is appropriate and reasonable under the circumstances.

## **<u>Conclusion</u>**

Based on the foregoing, together with the accompanying McRory Declaration and Tasher Report, Defendants respectfully request that the Court determine that they are entitled to an award of attorney's fees and costs as described herein.

Dated: March 20, 2023

ARENTFOX SCHIFF LLP

By: ____/s/Charles A. Gallaer____

Charles A. Gallaer, Esq.
Russell P. McRory (*pro hac vice*)
Michael P. McMahan (*pro hac vice*)
Brian Farkas (*pro hac vice*)
Daisy Sexton (*pro hac vice*)
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990
russell.mcrory@afslaw.com
michael.mcmahan@afslaw.com
charles.gallaer@afslaw.com
brian.farkas@afslaw.com
daisy.sexton@afslaw.com

Taniel E. Anderson (*pro hac vice*)
Morgan R. Pankow (*pro hac vice*)
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
taniel.anderson@afslaw.com
morgan.pankow@afslaw.com

*Attorneys for Defendants*

Of Counsel:
Leslie Stracher, Esq. (Fla. Bar No. 340091)
General Counsel
Napleton Automotive Group
1 Oakbrook Terrace, Suite 600
Oakbrook Terrace, IL 60181
Tel: (630) 530-3955

*Of Counsel to Napleton Defendants*

*To: All counsel of record via ECF*

19

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Under Local Rule 7.3(b), I hereby certify that counsel for the movant has conferred with counsel for Plaintiff Hyundai Motor America ("HMA"). Defendants served a draft copy of this Motion, as required by the Local Rules, on February 21, 2023. Following the Court's Order on bifurcation, the parties held a meet-and-confer, but were unable to come to any agreement on Defendants' entitlement to fees and costs.

By: ___/s/___ *Charles A. Gallaer*___
               Charles A. Gallaer, Esq.

**VERIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(A)(7)**

Under Local Civil Rule 7.1(A)(7), I state that I am Leslie Stracher, Esq., General Counsel of the Napleton Automotive Group. I have been personally involved with this litigation since its inception, and have supervised outside counsel (ArentFox Schiff LLP) throughout the case. In my corporate capacity, I reviewed all attorney's fees and vendor costs throughout this litigation, and also ensured payment for Defendants of the same. I have reviewed the Motion for Partial Award of Fees and Costs, and believe it to be true to the best of my personal knowledge.

By: ___/s/___ *Leslie Stracher*_____
Leslie Stracher, Esq.