UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CIVIL NO. 20-82102-MATTHEWMAN

HYUNDAI MOTOR AMERICA CORPORATION,

 Plaintiff,

vs.

EFN WEST PALM MOTOR SALES LLC, *et al.*,

 Defendants.

_____/

**<u>HMA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
AS TO UNCLEAN HANDS DEFENSE</u>**
**(RENEWED POST-ENTRY OF AMENDED FINAL JUDGMENT [DE 630])[1]**

 Pursuant to Federal Rule of Civil Procedure 50(b), Plaintiff Hyundai Motor America Corporation ("HMA") hereby renews its motion for judgment as a matter of law as to defendants' unclean hands defense. As grounds for this motion, HMA states as follows:

---

[1] With the exception of this footnote and the date of filing and service, this Motion is identical to HMA's Renewed Motion for Judgment as a Matter of Law as to Unclean Hands Defense [DE 588] ("Original Rule 50 Motion"), which this Court denied [DE 615] before the entry of the Amended Final Judgment [DE 630]. HMA renews its Original Rule 50 Motion simply out of an abundance of caution in the unlikely event that the Original Rule 50 Motion is deemed premature because it was filed and determined before the entry of the Amended Final Judgment. *See Hilst v. Bowen*, 874 F.2d 725, 726 (10th Cir. 1989) ("Courts and commentators generally agree" that the time limitation in Rule 59 "sets only a maximum period and does not preclude a party from making a Rule 59 motion before a formal judgment has been entered."); *Compare Hope for Fams. & Cmty. Serv., Inc. v. Warren*, No. 3:06-CV-1113-WKW, 2012 WL 13015103, at *2 (M.D. Ala. June 12, 2012) ("a Rule 50(b) renewed motion for judgment as a matter of law made after the jury verdict, but before final judgment, is premature. However, Defendants will be permitted to file renewed motions for judgment as a matter of law and alternative motions for new trial as to any Defendant against whom final judgment is entered on a claim.").

I. **HMA's Argument at the Jury Charge Conference Constitutes a Motion for Judgment as a Matter of Law as to the Unclean Hands Defense**

Rule 50(b) expressly provides only for the filing of *renewed* motions for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). Thus, a motion for judgment as a matter of law after a party has been fully heard on an issue and before the case is submitted to the jury is a prerequisite to a Rule 50(b) motion. *See* Fed. R. Civ. P. 50(a). "Because the rule is a harsh one, we [the Eleventh Circuit] have taken a liberal view of what constitutes a motion for directed verdict." *Nat'l Indus. Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986).

For example, as is relevant here, the Eleventh Circuit has stated: "a Rule 50(b) argument may, in some cases, be properly preserved by an argument clearly and unambiguously raised during a charge conference." *McGinnis v. American Home Mortgage Servicing,* 817 F3d 1241, 1263 (11th Cir. 2018)(argument was not preserved where counsel "simply made an offhand remark" as opposed to a clear and unambiguous argument at jury charge conference).

Such an argument raised at a charge conference will only be sufficient to constitute a Rule 50 motion if "although not styled as a motion for judgment as a matter of law, [it] served the same purpose in that ***it conveyed a definitive, clear objection to the presentation of the . .. question to the jury***." *Softball County Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n,* 121 F.3d 649, 656 (11th Cir. 1997)(emphasis added). *See also Splitt v. Deltona Corp.,* 662 F.2d 1142, 1144-45 (5th Cir. 1981)(holding that an argument raised during a charge conference preserved Rule 50 argument where counsel "argued strenuously against a jury instruction that would permit a finding of punitive damages."); *Quinn v. Southwest Woods Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979)(defendant's formal objections to jury charge constituted unambiguous challenge to the sufficiency of the evidence and thus preserved later JNOV motion on that point); *Registe v. LinkAerica Express, Inc.*, 2015 WL 1288138, *3 (M.D. Fla. March 18, 2015)("although Plaintiffs

2

did not formally raise the . .. issue in a Rule 50(a) motion, Plaintiffs have not abandoned this claim because the issue was raised and objected to later on during the jury charge conference. . . This holding accords with the 'liberal view' the Eleventh Circuit has taken in considering Rule 50 motions."); *EEOC v. Western Trading Co., Inc.,*, 291 F.R.D. 615, 620 (D. Col. June 20, 2013)("Plaintiffs preserved the right to bring the instant [Rule 50(b)] Motion by arguing at the jury charge conference that Defendant had not presented sufficient evidence to warrant the mitigation of damages instruction. While not raised as a Rule 50(a) motion, Plaintiffs' objection to the jury instruction and argument in support of that objection served to put Defendant on notice that Plaintiffs believed the evidence of mitigation was insufficient to warrant the jury determining the issue."). *See generally Etienne v. Inter-County Security Corp.*, 173 F.3d 1372, 1375 (11th Cir. 1999)(statement made by plaintiff in opposing defendant's motion for judgment as a matter of law sufficient to constituted a Rule 50 motion "given this Court's liberal view of what constitutes a motion for judgment as a matter of law.")

In this case, HMA clearly and unambiguously argued at the jury charge conference that the unclean hands defense should not be submitted to the jury, not only because it was legally inapplicable, but also because there was insufficient evidence to support the defense. Specifically, as to the fact that the unclean hands defense should not be submitted to the jury because it is inapplicable to HMA's claims seeking only money damages, the following exchange occurred:

> THE COURT: The next one is unclean hands. And that is Instruction Number 20. The way I understand it, Plaintiffs' position is that no unclean hands affirmative defense instruction should be given, but if it is given, you want the one on page 39, and when I say page numbers, I am referring to the Docket Entry page numbers, page 39 of -Docket Entry 528. Is that correct, Ms. Fernandez?
>
> *MS. FERNANDEZ:* Yes, and if **I can address for you, if you would like, more specifically why I don't think it should be given.**
>
> *THE COURT:* Sure. Just go ahead in a minute or two, if you could, and then I'll go

3

to the other side.

*MS. FERNANDEZ:*

\*\*\*

More broadly than that, Your Honor, **all of our claims are legal claims and there are many decisions that point out that the unclean hands defense is not a defense to legal claims. Here, we are only seeking monetary damages, no equitable relief**. Originally, in our complaint, we did have a [disgorgement] request for relief. That has been long ago abandoned as you recognized in one of your pretrial orders. So we are seeking strictly legal relief in terms of money damages, and so for instance the *Regions Bank* case we cite at 2010 West Law 51048467 says that the doctrine is inapplicable to a legal claim.

And I have another case, 2015 West Law, 1197776, that's *SMK Associates versus Lorali*, and in that case, Judge Williams declined to -- she said the Court did not allow SMK's jury instructions on unclean hands because this is not a recognized defense to a claim for damages, and it's also addressed in Footnote 2 of that opinion. The Court determined that the Doctrine of Unclean Hands is applicable only to a claim for equitable relief, not a claim for damages. **So we have no claims for equitable relief in this case, so, under this authority, I would say, legally, it is improper**.

Trial Transcript ("Tr. Tran."), 1/17/2023, DE 583 at 114:23-116:17 (emphasis added).

And, as to the evidence presented at trial being insufficient to establish either required element of the defense of unclean hands, HMA argued as follows:

As a factual matter, the defense of unclean hands has to be -- the reprehensible conduct has to be **directly related** to our claims. In this case, obviously, our claims are for warranty fraud. It is obvious to me, **there has been no evidence that we did anything in connection with the claims**, the [prior] authorization requests submitted to us that would be reprehensible conduct. It has to be related directly to the claim and, also, they have to establish that **each Defendant was personally injured by that conduct. There has been absolutely no evidence to show that anything we have done relates to their submission of warranty claims to us or that any Defendant was injured by any conduct.**

**So, as a factual matter, we don't think there is evidence in the record to support the jury instruction**.

Tr. Tran. 1/17/2023, DE 583 at 116:17-117:5 (emphasis added).  These objections are consistent with the written objections to submitting the unclean hands defense to the jury filed by HMA after

4

the close of evidence and before submission of the case to the jury.[2] Clearly, both the Court and opposing counsel were on notice of HMA's objections to submitting the unclean hands defense to the jury and the basis for such objections, and Defendants' counsel was given an opportunity to respond.[3]

Under these circumstances, and pursuant to the numerous Eleventh Circuit authorities cited above, HMA's argument at the jury charge conference and its written objections to the unclean hands defense instruction filed on January 17, 2023 (DE 528 at 39-40) constitute a Rule 50(a) motion for judgment as a matter of law as to the unclean hands defense.

II. **HMA's Renewed Motion for Judgment as a Matter of Law Should Be Granted as to the Unclean Hands Defense**

    A. **The Unclean Hands Defense is an Equitable Defense Inapplicable to HMA's Claims Seeking Only Money Damages**

In the words of the Eleventh Circuit, "[t]he doctrine of 'unclean hands' is an *equitable* test that is used *by courts* in deciding *equitable fate*." *United States v. Howell,* 425 F.3d 971, 974 (11th Cir. 2005)(emphasis added). A defense of unclean hands does not apply, as a matter of law, to a legal claims such as HMA's claims seeking only money damages.[4] *See, e.g. Regions Bank v. Old*

---

[2] *See* DE 528 at 39-40 (setting forth objection to submitting unclean hands instruction to the jury based on "wealth of case law to the effect that unclean hands is not a defense to legal claims. . . . Here, of course, Plaintiff is seeking solely money damages and thus the unclean hands defense does not apply to any of its claims;" also objecting based on insufficient evidence having been presented at trial and stating: "in terms of the evidence presented at trial, Plaintiff does not believe any evidence has been presented that would support either element of such a defense." )

[3] Tr. Tran 1/17/2023, DE 583 at 117:17-118:2; DE 528 at 38.

[4] While originally HMA's complaint referenced equitable relief, HMA abandoned that request long before trial, s*ee,* DE 385 ("HMA is not pursuing the equitable remedy of disgorgement or any other remedy that would involve any sort of burden-shifting. Instead, it is simply relying on the noncontroversial law of damages that permits juries to reach a reasonable estimate of the extent of damages based on relevant evidence presented at trial if HMA first carries its burden of proving fraud occurred."), as the Court recognized in a pre-trial order. *See,* DE 404 (court's order recognizing HMA's representation and noting that HMA "will be held to that representation.").

*Jupiter, LLC*, 2010 WL 5148467, * 6 and n. 2 (S.D. Fla. Dec 3, 2010) ("Where, as here, a plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable."); *SMK Associates, LLC v. Lorali, Inc.*, 2015 WL 1197776, * 3 (S.D. Fla. Jan. 21, 2015) ("the Court did not allow [defendant's] jury instruction on unclean hands because that is not a recognized defense to a claim for damages;" "More specifically, the Court determined that the doctrine of unclean is applicable only to a claim for equitable relief, not a claim for damages."); *Nature's Products, Inc. v. Natrol, Inc.*, 990 F. Supp.2d 1307, 1317 (S.D. Fla. 2013) ("[Defendant's] reliance on the 'unclean hands' doctrine is misplaced. 'The unclean hands doctrine 'close the door of a court of equity . . . .However, 'the unclean hands doctrine traditionally only applies to equitable remedies and does not bar a plaintiff from recovering damages.'"); *Wendl v. Int'l Real Estate News, LLC*, 2019 WL 4254626, * 4 (S. D. Fla. 2019)( "The defense of unclean hands can only be applied to equitable remedies."); *B & G OPA Holdings, Inc. v. City of Opa-Locka, Florida*, 2020 WL 5822312, *17 and n.18 (S.D. Fla. Sept. 2020)("Importantly, the unclean hands doctrine 'traditionally applies only to equitable remedies and does not bar a plaintiff from recovering damages;" thus explaining that the unclean hands defense did not defeat summary judgment in favor of plaintiffs on their claims seeking compensatory damages, as opposed to the claims seeking equitable relief as to which the defense was "an available" defense). *See generally Freestream Aircraft USA Ltd v. Chowdry*, 2018 WL 1309921, * 1 and *3 (S. D. Fla. March 12, 2018) (Matthewman, J.) (noting plaintiff's position "that the unclean hands defense could only apply to the unjust enrichment claim as it is an equitable defense" and then noting the parties' agreement "that this affirmative defense only applies to Plaintiff's unjust enrichment cause of action.").

Thus, for example--*specifically in the context of a fraud claim seeking money damages*— the court in *Adana Investing, Inc. v. Wells Fargo Bank N.A.,* 2017 WL 3668553, *10 (S.D. Fla.

April 10, 2017) rejected application of the unclean hands defense. In that case, the plaintiff alleged, *inter alia,* three different claims for fraudulent misrepresentation. *Id.* In granting the plaintiff's motion for summary judgment as to the defense of unclean hands, the court wrote:

> The equitable doctrine of "unclean hands" applies when a party seeking equitable relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation. . . . Here Plaintiff is only seeking monetary damages. This is not a claim for equitable relief; therefore the Court agrees with Plaintiff that Defendants are not permitted to raise the doctrine of unclean hands as a defense.

*Id.* at *16 (citations omitted).

Against this wealth of authority, the only authority relied on by Defendants at the jury charge conference in advocating for the unclean hands defense was not even a written decision, but rather a reference to a docket entry reflecting an unclean hands instruction having been given to a jury. *See, e.g. Sciarretta v. Lincoln National Life Ins. Co.*, Case No. 9:11-cv-80427 ("Sciarretta Action"), Court's Instructions to the Jury, ECF No. 147, at 19 (S.D. Fla. Mar. 2, 2012). In that case, the Plaintiff/Counter-Defendant was apparently represented by, *inter alia,* the Arent Fox firm, which represents the Defendants in this case. In comparing the jury instructions (Sciarretta Action, DE 147) and the verdict form (Sciarretta Action, DE 150) to the Counterclaim (Sciarretta Action, DE 7), it appears that only the claims asserted in the Counterclaim were submitted to the jury. While the jury was apparently instructed on the unclean hands defense to the Counterclaim (Sciarretta Action, DE 147 at 19), the Counterclaim does seek equitable relief and this may account for the inclusion of the unclean hands defense. *See, e.g.* Sciarretta Action, DE 7 at ¶¶ 16 and wherefore clause (C). There was no reference on the verdict form to unclean hands (only a general reference to "defenses") and the jury never even reached the defenses because it did not find that fraud had occurred. (Sciarretta Action, DE 150).

Regardless, HMA has searched the court filings in the Sciarretta Action in vain for any

discussion of the issue of whether the unclean hands defense should apply to the fraud claim assuming that claim sought only money damages. We have been unable to find *any* discussion whatsoever of this issue. Accordingly, there is no way of knowing whether the inapplicability of the unclean hands defense to a legal claim seeking only money damages *was ever even raised to the court*, let alone do we have the benefit of any legal reasoning from the court on that issue. Thus, HMA respectfully submits that the Sciarrreta Action provides no support for the submission of the issue of unclean hands to the jury and certainly does not override the overwhelming authority establishing that the defense should *no*t have been submitted to the jury.

The only other authorities cited in Defendants' written submission regarding the jury instruction [DE 528 at 38] also do not actually support the submission of the unclean hands issue to the jury in this case. *See Stewart v. Hooters of Am., Inc.*, 8:04-CV-40-T-17-MAP, 2007 WL 1752843 (M.D. Fla. June 18, 2007)(court declined to apply the unclean hands defense because the alleged misconduct was not closely connected to the claim); *Lee v. Askin Trucking, Inc.*, 05-14335-CIV, 2006 WL 8430906 (S.D. Fla. Feb. 8, 2006) (the court struck the Defendant's unclean hands affirmative defense because it was not an available defense to a FLSA claim); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146 (1933)(seminal case discussing unclean hands defense as an *equitable* defense); *Peregrine Funding Inc., v. Sheppard Mullin Richter & Hamilton LLP*, 133 Cal. App. 4th 658 (1st Dist. 2005) (applying California law, the court determined that a bankruptcy's trustees claims for legal malpractice and aiding and abetting breach of fiduciary duty were barred by the unclean hands defense since the bankruptcy trustee stood in the shoes of the debtor entity which had run a Ponzi scheme and was now attempting to sue its prior counsel for aiding in that scheme). Perhaps for this reason Defendants did not mention these authorities in arguing the issue at the jury charge conference.

In short, although HMA has searched extensively, it has been unable to find *even one* decision within the Eleventh Circuit referencing a jury verdict having been entered on an "unclean hands" defense to *any* tort or contract claim seeking exclusively money damages. Not one. HMA respectfully submits that its renewed motion for judgment as a matter of law should be granted as to the "unclean hands" defense on this basis alone.

### B. There was Insufficient Evidence Presented at Trial as to either Required Element of the Unclean Hands Defense

The "unclean hands" jury instruction given to the jury reads, in pertinent part, as follows:

> In order to prevail on this defense, Defendants must prove by a preponderance of the evidence that (1) that Hyundai committed an unconscionable act or engaged in reprehensible conduct that is directly related to the claims it has asserted; and (2) that Defendants were personally injured by such conduct. Defendants specifically allege that Hyundai acted with unclean hands by conducting a botched recall of the Theta II engine that included a flawed test. If you find Defendants have proven their unclean hands affirmative defense by a preponderance of the evidence, then you may deny Hyundai relief on that ground.

DE 530 at 33.

Putting aside the inapplicability of the equitable defense of unclean hands to HMA's claims, there was also insufficient evidence presented at trial as to either of the required elements of the defense of unclean hands.

#### 1. No Evidence of "Direct Relationship" between so-called "Botched Recall of the Theta II Engine that included a Flawed Test" and Defendant Khaytin's and Revuelta's Intentional Fraud

First, there was *no* evidence whatsoever as to the first required element of unclean hands--that the so-called "botched recall" *directly related* to Khaytin's and Revuelta's intentional fraud in submitting false engine replacement claims to HMA. To the contrary, at trial, Defendants' argument was that there was no need for Defendants to commit fraud because the Theta II engines were failing on their own. The "botched recall" was used to deny that fraud had occurred in the

9

first place:

> Warranty work is good business. You want to get the customers in. There is nothing wrong about that. They did the advertising. What did Eddy Napleton speak to Gene Khaytin about; advertising, get the customers in the door, **get the recall test done, a good percentage of them are going to fail. That is good business, that's not fraud**. "Why did you want more Hyundai engines? Because we wanted to test as many as we could". **This was a failed engine. It didn't work. It was a botched recall. You only mine for gold where you think the gold is going to be**. . . . . As Eddy Napleton confirmed, we wanted more VINS in the door. **That's, again, good business, that's not fraud**.

Tr. Tran. (1/18/2023), DE 584 (Defendants' closing argument) at 55:23-56:21 (emphasis added).

Certainly, Khaytin and Revuelta did not testify they committed fraud because of any recall deficiencies, or that their fraud had anything to do with recall deficiencies. Throughout the entirety of the trial, there was no evidence presented to connect the purported Theta II recall deficiencies to the deliberate submission of false warranty claims. Again, Khaytin and Revuelta simply denied having committed fraud. *See, e.g.* Tr. Tran., 1/5/2023, DE 576 at 160:15-18 (Khaytin denying participation in the intentional blowing of engines); Tr. Tran., 1/9/2023, DE 578 at 154:17-155:3 (Revuelta denying participation in the intentional destruction of engines or any knowledge of submission of false paperwork). Regardless of whether the word "botched" utilized in the jury instruction is taken to mean that HMA should have instituted a recall earlier or an initially broader recall or used a better diagnostic test for the recall condition, the required evidence of a "direct relationship" between any purported recall deficiencies and Khaytin's and Revuelta's intentional fraud is non-existent.

Defendants established through their "NHTSA expert," Mark Swanson, that after the initial recall in 2015, another recall was instituted in 2017, and that these recalls together encompassed over a million vehicles. Minier and other fact witnesses testified that one of the diagnostic tests used earlier in the recall—referred to as the dipstick or sound test—sometimes resulted in engines

that were exhibiting a "knock" nevertheless passing the test.

But, not one witness—not Khaytin, not Revuelta, and not any other witness at trial---ever testified that any Theta II recall deficiencies had any relationship (let alone a "direct" relationship) to Khaytin's and Revuelta's deliberately submitting false warranty claims. Under these circumstances, to argue that there is evidence of a sufficiently direct relationship between the "botched" recall and Defendants' fraud, is the equivalent of arguing that the requisite direct relationship is established merely by virtue of the fact that both involved Theta II engines. That is clearly insufficient under binding Eleventh Circuit case law.

Specifically, in *Calloway v. Partners National Health Plans*, 986 F.2d 446, 450-451 (11th Cir. 1993), the plaintiff filed a wage discrimination claim pursuant to Title VII. *Id.* The evidence at trial established that the plaintiff had misrepresented to the defendant that she had a college degree when she initially applied for her job. *Id.* The defendant asserted an "unclean hands" defense based on their contention that since plaintiff lied regarding her education, she should not be allowed to recover on her claim. *Id.* On appeal, without reaching the issue of whether an unclean hands defense is available in Title VII actions,[5] the Eleventh Circuit determined, as a matter of law, that the requirements of the defense were not met. Specifically, the Court determined that plaintiff's misrepresentation regarding having a college degree at the time she obtained her job was not "directly related" to her wage discrimination claim involving the wages paid to her for that job. *Id.* at 451. The Eleventh Circuit reasoned that, since neither plaintiff's predecessor nor her successor had college degrees, the plaintiff's "false claim of having a college degree is

---

[5] *Calloway,* 986 F.2d at 451, n. 4 (Because defendant failed to satisfy the requirements of the defense of unclean hands, the court declined to reach the issue of whether the defense even applied in Title VII actions,)(citing decision from the Ninth Circuit finding the unclean hands defense does not apply to Title VII claims).

11

irrelevant to her wage discrimination claim." *Id.* Here, the misconduct on which the unclean hands defense is based (HMA's conduct in allegedly not instituting a recall early enough or broadly enough or in utilizing a flawed test for the recall condition) is similarly irrelevant to Khaytin's and Revuelta's deliberate submission of false warranty claims.

Numerous other decisions within this District have followed the binding *Calloway* decision in rejecting assertion of an unclean hands defense in the absence of the required direct relationship. *See, e.g. Gastaldi v. Sunvest Resort Cmtys.*, 2010 WL 457243, * 9 (S.D .Fla. Feb 3, 2010) (rejecting contention that plaintiffs' alleged mortgage fraud was sufficiently related to alleged deceptive practices at issue in plaintiffs' claims ***involving the same real estate development***; "it is not enough that the unclean hands conduct ***is the same kind of conduct as the matter in litigation . . . .[or] involves the same overall transaction***." ) (emphasis added); Bowe v. Public Storage, 2015 WL 11233137, *3 (S.D. Fla. June 26, 2015) (rejecting unclean hands defense based on plaintiff's alleged misrepresentation relating to the value of property covered by self-storage insurance policy because alleged misrepresentation was not "directly related" to plaintiff's claim against public storage company ***involving the same self-storage insurance***). See also PNC Bank v. Smith, 225 So.3d 294, 295 (Fla. 5th DCA 2017) (reversing final judgment entered against lender in a foreclosure action based on unclean hands defense where lender's alleged misconduct related to the second loan made by the lender in connection with the same property rather than the first loan, even where defendants testified they stopped paying the first mortgage based on the lender's misconduct in connection with the second loan; "whatever recourse Appellees may have had . . .against Bank pertaining to its 'unclean' actions regarding this second loan is distinct from the litigation on the first mortgage.").

As illustrated by *Calloway* and the numerous decisions following it*,* the direct relationship

requirement for an unclean hands defense means "*really* directly related . . . It is, in essence, the reason for the lawsuit." *Freestream Aircraft USA Ltd. V. Chowdry*, 2108 WL 1309921 (March 12, 2018) (Mathewman, J.) (citing *Elaf Hannson Paper & Bd., Inc. v. Caldera,* 2012 WL 12865853, at *6 (S.D. Fla. Apr. 26, 2012)) (emphasis in original). *Kleinman v. Wright,* 2020 WL 5632654, *43 (S.D. Fla. Sept.. 21, 2020) ("[C]ourts require the connection between the unclean-hands conduct and the matter in litigation ***to be very close***.") (citing Bowe v. Pub. Storage, No. 1:14-CV-21559-UU, 2015 WL 11233137, at *3 (S.D. Fla. June 26, 2015)) (emphasis added).

The reason for this lawsuit was the intentional submission of false warranty claims. Any purported Theta II recall deficiencies have nothing to do with that fraud. Allowing an "unclean hands" defense without evidence of the required "direct relationship" is clearly contrary to binding precedent and would have the practical effect of condoning warranty fraud by a dealer every time there is a recall. The lack of any evidence as to the required direct relationship establishes that judgment as a matter of law should be granted on the unclean hands defense.

### 2. No Evidence of any Injury Suffered Personally by either Khaytin or Revuelta due to the "Botched Recall"

The evidence presented at trial is similarly insufficient as to the second requirement for an unclean hands defense—that "Defendants were personally injured" by the purportedly botched recall. Once again, the evidence presented at trial is directly to the contrary, establishing that all of the defendants were financially benefited by the recall.

The excerpt from Defendants' closing argument quoted above make this clear --again Defendants emphasized that because of the "botched recall" defendants were advertising to get customers in to the dealership because "[y]ou only mine for gold where you think the gold is going to be." The trial testimony also underscored this point. Here are just a few examples:

**Eddie Napleton:** Through his designated deposition testimony presented at trial, Eddie Napleton

testified regarding his efforts to bring in to the dealership as much of the profitable Theta II recall work as possible:

> Q: And in the first line you say, "We need to talk about our detailed plan on Hyundai engines, how to get more."
> A. Correct.
> Q. That's what you wrote; correct?
> A. Yes.
> Q. Why did you want more Hyundai engines?
> A. We wanted to be able to test as many as we could. If they failed, and we would help save our customers' dissatisfaction with the brand, ***we would also make a profit. It was a win-win. So it seems like a no-brainer from a business standpoint***.
>
> * * *
>
> Q. And as you got more vehicles and could do the replacements or repairs, that's ***obviously more money for number 121 or any other NAG dealership; correct***?
> A. ***I agree***, plus it helps with our brand loyalty with our customers.
> Q. And you wanted to work on a detailed plan to get more of the Hyundai Theta II engines; correct? That's what this memo is about, right?
> A: Correct. ***Like I said, increasing repair order count is important to our business, so we wanted to have more VINs come through the door, yes***.[6]

Similarly, specifically in explaining Revuelta's multiple email communications regarding the possible "big money" to be made from the Theta II recall, Eddie Napleton testified:

> Q. This is an email from Ernie Revuelta to a number of folks within NAG, including Paul McAskill. Do you see that?
> A. Yes.
> ***
> Q. Right below, he writes "This one is also ***a possible big money maker***. It's for the update for engine software." Do you see that?
> A. Yes.
> ***
> Q. So he is giving word that if it would be a possible big money maker for the dealership, number 121, so this update for engine software and if they fail, the engine has to be replaced; is that correct?
> A: ***I don't think it's a secret that dealers make money on recalls***.[7]

---

[6] DE 501-2 at 11 and 12 (emphasis added).
[7] DE 501-2 at 13 (emphasis added).

**Brian Napleton**: Brian Napleton testified point blank about the profitability of recall work and that West Palm specifically sought out as much of the Theta II recall work as possible through its marketing campaigns:

> Q: *Is recall work profitable for a dealership?*
> A: *Yes.*
> Q: How so?
> A: The manufacturer pays us to do the work, and there are markup rate based on the parts or labor rate of (sic) on the specific state and it is on a store – by- store basis.
> \*\*\*
> Q: And did Napleton West Palm Hyundai undertake to do work on Theta II engines?
> A: They did.
> Q: Did Napleton West Palm Hyundai undertake any marketing or other activities to seek out those recalls?
> A: Yes they did.[8]

**Khaytin:** Khaytin was personally compensated based on the profit of West Palm. *See* DE 501-2 at 4 (Eddie Napleton testifying Khaytin was paid a percentage of the profits of the dealership); Tr. Tran. 1/5/2023, DE 576 at 134:13-135:6 (Khaytin testifying he was paid a percentage of the profits of the dealership). Thus, Khaytin thought it was great news so many Theta II engines were failing, emailing Eddie Napleton: "**Many engines failing. Great news!! $$$$."** *See* DE 559-11 (Plaintiff's Trial Ex. 2426).

**Revuelta:** Likewise, Revuelta was personally compensated based on the gross profit of the West Palm service department. *See* DE 501-2 at 5 (Eddie Napleton testifying Revuelta was paid on the gross profitability of the service department); DE 501-3 at 3-4 (Revuelta testifying he gets paid a percentage of gross profit of the service department). Thus, Revuelta similarly exchanged multiple emails emphasizing how much he would "love" to get additional "BIG MONEY MAKER" recall work. *See* DE 559-20 (Plaintiff's Trial Ex. 2491) ("THIS ONE IS ALSO A POSSIBLE BIG

---

[8] Tr. Tran. 1/9/2023, DE 578, at 231:1-6; 231:22-232:2.

MONEY MAKER. ITS FOR THE UPDATE FOR ENGINE SOFTWARD BUT IF THEY FAIL IT THEY GET AN ENGINE."); DE 559-21 (Plaintiff's Trial Ex. 2492)("This is engine recall that are still open according to Hyundai *I would love to get these in Could be BIG money.")*(emphasis added).

While at trial Khaytin and Revuelta tried to distance themselves from the glee they had exhibited in their contemporaneous emails regarding the money flowing from the recall, they certainly never testified that they *personally* suffered any *injury* due to the recall. *See* Tr. Tran. 1/5/2023, DE 576 (Khaytin) at 164:10-14 ("you wrote here . . . many engines failing, great news, four dollar signs. You thought it was great news, didn't you sir? I thought it was great news Hyundai was reimbursing is (sic), it doesn't come to our shoulders."); Tr. Tran. 1/9/2023, DE 578 (Revuelta) at 184:16-18 ("But it has also been a very good money maker for you personally correct? For me personally? It makes money."). There was literally no evidence—no witness testimony and no documents—establishing *an injury personally suffered* by either Khaytin or Revuelta due to the supposedly botched recall.

Any injury purportedly suffered by anyone other than Khaytin or Revuelta is irrelevant to establishing their unclean hands defense. *See, e.g. BAC Financial Services, Inc. v. Multinaqtional Life Ins. Co.*, 2014 WL 11531793, * 9 (S.D. Fla. Oct. 10, 2014) ("Even if the policies were illegal, Defendant has not shown how it has been personally injured by Plaintiff's conduct in soliciting illegal policies."); *Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC* , 2021 WL 2476488, *11 (S.D. Fla. June 17, 2021) (striking unclean hands defense asserted by entity and attorneys acting on behalf of timeshare unit owners where injury alleged was to the timeshare unit owners rather than defendants personally); *Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates, LLC, et al.*, 2019 WL 13138272, *3 (M.D. Fla. Dec. 11, 2019) (striking

unclean hands as legally insufficient where alleged wrongful conduct targeted the timeshare owners, rather than the defendant law firm acting on behalf of the timeshare owners, and did not harm the defendant law firm itself); *Lindvall v. Richmond*, 2015 WL 12791483, *6 (S.D. Fla. June 24, 2015) (rejecting unclean hands defense where defendants were not personally injured by wrongdoing).

Under these circumstances, where there was no evidence presented of injury to Khaytin or Revuelta personally, and the overwhelming evidence established that they profited from the recall, judgment as a matter of law should be granted as to the unclean hands defense.

## CONCLUSION

For the reasons set forth above and at the jury charge conference and DE 528 at 39-40, the unclean hands defense should not have been submitted to the jury. This equitable defense is inapplicable as a matter of law to HMA's claims which seek only money damages. Putting this issue aside, there was insufficient evidence presented at trial as to either of the required elements of an unclean hands defense. Accordingly, judgment as a matter of law should be granted as to the unclean hands defense requiring a new trial on damages as to Defendants Khaytin and Revuelta on HMA's fraud claim (Count I). In light of the taint to HMA's entire case from the unclean hands defense, considered together with the other issues discussed in HMA's contemporaneously filed Motion for New Trial Pursuant to Rule 59 (a), a new trial is also required as to all Defendants on all other claims asserted by HMA (Count II for RICO violations, Count III for Civil RICO Conspiracy, and Count V for Civil Conspiracy).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Undersigned counsel for HMA, Mitchell Widom, certifies he conferred via telephone with counsel for Defendants, Russell McRory, on February 16, 2023 in a good faith effort to resolve by

agreement the issues raised in this motion, but the parties were unable to reach agreement.

Respectfully submitted,

*/s/ Mitchell E. Widom*
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone: 305-374-7580
Facsimile: 305-374-7593
Mitchell E. Widom, FBN 473911
mwidom@bilzin.com
Raquel M. Fernandez, FBN 55069
rfernandez@bilzin.com
Shalia Sakona, FBN 107398
ssakona@bilzin.com
etrujillo@bilzin.com
asolis@bilzin.com
eservice@bilzin.com


Loren W. Fender, Esq.
Fla Bar No. 553921
loren.fender@bowmanandbrooke.com
**Bowman and Brooke LLP**
Two Alhambra Plaza, Suite 800
Miami, FL 33134-5214
Tel: (305) 995-5600
Fax: (305) 995-6100

Joel H. Smith (*pro hac vice*)
joel.smith@bowmanandbrooke.com
Kevin J. Malloy, Esq. (*pro hac vice*)
kevin.malloy@bowmanandbrooke.com
**Bowman and Brooke LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201-2897
Tel. (803) 726-7420
Fax: (803) 726-7421

James Andrew Bertron, Jr.
Andy.bertron@nelsonmullins.com
Fla Bar No. 982849
Ginger Barry Boyd
Fla Bar No. 294550
ginger.boyd@nelsonmullins.com

                                                    **Nelson Mullins Riley & Scarborough LLP**
                                                    215 S. Monroe Street, Suite 400
                                                    Tallahassee, FL 32301
                                                    Tel. (850) 681-6810
                                                    Fax. (850) 681-9792

                                                  Christopher C. Genovese (*pro hac vice*)
                                                  chris.genovese@nelsonmullins.com
                                                **Nelson Mullins Riley & Scarborough LLP**
                                                   1320 Main Street, 17th Floor
                                                   Columbia, SC 29201
                                                   Tel. (803) 799-2000
                                                   Fax. (803) 256-7500
                                                   *Counsel for Plaintiff Hyundai Motor*
                                                   *America Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

     I HEREBY CERTIFY that on April 15, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                    By: */s/ Mitchell E. Widom*
                                                            Mitchell E. Widom

10229818.2